IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Mathew Thomas, Jr.,

                    Plaintiff

    -V-                                                    Civil Action No. 13-3946

ECFMG, Educational Commission for Foreign
Medical Graduates,
NBME, National Board of Medical Examiners

                    Defendants

        Plaintiff, Mathew Thomas, Jr, Pro Se, for its Opposition Papers to Defendants' Summary

Judgment Motion of NBME and ECFMG:

## I) Background

        Plaintiff, Mathew Thomas, Jr. (hereinafter "Plaintiff"), is an international medical school

graduate enrolled in the certification process with NBME and ECFMG (hereinafter

"Defendants") in order to obtain the ability to practice medicine in the United States, particularly

in the State of New York. The Plaintiff sat and passed, on his own merit, the required exams to

satisfy the requirements of the ECFMG certification, known as USMLE Step 1, USMLE Step

2CK and USMLE Step 2CS.  When Plaintiff registered for the final Step in 2009, known as

USMLE Step 3, he was then notified that his grade for Step 2CK, passed on December 31, 2007,

was considered indeterminate and his ECFMG certification was rescinded in 2010. Defendants'

reasoning for revoking the Step 2CK passing score and subsequently removing his ECFMG

certification was because he enrolled in a review course that was being investigated for violating

1

copyright laws. Plaintiff was a victim of the unethical practice that was unbeknown to him while he was a student for a few weeks at the review course named Optima University, and because of such, is being penalized for Optima's University's wrong doing.

Since then, the Plaintiff has been discriminated against because of his association with Optima University. Plaintiff has submitted numerous appeals and requested numerous meetings to discuss his situation, but most, if not all, of his requests have not been approved, and with minimum explanation.

Plaintiff felt pressured to take the validation exam and sat for a validation exam that was not comparable to his 2007 Step 2CK exam. According to USMLE policies and procedures, and confirmed by Defenses' witness testimonies at deposition, the validation exam is expected to be comparable to the exam originally taken. Plaintiff raised the fact that his validation exam was not comparable to his December 2007 exam. Once again his concern was given minimal attention, and a vague answer without a truthful explanation was received to Plaintiff. During discovery he received a copy of an email from Dr. Steven Haist admitting that items were added that were not from the original 2007 time period, and that the question types changed as well. For example, one of the differences Dr. Haist describes is, "Patient Safety was added since 2007, and Heated Related Illness was combined with Pituitary, hypothalamic disorders, both of which were under Endocrinology." He continues to report, " Of the 177 categories in 2007, specification changed in 18." The complete description of the changes is attached. (**Exhibit 1** email from Steven Haist with explanation of validation exam). In fact at Dr. Steven Haist's deposition testimony, he was asked if he created a validation exam that was comparable to 2007. Dr. Haist answered "no, it

2

was comparable to the 2011 USMLE exam."[1]  It should be noted that Plaintiff sat for the 2007

USMLE Step 2CK examination and according to Dr. Haist's statement, the validation exam was

comparable to the 2011 USMLE Step 2CK exam.  He continued to state, "anyone passing an

examination in 2011 had to pass the 2011 examination specification."[2]  Dr. Haist took it upon

himself to develop an exam that was not comparable to the Plaintiff's 2007 exam, thus not

following USMLE's Policy and Procedure.  The Policy and Procedure identifies the specification

of the validation exam and reads that, "an examination comparable in content and in standards to

validate the original performance." (**Exhibit #2 Policy & Procedure**)

Plaintiff's original appeal dated September 15, 2009 was focused on the Defendants not

following through with their own Policy and Procedure. Specifically, it focused on not

conducting a statistical analysis on the data presented to the Plaintiff, in which they claimed

possible exposure to USMLE questions.  Appeal was denied by the Composite Committee.

NBME states that they have provided  "a description of any statistical analysis employed."

According to Gerry Dillon's deposition testimony of January 17, 2014, he clearly admits that no

such analysis was conducted on this exam.  Once again Dr. Dillon proves policy and procedures

were violated and the original appeal should have been granted.[3] Once again these actions

exhibit discriminating behavior on the Defendants' behalf.

After the deposition of testimony from this lawsuit, it is confirmed that there was no

statistical analysis conducted, therefore breaching policy and procedure. (**Exhibit #3 first appeal**

**letter)**

---

[1] Steven Haist, Deposition, January 17, 2014 p.37 lines 21-24 & p.38 lines 1-4
[2] Steven Haist, Deposition, January 17, 2014, page 38, lines 3-4
[3] Gerald Dillon, deposition, January 17, 2014, page 22 lines 8-10

In fact, at the deposition of January 17, 2014, it was stated by Defendant NMBE's attorney that they never received questions from the FBI; instead they conducted their own investigation. According to the Summary Judgment that was submitted for the NBME –v- Optima University lawsuit, their information was received by enrolling an individual into the prep course. Dr. Haist was quoted in the Summary Judgment motion that "he was responsible for comparing material obtained from Suliman and Optima with copyrighted USMLE questions." Page 13 (**Exhibit 4 SJ**) Defendants originally stated they received the "stolen" questions from the FBI and compared those questions to their own question bank. In fact, there have been no documents pertaining to the original Optima litigation lawsuit that has mentioned USMLE Step 2CK examination as being violated. The only mention of stolen question pertains to the USMLE Step 1 exam.

NBME admits that because Plaintiff was a student of Optima University prep course that Plaintiff was associated with Optima's illegal actions.  The accusation was evident at the Settlement Conference with Judge Wells when the Defendant's Attorney alluded that Plaintiff was a "John Doe" from the original NBME lawsuit.  At no time was Plaintiff part or aware of this illegal occurrence.

Defendant NBME answer that Plaintiff "may have been" and was "potentially exposed" to USMLE examination questions at Optima University, but shows no evidence that Plaintiff had actually been exposed. Again they based their allegations on assumptions, not actual facts. When offered an opportunity to reveal the steps taken to collect the actual Optima University test bank and show direct comparison, Defendants refused, even after a subpoena was served.  No fraud was committed on the Plaintiff's behalf.

4

Defendants NBME and ECFMG discuss how they are concerned about the "integrity of the exam", and its policies and procedures are put in place to "protect public health." However, NBME proceeded with their claimed investigation with specific students and **not all** students that participated with the Optima University review course.  In order to protect the public health, all students that participated in the Optima University review course would have had their passing scores considered invalid and would have had to validate the exam as Plaintiff was forced to do. This clearly exhibits discrimination because of the inconsistencies of their actions.

**II) Negligence**

*Breach of Duty:*

A duty to warn is a concept that arises in the law of torts in a number of circumstances, indicating that a party will be held liable for injuries caused to another, where the party had the opportunity to warn the other of a hazard and failed to do so.

Defendants suspected that an unethical action was occurring with Optima University and as such, the FBI became aware and conducted their investigation. However, Defendants continued to allow students to attend the prep course without putting these students on notice knowing full well that if their suspicion was substantiated, the students would be brought up for score validity and possible irregular behavior. This would have a direct effect on students attaining residency in a timely manner. The Defendants attempt to defend their actions by stating it was for the "integrity of the exam". NBME claimed that students who attended the prep course had an unfair advantage to the exam because of the possibility of being exposed to the actual exam questions.

5

Therefore, if the integrity of the exam was of the utmost importance, then all students that attended the prep course, irrelevant on how much exposure the student may have had on their actual exam, should have been required to take the validating exam. Instead Defendant made personal choices on who would be forced to prove their passing scores. By allowing students to continue to attend the course, as well as permitting the course to grow, the Defendants increased the risk of authorizing students to practice medicine without legitimate scores, as per there accusations. Defendants' duty to warn directly put the "integrity of the exam" at risk when they did not have a system to track every student who attended Optima University after suspecting the unethical practices. To this day, there are practicing physicians who attended Optima University and were never contacted by NBME regarding their attendance at Optima University. Some of these individuals had multiple attempts, and even jumped from a failing score to a 95, and have since finished residency and have been practicing. Even after the FBI invaded Optima University, the program continued to run and extended it practice to Tennessee from New Jersey. According to Janet Carson's deposition of January 17, 2014, Defendant NBME discovered information regarding Optima University's unethical practice between 2007 and 2008.[4] As per the December 17, 2012 United States Department of Justice, Division of New Jersey, press release, stated that owners of the Optima University took the Step 1 and Step 2 of the USMLE in April 2008. (**Exhibit #5**)

Plaintiff participated in the review course, and completed his exam, at the end of the 2007 before exam questions were exposed unethically.

---

[4] Janet Carson, Deposition, January 17, 2014, page 5-8

6

When Plaintiff met with the Committee of Score Validity, he questioned the Committee as to why NBME and ECFMG had not released a statement on their website or their email bulletin to everyone of this matter when they first felt there was an unethical practice going on. Janet Carson's testimony stated that the original indication of any wrong doing was in 2007/2008. On July 01, 2009, Defendants released a posting about their legal actions with Optima University, and the situation at hand, possibly two years after an initial knowledge of risk. Clearly this action shows that they felt they had a duty to warn and specifically stated, "*Individuals who attended Optima's programs or are considering doing so risk having their USMLE scores delayed and/or classified as indeterminate. They may also be subject to other consequences, including charges of irregular behavior, as a result of their participation.*" (**Exhibit #6 & Exhibit #9** Bulletins)

To determine whether a duty is imposed, Courts engage in an analysis that underlies risk of harm for its foreseeability, which is the opportunity and ability to exercise care to prevent harm. *Hopkins v Fox & Lazo Realtors*, 132 N.J. 426, 439, 625 A. 2d 1110 (1993), discussed Foreseeability. It is the foundational element in the determination of whether duty exists. It is understood that the Defendants' knowledge is considered as being an actual awareness of risk. Defendants were aware that Optima University was engaging in illegal activities but allowed students to continue to sit for their exam after having knowledge that they participated in the prep course. Knowingly, Defendants put the careers and future of said students at risk if continuing to sit in the prep course. In addition, with no tracking of students created, they increased the risk of public health if a student without the knowledge base to pass a Step exam made it to Residency. Defendants choose when "protecting public health" apply to a student's exposure and score validity. According to Foreseeability and duty, the knowledge may be actual

awareness of risk, but it is also constructive and Defendant can be charged with knowledge that they were in a position to discover the risk of harm. NBME reasoning for not validating scores is because of risk of harming the public. According to USMLE policy, "an examinee's score will not be reported if the Committee on Score Validity finds that they cannot be certified as representing a valid measure of the examinee's competence in the domains assessed by the examination." NBME harmed the public by not mandating all students that attended Optima University's prep course to sit for a validating exam which they would have controlled.  NBME could have created an examination which contained no questions that would have had any possibility of being exposed.

Defendants had an obligation to serve their students ethically and justly when they had information regarding the "stolen questions."  Defendants were obligated to remove the stolen questions immediately from the question bank, even if it was just a suspicion.  According to their lawsuit pleading against Optima University, NBME presented that they had the exact questions that were stolen because they knew the form types of the exams in which a student was copying the examination.  This information would have also allowed them to develop a fair and un-tampered validating exam.

Defendants claim to have a method which determined which students they sent to the Committee on Score Validity versus which student they chose not to send as shown through the testimony at the deposition of Steven Haist, Gerry Dillon, and Janet Carson .[5]  These statements prove that the method they attempted to claim was not consistent or standard for each student.

---

[5] Complete transcripts are available to the court if needed, due to the number of pages from each witness only references portion has been enclosed

According to Gerry Dillon's deposition testimony of January 17, 2014, each case had "unique features."[6]

During Janet Carson's deposition testimony, she stated that the staff committee compared and reviewed data given to them by Testing Development.  When asked if anyone on this staff committee had an analytical background to interpret the data put forth, Ms. Carson stated that the analysis was done by Dr. Dillon.[7]  Gerry Dillon stated that he was not part of the staff committee that reviewed student's data, specifically not those involved in the Optima University matter.[8]

Witnesses who were involved in the process had a different explanation on the procedure that was taking place for students being reviewed because of the Optima University matter.  The Policy and Procedures that students were given from NBME were not followed. There was no access to any Optima University test banks, and no statistical analysis as evident from the testimony of Steven Haist, which simply conducted comparison for matching wording in questions.[9]  Last but not least, the decision of whether a student's exam was a clear indication of the student's knowledge base was not based on confirming exposure or validating knowledge, but by comparing paper copies of exam questions which were data entered by NBME staff into software that only compared wording.  To date the origination of these paper questions has not been confirmed, except to state that it did not come from the FBI.

On February 24, 2009, a U.S. Marshal executed a court order to obtain the Optima prep materials from Optima's offices in McKenzie, Tennessee. Furthermore, Dr. Haist testified at his

---

[6] Gerald Dillon, Deposition, January 17, 2014, page 23 lines 8-10

[7] Janet Carson, Esq., Deposition, January 17, 2014 page 15 lines 8-12

[8] Gerald Dillon, Deposition, January 17, 2014 page 11 lines 9-17

[9] Steven Haist, Deposition January 17, 2014, page 12 lines 22-24 and page 13 lines 1-2

deposition that the comparison of the Optima University test bank questions with the USMLE questions began in 2009. Students began receiving letters regarding Optima University exposure without any data attached in 2008. If this whole process is based on exposure percentages and time differences, then one must question how students were being sent letters and being asked to validate with no data or analysis. The basis of the validation of scores was specific to attending Optima. Initial letters without exposure data were sent out when the entire test bank was not possessed or compared by the NBME.

International medical students depend on the Defendant entities to conduct themselves in an ethical manner that would ensure them a fair advantage to receive their certification to practice medicine. In this matter, this was far from true.

This lawsuit has not only proven that they discriminated and were negligent at many levels, but also that they did not have the public health interest at hand. If an entity or an individual believes that they have the best interest of the public at hand, they would be steadfast that there was a thorough and consistent procedure for all individuals, irrelevant of exposure or time of access, in order to be just for the public. No one who was exposed would have had the opportunity to continue in the practice of medicine without a validation exam to clear them without protest, and in a timely manner from when the supposed exposure was initially discovered. There would be no room for discrepancy or debate. Janet Carson testified at her deposition that not all cases were sent to the Committee on Score Validity.[10]

As evident to this litigation Defendants failed to produce any facts and has purposely chosen not to respond to subpoenas and notices. These continuous actions show a lack of respect to the

---

[10] Janet Carson, Deposition January 17, 2014, Page 9 Lines 22-24

Plaintiff who is proceeding Pro Se because of financial hardship.  Most of all they lack a respect to the court by not following proper court rules and procedures, following the same pattern as they did with determining the Plaintiff's score validity.

Based on these facts and information, Plaintiff's allegation of Negligence, particularly to Breach of Duty, should be GRANTED.

### III) Discrimination:

Defendant specifically targeted Plaintiff and discriminated against him because of similar characters as the defendants mentioned in the Lawsuit of NBME –v- Optima University, including race and color (**Exhibit # 7**). Defendants made an assumption of the Plaintiff being one of the John Doe mentioned based on the Plaintiff originating from an Eastern culture and country, being of similar race and color of the individual charged in the Optima matter. Defendants furthered their assumption because Plaintiff had similar number of attempts of taking the USMLE exams.  The Plaintiff comes from an Eastern origin like the owner of Optima University.  Since the Plaintiff took a job at Optima University after his Step 2CK exam, Defendants assumed Plaintiff was automatically guilty of attaining a passing score because of his association in the Optima University prep course, and began their actions to make sure his score was never found to be valid.

Defendants have not produced any tangible evidence to prove that Plaintiff has not gained the passing score based on his own merit and hard work.  Plaintiff's USMLE Step 1 & Step 2CK exams followed the same scoring pattern.  As **Exhibit # 8** (USMLE STEP 1 & STEP 2CK exam test grid) shows, each time the Plaintiff took the exam, the score improved. Plaintiff passed

USMLE Step 1 on his own without being enrolled with Optima University. His pattern did not

show any suspicious inconsistencies, just a similar testing result from both exams.

Defendants placed the Plaintiff in the same category as the accused of Optima University for

the pure fact that Plaintiff was employed with Optima, had acquaintances from the review

course, and the number of the attempts of taking the exam. Plaintiff did not start working at

Optima University until after he took the exam in December 2007. At no time did he have

knowledge that any unethical matters were occurring. Therefore, allegation of Discrimination

should be GRANTED.

### IV) Defamation

It is public knowledge that the FBI did a thorough investigation for the Optima University

matter and Plaintiff was interviewed as a witness. Plaintiff was never claimed as one of the

accused. Defendants took it upon themselves to state at the Score Validity hearing that the

Plaintiff began working for Optima University after taking the exam. Plaintiff was clear that his

role was to help students get organized in the program with a work station. The purpose of the

hearing was to discuss the validity of the Plaintiff's exam score, but instead the Defendants

offered employment information during the hearing that had no relevance to the exam score.

These actions were done to allow the Committee to prejudge the Plaintiff's character.

At Janet Carson's deposition, witness was instructed by Defendant's attorney not to answer a

question based on the integrity of the exam and "specifically with regard to Dr. Thomas because

there are allegations, including his own admission that he is still in touch with individuals who

were involved in Optima University....." She instructed witnesses not to answer questions about

the exam because "it's highly problematic for the information to be disclosed to Dr. Thomas in

particular." [11] Again, Defendants made an assumption of character because of association and defamed Plaintiff and his creditability.

Defendants took it upon themselves to defame the Plaintiff by accusing him as being "John Doe" at the settlement conference of March 19, 2014, by merely the fact of association with Optima University as a student. At the Rule 16 Conference that was held in November 2013, the Honorable Judge Rufe asked the Defendants of whether Plaintiff was being charged with irregular behavior or involved in any investigation regarding the Optima University proceedings and Defendants put on record , "no." After hours of not arbitrating any reasonable settlement offer, Defendants offered a last resort of offering to ask the FBI not to prosecute the Plaintiff as a John Doe in the Optima University case, clearly contradictory to their response to the Honorable Judge Rufe's original question.

As such, Defendants fail to prove affirmative defense because Defendant made a false accusation and clearly having no substance to their claim.  The subject matter for the Committee on Score Validity was whether the Plaintiff passed the exam because of his own knowledge base and hard work.  The subject matter was not whether Plaintiff worked at Optima University or was a student there.  Defendants' claim the students that were asked to validate their exam were only students who participated in the Optima University prep course and therefore these students had to prove their passing scores. Stating that the Plaintiff was employed after he took the exam was not of public concern and was an  abuse of a conditionally privilege occasion.

**V) Guilty by Association**

---

[11] Janet Carson, Deposition of January 17, 2014, Page 13, lines 17-24 and Page 14, lines 1-9

At no time through any of the due process with the Defendants was the focus on the Plaintiff's ability or knowledge of the exam. It was focused on the fact that he was associated with Optima University as a student and employee, hence making this claim legally cognizable.

As part of developing discovery for this case, Plaintiff mentioned that he made contact with individuals from the prep course. Based on Plaintiff statement Defendant attorneys made an assumption that Plaintiff was currently in contact with Optima University stakeholders as seen through the statement made at Janet Carson's deposition.[12]

At no time was it emphasized that he followed the same trend with his USMLE Step 1 exam or acknowledged that the attempts were similar and that there was an improvement of score on each attempt. The difference was that Plaintiff did not participate in Optima University for the Step 1 exam and passed by his own hard work and knowledge base. Defendants mentioned numerous times that Plaintiff had a poor test history, but not once mentioned the true facts of his test trend as seen in the enclosed test grid, as marked as *Exhibit #8.* As Plaintiff history shows, you will notice that he missed a passing score by 1 point prior to attending Optima University for a few weeks.

USMLE Bulletin, page 32 "states that the standards used to determine a classification of indeterminate "may result in irregular behavior or from other factors, such as unexplained inconsistency in performance within a Step or Step Component." Plaintiff clearly shows that his Step 2CK grades made consistent improvements. When questioned what the reason for such an improvement was, Plaintiff credits the improvement to the study environment and the focus on just studying without any distractions, unlike during previous attempts.  Dr. Dillon in his

---

[12] It should be noted that Defendant's attorneys put on records similar statements for all witnesses deposed on January 17, 2014.

testimony admits that one who fails many times and then focuses only on studying is able to attain an improved grade without exposure to exam questions.

They continue to state that "aberrancy (ies) in performance also classified indeterminate." Plaintiff clearly showed improvement which satisfies the requirement for their "reason and satisfactory explanation" of validating the USMLE Step 2CK score, similar to his USMLE Step 1 passing score. Plaintiff continued to increase his score when taking the Step 1 exam, similar to how Plaintiff scores for the Step 2CK exam improved each attempt.  According to Plaintiff test history it is reasonable to say that he would have passed Step 2CK without Optima University's prep.

*Assumption No Direct Evidence*

In 2009, NBME and all related entity sued Optima University for stealing exam questions. Plaintiff, Dr. Mathew Thomas, Jr., is being wrongfully accused because of being one of the victims of the Optima University wrong doing.  Plaintiff had no part of the action, nor did he have any knowledge of Optima University's actions or intent.  According to Janet Carson's deposition testimony, NBME discovery was based on the Infringement of the examination.[13] Plaintiff obviously was not part of the infringement.

*Whelen Associates, Inc. –v- Jaslow Dental Lab,* In 797 F. 2d 1222, 123 (3d Cir. 1986) stated as a copyright infringement "there is no evidence of direct copying and amble evidence and substantial similarity exits between the copy righted work and the accessed work"

---

[13] Janet Carson, Deposition January 17, 2014, page 9 lines 20-22

Defendants ECFMG and NBME, had no "direct evidence," just "assumptions". They used terms as "made to believe" having no substantial evidence for their assumptions towards Plaintiff. All discovery from the NBME –v- Optima University lawsuit has only evidence from questions of the USMLE Step 1 exam. According to the original lawsuit there were 50 questions retrieved from their evidence.

Plaintiff is being wrongfully accused because of his association as a student at Optima University and his short term of employment. It should be noted that the Plaintiff attended Optima University for less than six weeks, with many days going to holidays. It should also be noted that Plaintiff did not go with Optima University when they relocated to Tennessee, and that employees who relocated with the program are now practicing medicine in the United States.

The First Amendment states we have the right to associate. A fundamental element of personal liberty is the right to choose to enter and maintain. Plaintiff did not "conspire" to commit any crime associated with copyright laws. According to Model Penal Code, section 2.06 section B, subdivision 3, "a person is an accomplice of another person in the commission of an offense if, (a) with the purpose of promoting or facilitate the commission of an offense he (i) solicits such other person to commit; or (ii) or agrees or attempts to aid such other person in planning or committing it;"

At no time did the Plaintiff promote, facilitate, solicit or aid the offense that Optima University committed. There is no evidence, nor would there be any evidence that would show Plaintiff participated in the illegal action or was aware of any illegal actions.

A study was conducted regarding the nonlogical pattern as to why student's score would be validated versus not being validated. (**Exhibit #10 Bennett Report**). This study clearly shows

that students had the same allegation against them as the Plaintiff.   They were believed to have had access to the same "exposed questions" as Plaintiff, but these students were successful at having their scores validated. In fact, as per the Bennett Report, there were students with very similar data percentages and time counts as the Plaintiff, and their score was validated by the Committee on Score Validity.

As an example, an analysis was given in the Bennett Report which clarifies the seemingly lack of standard guidelines used by the USMLE Committee on Score Validity, and makes it appear as though any student who chose not to make a personal appearance automatically had their scores labeled as "indeterminate", even if their percentage of alleged exposed questions was relatively low.

Defendants' action towards the Plaintiff was clearly unethical.   Defendants sent a letter to the Plaintiff with false assumption on why they felt the Plaintiff's grades were indeterminate. They stated information such as the time spent on questions with no proof or true statistical analysis on how this weighed in on a decision.  During the testimonies of the witnesses of January 17, 2014, not one of them mentioned statistical analysis or any variables used to determine a student's outcome. "Data" was reviewed by staff members who had no analytical expertise, and then recommended towards the Committee on Score Validity if they thought it was appropriate. According to their testimony each case was "unique". When discussing public health and integrity of an exam, the Defendants failed to meet important standards because of the inconsistencies of their procedures. Hence, in doing so, their actions were contradicting to their mission, not only for the Plaintiff, but for each student that applied for their certification through the Defendants.

## VI) Plaintiff should Prevail

Defendants claim that Plaintiff did not receive Residency from January 24, 2008

through March 4, 2010, but fail to mention that access to OASIS was locked in 2009 after

applying for Step 3. In fact, access to OASIS was only granted a day prior to Defendant

deposition in 2014, even after Plaintiff took a validation exam in 2011, and was registered for a

last attempt at Step 2CK in 2012. Without access to this site, one cannot get an ERAS Token

and no credentials would be verified for possible Residency programs. ERAS looks to ECFMG

to proceed with a student. Plaintiff was only able to try for Residency during one Match cycle

after becoming ECFMG certified. International Medical Graduates with stellar applications may

go through multiple Match cycles before attaining a Residency. Stating that Plaintiff was unable

to attain Residency with his exam history in one attempted Match cycle is the Defense creating a

false perception for the Court. Since then, he has been approached about a Residency position

on two occasions based on work ethic and experience in a healthcare related field, but was

unable to accept due to this pending litigation. Defendant ECFMG's claim that the Plaintiff is

"his own impediment to practicing medicine" is a further example of the mindset of defamation

brought forth throughout this process.

Plaintiff has taken all proper protocols to assure the option of becoming a licensed doctor in

New York would be available. Plaintiff submitted a letter to the Office of Professional License

to have a waiver granted. **(Exhibit # 11 letter to Ramos at Office of Professional License)**.

According to New York State law, where the Plaintiff would be practicing, there is no rule to the

timing of when a license can be received. **(Exhibit # 12 NY Regulations for licensing)**

Plaintiff submitted a request in writing to extend the 7-year rule because of the time lost while participating in the due process that was controlled by the Defendants.   Defendant ECFMG failed to toll the timing while the due process procedure was proceeding causing the Plaintiff to lose approximately two (2) years and three (3) months of the 7 years.  Defendant rejected the request with no explanation.  The extension to the 7-year rule was denied which represents the failure to toll the time lapsed while the appeal process was taking place.  In addition the 6-attempt limit rule was not in effect when Plaintiff passed the USMLE Step 2CK. Plaintiff was part of the old rule process that should allow him to be grandfathered in, therefore not having the 6-attempt limit rule affect him.  Had the waiver to toll the time lost been granted, Plaintiff would not have had become ineligible for retaking his Step 1, which had expired and was passed on the sixth attempt.

Defendants, NBME and ECFMG stated that Plaintiff was part of the "doctrine of unclean hand".  As the doctrine states, when unclean hands are used as the affirmative defense, the burden of defense therefore falls on Defendants, NBME and ECFMG.  Defendants have failed to produce any evidence of such, therefore Defendants have failed to show that Plaintiff had any wrong doing.

Defendants claim that the key element in determining whether to grant an injunction is whether it would be in the public interest and that validating the Plaintiff's score would not be in the public interest.  What the Defendants fail to show the Court is any proof on why the Plaintiff's score was revoked.  They are stating assumptions, to be clear - false assumptions. The Defendants did not give Plaintiff nor the Court any information that would allow them to base a decision to determine what would be best for public interest. As it stands today, the Defendant has placed the Court in a situation where not validating the Plaintiff's scores would harm public

19

interest because it would allow entities like the Defendants to have no ethical responsibility to follow their own rules and procedures. There would be nothing holding them responsible to treating individuals fairly based on their own merits, not associations.

**VII) Failure to Produce**

Defendants have taken advantage of the fact that Plaintiff is Pro Se and have avoided procedures because of Plaintiff's lack of educational training in the law.

Defendants have not provided any proof to their allegation and therefore Defendants', NBME and ECFMG, averment should be denied. Defendants have purposely chosen not to answer Plaintiff's demand.

Defendants' actions were discriminating, negligent, unethical and based on assumption with no facts. They have failed to produce evidence subject under Federal Rules of Civil Procedure Rule 37. **(Exhibit #13)**

Defendants' failure to produce evidence and failure to respond to subpoena have violated Federal Rules of Civil Procedure Rule 37, Failure to make Disclosure or to Cooperate to Discovery.

Therefore, they fail to show proof that Plaintiff's scores determined as indeterminate was decided ethically. They made false accusations by defaming Plaintiff by assuming that he was involved in the illegal actions of Optima University.

Federal Rules Civil Procedure 26(b) (3) states that "a party may obtain discovery of documents and tangible things prepared in anticipation of a litigation, by an attorney or agent of

the opposing party only upon showing "substantial need and a showing that the party seeking discovery cannot without undue hardship obtain the substantial equivalent from the sources." Plaintiff has satisfied this rule because the entire discovery requested to the Defendants is the evidence that they are claiming is the reason behind their decision to not validate Plaintiff's exam score.  As part of the preparation for litigation, Defendants have failed to produce this evidence that is substantial for the courts to review in order to make a fair and just decision. This has been an ongoing theme with the Defendants from the beginning.

In addition, they claim that some information was privileged, but according to  Assertion of Privilege under Federal Rules Civil Procedure 26 (b)(5)(A), response must "expressly make the privilege claim and describe the nature of the documents, communications or tangible things not produced or disclosed and do so in manner…will enable other others to assess the claim." Defendants did not comply and violated this rule.

It is clear that Defendants had no substantial evidence nor reason to rescind Plaintiff's passing score and ECFMG certification. Due to the unethical and negligent behavior of the Defendants, Plaintiff has lost over $450,000 in monetary damages, over $450,000 in salary as a physician, as well as 6 years in his career as a profession and over four years in education.

Defendants have made a mockery out of Plaintiff's profession and have forced him to take on multiple jobs to compensate for the loss in his degree and loss of earnings to pursue this lawsuit. The Court has an ethical duty to maintain a fair and impartial federal judiciary. Defendants have proven through this lawsuit that their actions were negligent, discriminatory and contradictory to everything they stated for the reasoning behind their decision. It is clear that their actions had no

true evidence, just assumptions that were unjustifiable.  Therefore, based on the facts submitted, Defendants Summary Judgment should be **DENIED**.

Defendants, NBME and ECFMG, are barred, in whole or part, by the doctrine of equitable estoppel by not providing burden of proof of unclean, fraud, not providing relevant information to comply with their own policies and procedures, discriminating and making false claims of association.

**VIII) Conclusion**

Based on the reasons set forth, Plaintiff, Dr. Mathew Thomas, Jr., requests that judgment be entered in his favor and against Defendants, NBME and ECFMG.

Defendants have not provided any proof to their allegation, violated Federal Rules of Civil Procedure and therefore Defendants', NBME and ECFMG, Summary Judgment should be DENIED.

Date:  June 1, 2014

Respectively submitted,

Mathew Thomas, Jr.
Pro Se
31 Roosevelt Avenue
Staten Island, New York

22

# Certificate of Service

I, Mathew Thomas, Jr., Pro Se, Plaintiff, hereby certify that the forgoing Opposition Papers for Defendant Summary Judgment Motion was served on the 2nd of June, 2014 via electronic mail:

Brian W. Schaffer, Esq. & Elisa P. McEnroe, Esq.
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
Defendant Attorney for ECFMG

Neil J. Hamburg, Esq. & Maureen P. Holland, Esq.
Hamburg and Golden
1601 Market Street
Philadelphia, Pennsylvania 19103
Defendant Attorney for NBME

6/2/14

Mathew Thomas, Jr., Pro Se, Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Mathew Thomas, Jr.,

                  Plaintiff

-V-                                               Civil Action No. 13-3946

ECFMG, Educational Commission for Foreign
Medical Graduates,
NBME, National Board of Medical Examiners

                  Defendants

## ORDER

AND NOW, this _____ day of _____, 2014, upon consideration of

Plaintiff's Opposition Papers for Defendants ECFMG and NBME Summary Judgment Motion

and Defendant's Response thereto, it is hereby Ordered and Decreed that the Plaintiff's

Opposition Papers is **GRANTED** and Defendants ECFMG and NBME Summary Judgment

Motion is **DISMISSED.**