# Exhibit #4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

NATIONAL BOARD OF MEDICAL
EXAMINERS, et al.,

      Plaintiffs,

v.                                   No.  1:09-cv-01043-JDB-cgc

OPTIMA UNIVERSITY LLC, et al.,

      Defendants.

---

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

On February 23, 2009, Plaintiffs, National Board of Medical Examiners ("NBME") and the Federation of State Medical Boards (the "Federation"), brought this copyright infringement action seeking damages and injunctive relief against Defendants, Optima University LLC ("Optima"), Eihab Mohamed Suliman, and John Does 1-10. The Plaintiffs allege that Optima, a test preparation company, and Suliman, its President and owner, violated the United States Copyright Act, 17 U.S.C. § 101 et seq., by using copyrighted questions from the United States Medical Licensing Examination ("USMLE") in their test preparation courses. NBME and the Federation have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure against Optima and Suliman, who have not responded. (Docket Entry ("D.E.") No. 62.) For the reasons stated herein, the Plaintiffs' motion is GRANTED.

I.  FACTUAL BACKGROUND[1]

---

[1] The Local Rules of this Court require motions for summary judgment to "be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." LR 56.1(a), Local Rules of the United States District Court for the Western District of Tennessee. NBME and the Federation have complied with the Local Rules by submitting such a statement of facts. (D.E. No. 62-5.) Any party opposing summary judgment must respond to each fact stated by the movant. LR 56.1(b).  Under the Local Rules,

A. The NBME, Federation, and USMLE

The NBME is a non-profit organization that aims to protect the public by assessing the knowledge and skills of health professionals. (Stmt. of Material Facts ¶¶ 4-5, D.E. No. 62-5.) The Federation, which is also not-for-profit, represents seventy state medical boards in the United States and its territories. (Id. at ¶ 6.) The mission of the Federation is to improve the quality, safety, and integrity of health care through developing and promoting high standards for physician licensure. (Id. at ¶ 7.) Together, NBME and the Federation own and sponsor the USMLE, a standardized examination used to evaluate applicants for medical licensure in the United States and its territories. (Id. at ¶ 8.)

The USMLE is administered to present and former medical school students at locations around the world. (Id. at ¶ 10.) It is designed to assess a physician's ability to apply knowledge, concepts, and principles, as well as demonstrate fundamental patient-centered skills, that are required for providing safe and effective patient care. (Id. at ¶ 9.) State medical boards require licensure applicants to successfully complete three USMLE component exams, or "Steps." (Id. at ¶ 11.) Step 1 assesses an examinee's understanding and application of scientific concepts that are basic to the practice of medicine. (Id. at ¶ 12.) Step 2's "Clinical Knowledge" examination tests an examinee's ability to apply the knowledge, skills, and understanding of clinical science that is essential to providing patient care under supervision. (Id.) Step 2 also includes a "Clinical Skills" component, which requires examinees to interact with surrogate patients. (Id.) Finally, Step 3

---

"[f]ailure to respond to a moving party's statement of material facts . . . shall indicate that the asserted facts are not disputed for purposes of summary judgment." LR 56.1(d). Rule 56(e) of the Federal Rules of Civil Procedure also provides that if a party "fails to properly address another party's assertion of fact . . . , the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Because Optima and Suliman have not responded to the Plaintiffs' statement of material facts, the Court will consider them undisputed for the purposes of deciding their motion.

assesses an examinee's ability to apply the knowledge of medicine and biomedical and clinical science that is necessary for the unsupervised practice of medicine. (Id.)

The three USMLE examinations include multiple-choice questions, which are administered by computer. (Id. at ¶ 13.) The development of multiple choice questions is a time-consuming and expensive process. (Id. at ¶ 14.) The Plaintiffs own copyrights to USMLE tests and test questions and have registered USMLE test forms with the United States Copyright Office in compliance with the regulations adopted for protecting the confidentiality of "secure" tests.[2] (Id. at ¶¶ 15-17.) As a "secure" test, questions used on each USMLE are confidential and not disclosed to the public. (Id. at ¶ 18.) Plaintiffs reuse a certain number of questions from each examination on subsequent examinations in order to equate scores from one test form to another. (Id. at ¶ 19.) Accordingly, USMLE questions are intended to be disclosed only during actual test administrations and the unauthorized disclosure of those questions compromises the integrity of the examination. (Id. at ¶¶ 19-20.)

To aid in ensuring the USMLE's confidentiality, the test's "Bulletin of Information" advises prospective examinees that exam materials are confidential and copyrighted and may not be reproduced, distributed, or disclosed. (Id. at ¶ 22.) It provides:

> **OWNERSHIP AND COPYRIGHT OF EXAMINATION MATERIALS**
>
> The examination materials used in the USMLE are copyrighted. If you reproduce and/or distribute any examination materials, by any means, including memorizing or reconstructing them, without explicit written permission, you are in violation of the rights of the owners . . . . [E]very legal means available to protect USMLE

---

[2] The U.S. Copyright Office has assigned the following "TX" registration numbers to question sets registered by Plaintiffs: TXu 1-256-037; TX 6-845-880; TXu 1-192-927; TXu 1-256-036; TX 6-468-136; TX 6-845-857; TX 6-419-276; TXu 1-256-031; TXu 1-256-030; TXu 1-256-025; TXu 953-854; TXu 1-111-542; TX 5-021-440; TXu 928-261; TX 4-838-008; TX 4-958-938. (Stmt. of Material Facts ¶ 17, D.E. No. 62-5.) Each number corresponds to a copyrighted USMLE question set that has been the subject of Defendants' infringing use. (Id.)

> copyrighted materials and secure redress against those who violate
> copyright law may be pursued.

(Id.) The Bulletin of Information also includes "Rules of Conduct" with which each examinee

must expressly agree to comply. (Id. at ¶ 23.) The Rules of Conduct include the following:

> 7.      You will not remove materials in any form (written,
> printed, recorded, or any other type) from the test center.
>
> 8.      All examination materials remain the property of the
> USMLE parent organizations, and you will maintain the
> confidentiality of the materials, including the multiple-choice
> items. . . . You will not reproduce or attempt to reproduce
> examination materials through memorization or other means. Also,
> you will not provide information relating to examination content
> that may give or attempt to give unfair advantage to individuals
> who may be taking the examination. This includes [making]
> postings regarding examination content and/or answers on the
> Internet.

(Id.) The Bulletin is accessible on the USMLE website and available to all examinees in advance

of their test date. (Id.) When registering for the examination, registrants must affirm that they

have read the Bulletin and will comply with its terms. (Id.) Examinees are also reminded of the

rules on the computer screen when taking the exam. (Id.)

   B.  Suliman, Optima, and Defendants' Unlawful Conduct

      Suliman is the President and owner of Optima, a company offering USMLE test

preparation courses. (Id. at ¶ 2.) Optima was incorporated under the laws of Tennessee in 2008

and has regularly conducted business within this judicial district from its address at 1774

Highway 22, McKenzie, Tennessee 38201. (Id. at ¶ 3.) It previously operated out of Totowa,

New Jersey. (Id.) As of 2009, Optima offered 12-, 7-, and 4-week USMLE preparation courses,

charging $6,950, $4,950, and $3,250, respectively. (Id. at ¶ 41.) Optima's website touts that its

enrollees have "[a]ccess to over 3,000 USMLE style questions" and have passed the USMLE at a

rate of 99%. (Id. at ¶ 40.)

4

In 2007, the Defendants became targets of an NBME investigation into a confidentiality breach of USMLE examination questions. During that year, NBME discovered a series of low test scores and unusual answer patterns from individuals taking the USMLE exams in Bucharest, Romania, and Budapest, Hungary. (Id. at ¶ 24.) The pattern of results suggested that individuals in those locations were taking the exams to gain access to secure exam content rather than for the purpose of passing and earning medical licensure. (Id.) The NBME reviewed video recordings of the suspicious testing sessions, which revealed the suspected individuals holding a device near the computer screen to photograph or record the examination questions. (Id. at ¶ 25.)

One suspect, Marius-Antoniu Ciurez, took the USMLE at least six times and failed on each attempt. (Id. at ¶ 26.) On four of his applications, Ciurez provided an address in Elizabeth, New Jersey. (Id. at ¶ 27.) On two others, he listed an address in Romania where he also reported attending a medical school. (Id.)  Like Ciurez, other individuals who were seen recording the examination took the USMLE in either Romania or Hungary and scored very poorly. (Id. at ¶ 28.) They also listed attendance at the same medical school in Romania and the same New Jersey or Romanian address on their USMLE application. (Id.)

Suliman himself had registered for the USMLE twelve times and taken components of the exam at least twice. (Id. at ¶ 30.)  Each time, he had access to secure testing materials. (Id.) The Defendant identified the same Romanian medical school and residential address in New Jersey and Romania as Ciurez and the other suspected individuals. (Id. at ¶ 29.)

During its investigation of Suliman and Optima, NBME arranged for an individual ("X") to register for and attend Optima's test preparation program, which was located in New Jersey at the time. (Id. at ¶ 33.) X met Suliman, who introduced himself as Optima's President. (Id. at ¶ 34.) While attending the program, X reviewed course materials designed for USMLE

5

preparation. (Id. at ¶ 35.) Those materials were accessible only on an Optima computer, and Optima imposed strict security requirements on students who accessed or printed them. (Id. at ¶¶ 35, 37.) X's review of the materials confirmed that at least fifty questions or parts of questions displayed on the Optima network were identical, partially identical, or substantially similar to copyrighted, secure USMLE questions from the Step 1 examination pool. (Id. at ¶ 36.)

In May 2008, the Federal Bureau of Investigation raided Optima's facility in New Jersey after being informed of the theft of USMLE questions at oversees locations and Optima's use of secure USMLE questions in its test preparation materials.[3] (Id. at ¶ 38.) Following the FBI raid, Optima relocated to McKenzie, Tennessee, where it operated through 2009. (Id. at ¶ 39.) On February 23, 2009, NBME and the Federation filed this civil lawsuit against the Defendants, alleging that their use of the copyrighted test questions in their test preparation course materials was copyright infringement. (D.E. No. 1.) That same day, the Court granted an ex parte motion of the Plaintiffs directing the United States Marshal Service to seize and impound a copy of all USMLE-related questions and course materials used by Defendants. (D.E. No. 21.) Pursuant to the Court's order, Plaintiffs, with the assistance of the United States Marshals and two computer forensic investigators, entered Optima's McKenzie, Tennessee facility. (Stmt. of Material Facts ¶ 42, D.E. No. 62-5.) A number of students were found inside, as well as ten to twelve rooms, sixty or more computers with personal effects at most computer stations, and sleeping quarters. (Id.) As the investigators were running forensic tests on the computers and attempting to access course materials though Optima's website, the server that hosted the website was shut down. (Id. at ¶ 43.) Suliman arrived at the facility soon thereafter, leading one investigator to conclude that

---

[3] Suliman and his former wife, Egija Kuka, who is also an owner of Optima, have since been indicted in the United States District Court for the District of New Jersey on one count of conspiracy to commit mail and wire fraud and five counts of mail and wire fraud, violations of 18 U.S.C. §§ 1341, 1343, 1349 and 2. (See D.E. No. 63-1.) The actions underlying the indictment against Suliman and Kuka appear to be the same conduct giving rise to this suit.

he was notified of their arrival and shut the server down in response. (Id. at ¶ 44.) Suliman also failed to provide passwords or to identify relevant computer equipment. (Id. at ¶ 45.)

Due to Defendants' obstruction and lack of compliance with the Court's impoundment order, Plaintiffs made a second visit to Optima's facility on March 26, 2009. (Id. at ¶ 46.) However, Defendants again interfered with efforts to seize copies of their course materials. (Id.) An analysis of Defendants' records during and after the impoundment revealed that Plaintiffs' had attempted to delete and/or transfer data and preclude its retrieval. (Id. at ¶ 47.) Investigators also discovered that efforts had been undertaken to hide, relocate, and prevent the viewing of information on Suliman's laptop computer and at external sites owned or controlled by Suliman and Optima.[4] (Id. at ¶ 48.)

Despite those concealment efforts, Plaintiffs found among Optima's course materials handwritten notes reconstructing secure questions from actual USMLE examinations, typed, verbatim copies of secure USMLE questions, and computer screen shots from actual USMLE examinations. (Id. at ¶ 49.) Also discovered were computer screen shots of hundreds of non-secure, copyrighted USMLE questions that Plaintiffs made available to prospective exam-takers on the USMLE website. (Id. at ¶ 50.)

On January 20, 2011, NBME and the Federation moved for summary judgment on their copyright infringement claims. (D.E. No. 62.) Plaintiffs argue that Defendants' infringement was willful, thereby warranting an award of $2,400,000 in statutory damages pursuant to 17 U.S.C. § 504(c). Plaintiffs also seek an order pursuant to 17 U.S.C. § 502 permanently enjoining

---

[4] On October 16, 2009, the Court held Defendants in contempt of Court for failing to comply with its impoundment order. (D.E. No. 56.) The Court again directed Defendants to make available to Plaintiffs all materials that were within the scope of the impoundment order and ordered Defendants to reimburse Plaintiffs for additional costs they incurred due to Defendants' refusal to comply with the Court's orders. When the Defendants did not follow the contempt order, the Court again held Defendants in contempt and directed the United States Marshal Service to issue a warrant for Suliman's arrest and incarceration until such time as he complied with the Court's orders. (D.E. No. 60.) The Marshal Service has never located Suliman, however, and information provided by the Plaintiffs suggests that he is currently in Egypt.

Defendants from further infringing on copyrighted USMLE materials, as well as requiring

Defendants to produce all copyrighted materials in the possession of Plaintiffs for destruction as

authorized by 17 U.S.C. § 503. Finally, Plaintiffs seek the costs and attorney's fees that they

have incurred in prosecuting this action pursuant to 17 U.S.C. § 505. The Defendants have never

responded to Plaintiffs' motion.

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that

> [a] party may move for summary judgment, identifying each claim
> or defense—or the part of each claim or defense—on which
> summary judgment is sought. The court shall grant summary
> judgment if the movant shows that there is no genuine dispute as to
> any material fact and the movant is entitled to judgment as a matter
> of law. The court should state on the record the reasons for
> granting or denying the motion.

Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91

L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th

Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the

light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). When the motion is

supported by documentary proof such as depositions and affidavits, the nonmoving party may

not rest on his pleadings but, rather, must present some "specific facts showing that there is a

genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. It is not sufficient "simply

[to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus.

Co., 475 U.S. at 586, 106 S. Ct. at 1356. These facts must be more than a "scintilla of evidence"

and must meet the standard of whether a reasonable juror could find by a preponderance of the

evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). "The judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

When the non-moving party has not responded to a motion for summary judgment, the Court may not grant the motion based solely on the non-movant's failure to respond. Miller v. Shore Fin. Servs., Inc., 141 F. App'x 417, 419 (6th Cir. 2005) (per curiam); Stough v. Mayville Cmty. Sch., 138 F.3d 612, 614 (6th Cir. 1998); Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991). Rule 56 still requires the movant to demonstrate that there is no genuine dispute as to the material facts and that it is entitled to judgment as a matter of law. Miller, 141 F. App'x at 419. Thus, the Court must consider the merits of Plaintiffs' motion to determine whether they have satisfied the summary judgment standard. Id.

III. ANALYSIS

A. Defendants' Liability for Copyright Infringement

To prevail in this action for copyright infringement, NBME and the Federation must establish (1) that they own the copyright to USMLE question sets and (2) that Optima and Suliman copied those questions. See R.C. Olmstead, Inc. v. CU Interface, LLC, 606 F.3d 262, 274 (6th Cir.), reh'g & reh'g en banc denied (June 23, 2010); Kohus v. Mariol, 328 F.3d 848, 853 (6th Cir.), reh'g & reh'g en banc denied (July 21, 2003). Liability for copyright infringement may stem from either direct or contributory infringement. "[D]irect infringement arises from the violation of any one of the exclusive rights of a copyright owner." Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d 615, 621 (6th Cir.) (citing 17 U.S.C. § 501(a)), reh'g denied (Aug. 30, 2004). Contributory infringement, on the other hand, occurs when one has knowledge that another is engaging in infringing activity and "induces, causes or materially contributes" to

that activity. Id. (quoting Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971)). In this case, Plaintiffs assert that Defendants are both directly and contributorily liable.

    1. Ownership

    NBME and the Federation submit that they held ownership of sixteen copyrighted works of which the Defendants infringed. (Decl. of Steven Haist ¶ 9, D.E. No. 62-10.) Plaintiffs have presented copies of sixteen copyright registration certificates that were issued to them by the United States Copyright Office and purportedly contain one or more questions copied by Defendants. See supra p. 3 note 2. (Ex. 6 to Haist Decl., D.E. No. 62-10.) "[The] filing of a certificate of registration creates a rebuttable presumption of the validity of a copyright and of the facts contained in the ownership certificate." Mid-South Inst. of Self Def. Shooting, Inc. v. Habermehl, No. 98-6528, 2000 WL 924598, at *3 (6th Cir. June 26, 2000) (per curiam) (citing Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc., 58 F.3d 1093, 1095 (6th Cir. 1995); 17 U.S.C. § 410(c)); BancTraining Video Sys. v. First Am. Corp., No. 91-5340, 1992 WL 42345, at *3 (6th Cir. Mar. 3, 1992) (per curiam) (citing 17 U.S.C. § 410(c)). Defendants have the burden of rebutting this presumption, Habermehl, 2000 WL 924598, at *3, which they have not done. Thus, the registration certificates issued to Plaintiffs are sufficient to establish their ownership to valid copyrights for the test questions at issue.

    2. Copying

    The Plaintiffs next must establish that Defendants copied the protected creation, which they may prove by presenting either direct or indirect evidence. R.C. Olmstead, 606 F.3d at 274. "Direct evidence of copying is rarely available because it includes evidence such as party admissions, witness accounts of the physical act of copying, and common errors in the works of

plaintiffs and the defendants." Rottlund Co. v. Pinnacle Corp., 452 F.3d 726, 732 (8th Cir. 2006).

Indirect evidence may be presented through a showing of "(1) access to the allegedly-infringed

work by the defendant(s) and (2) a substantial similarity between the two works at issue." Ellis v.

Diffie, 177 F.3d 503, 506 (6th Cir. 1999). NBME and the Federation contend that they have

presented both direct and indirect evidence of copying. The Court agrees.

        i.    Direct Evidence

      This appears to be one of the few cases where direct evidence of copying is available.

USMLE testing sites are videotaped for security purposes. (Decl. of Gerard F. Dillon ¶ 19, D.E.

No. 62-6.) Gerard F. Dillon, Ph.D., Vice President of the USMLE, states that Plaintiffs reviewed

the videotapes of several examinees who recorded abnormal answer patterns and unusually low

test scores.[5] (Id. at ¶¶ 19, 22.) Those tapes revealed the individuals holding a recording device to

the computer screen in an attempt to scan or photograph the test's questions and answer choices.[6]

(Id.) See Routland Co., 452 F.3d at 732 ("Direct evidence of copying . . . includes evidence such

as . . . witness accounts of the physical act of copying . . . ."). Additionally, impounded materials

from Optima's facility included handwritten notes reconstructing secure test questions and

computer screen shots from actual examinations. (Haist Decl. ¶ 6, D.E. No. 62-10; Ex. 1-3 to

Haist Decl., D.E. No. 62-10.) See Nat'l Conference of Bar Exam'rs v. Multistate Legal Studies,

Inc., 458 F. Supp. 2d 252, 256 (E.D. Pa. 2006) (direct evidence of copying included defendants'

handwritten notes "about the fact patterns, prompts, and answer choices appearing on MBE

examinations that they have taken"). Also among those materials were wholesale copies of non-

_____

[5] For example, Dillon states one such test taker, Marius-Antoniu Ciurez, answered "A" for eighty-two
percent of the multiple choice questions on Step 1 of the USMLE. (Dillon Decl. ¶ 18, D.E. No. 62-6.)

[6] As the Court will discuss in its analysis of Defendants' contributory infringement liability, Plaintiffs have
presented proof to connect these individuals to Suliman and Optima. See infra Part III.A.3.

secure, copyrighted questions that the Plaintiffs provide on the USMLE website. (Ex. 5 to Haist Decl., D.E. No. 62-10.)

ii.    Indirect Evidence

The Court also finds that the Plaintiffs have presented uncontested, indirect evidence of copying. The first element of indirect evidence, access, "merely means an opportunity to view the protected material." Robert R. Jones Assocs., Inc. v. Nino Homes, 858 F.2d 274, 277 (6th Cir.), reh'g denied (Nov. 7, 1998). Plaintiffs may prove access by simply showing that Defendants had "'a reasonable opportunity to [view] [their] work and thus ha[d] the opportunity to copy.'" Stromback v. New Line Cinema, 384 F.3d 283, 293 (6th Cir. 2004) (quoting Ellis, 177 F.3d at 506). NBME and the Federation have done so here. Suliman personally completed Step 1 of the USMLE in 2004 and Step 2 in 2005. (Dillon Decl. ¶ 24, D.E. No. 62-6.) Other third parties who appear to be connected to Suliman, including Ciurez, also took portions of the USMLE. (Id. at ¶¶ 19-22.) Ciurez attempted Step 1 on three occasions and Step 2 on three occasions; he failed each time. (Id. at ¶ 20.) When taking the exams, Suliman and his associates had the opportunity to view secure USMLE material. See Nat'l Conference of Bar Exam'rs, 458 F. Supp. 2d at 256 (owner and employees of bar exam preparation course had access to secure test questions when personally taking multi-state bar exam); Educ. Testing Serv. v. Simon, 95 F. Supp. 2d 1081, 1088 (C.D. Cal. 1999) ("Defendants obtained access to ETS's copyrighted MSAT forms and questions through students who had recently taken the test and voluntarily provided this information."); Ass'n of Am. Med. Colls. v. Mikaelian, 571 F. Supp. 144, 150 (E.D. Pa. 1983) (defendant had access to MCAT questions because he took the exam on at least eight occasions). Additionally, Defendants had access to the non-secure USMLE questions because they are available on the exam's website. (Dillon Decl. ¶ 8, D.E. No. 62-6.)

The second requirement for indirectly proving copyright infringement is "substantial similarity" between the copyrighted and infringing works. Ellis, 177 F.3d at 506. The Sixth Circuit follows a two-step approach for evaluating substantial similarity, which "asks what aspects of the copyrighted work, if any, are protected," and "whether the second work involves elements that are substantially similar to the protected elements of the original work." R.C. Olmstead, 606 F.3d at 274-75 (citing Kohus, 328 F.3d at 855).

The uncontested facts supporting Plaintiffs' motion evidence substantial similarity between a number of copyrighted USMLE questions and Optima's course materials. During the Plaintiffs' investigation into Suliman and Optima, they arranged for an individual to enroll in and attend Defendants' test preparation program. (Dillon Decl. ¶ 26, D.E. No. 62-6.) That individual identified at least fifty questions or portions thereof in Optima's course preparation materials that were alike or quite similar to secure, copyrighted questions from the USMLE Step 1 question pool. (Id. at ¶ 26b.) NBME and the Federation also have provided the declaration of Steven Haist, Associate Vice President of Test Development Services for the NBME. (Haist Decl., D.E. No. 62-10.) Haist states that he was responsible for comparing materials obtained from Suliman and Optima with copyrighted, USMLE questions and found questions that were "substantially similar, and in many cases identical." (Id. at ¶¶ 4-5.) Attached to Haist's declaration, Plaintiffs have submitted material founds in the possession of Defendants including handwritten notes that reconstruct secure test questions from a USMLE examination (Ex. 1 to Haist Decl., D.E. No. 62-10), typed questions that are verbatim to secure USMLE questions (Ex. 2 to Haist Decl., D.E. No. 62-10), and computer screen shots from actual USMLE examinations (Ex. 3 to Haist Decl., D.E. No. 62-10). NBME and the Federation also provided a side-by-side comparison of eleven questions found in Optima's course materials that are identical or almost identical to secure,

copyrighted USMLE questions. (Ex. 4 to Haist Decl., D.E. No. 62-10). The Court has reviewed each of those questions and finds that they are substantially similar. Each USMLE question contains a distinctive image or diagram, which was copied or recreated by the Defendants.

The Court also finds that the substantially similar aspects of the copyrighted works are protectable. See Med. Educ. Dev. Servs., Inc. v. Reed Elsevier Grp., No. 05 Civ. 8665(GEL), 2008 WL 4449412, at *5-7 (S.D.N.Y. Sept. 30, 2008) (scope of copyright protection extends to test questions); Nat'l Conference of Bar Exam'rs, 458 F. Supp. 2d at 259 (recognizing protectable nature of multiple-choice bar examination questions and finding infringement based on test preparation company's use of "the same fact patterns, prompts, and answer-choice combinations found in MBE questions"). Suliman and Optima did not simply attempt to test the same scientific and medical principles as the USMLE. They copied the USMLE's exact questions and methods of assessing an examinee's knowledge of science and medicine.

3. Contributory Infringement

NBME and the Federation also contend that Defendants are liable for contributory infringement of their copyrighted test questions. "One infringes contributorily by intentionally inducing or encouraging direct infringement . . . ." Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930, 125 S. Ct. 2764, 2776, 162 L. Ed. 2d 781 (2005). For Plaintiffs to prevail under this theory, the undisputed material facts must show that Defendants had knowledge of the third party's infringing activity and "induce[d], cause[d], or materially contribute[d]" to that conduct. Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d at 621 (quoting Gershwin Publ'g Corp., 443 F.2d at 1162).

Although the motivation of Ciurez and others to aid in Suliman's unlawful activity is not readily apparent, the facts presented do suggest that Suliman knowingly induced or encouraged

14

multiple individuals to take USMLE examinations, copy the secure test questions and forward those questions to him for use in Optima's course materials. Each individual discovered to have recorded USMLE questions listed the same Romanian medical school and residential addresses in Romania and New Jersey on their USMLE applications as Suliman. (Stmt. of Material Facts ¶¶ 24-29, D.E. No. 62-5; Dillon Decl. ¶¶ 18-25, D.E. No. 62-6.) The examinees' <u>low test scores</u> and <u>abnormal answer patterns</u> also suggest that they were taking the USMLE in order to gain access to secure test questions rather than to pass the exam for medical licensure. (Stmt. of Material Facts ¶ 24, D.E. No. 62-5.) A subsequent search of Optima's premises then revealed computer screen shots from actual UMSLE examinations, presumably those taken by the third parties in question. (Stmt. of Material Facts ¶ 49, D.E. No. 62-5.)

These undisputed material facts suggest that Suliman and the examinees that were discovered recording USMLE testing sessions acted in concert to infringe Plaintiffs' copyrighted materials. The facts establish a connection between those individuals and Suliman and place the fruits of their labor in the Defendants' possession. Accordingly, the Court also finds that the Defendants are liable as contributory infringers.

B. Plaintiffs' Remedies

Having established Optima and Suliman's liability for copyright infringement, the Court must turn to the remedies available to Plaintiffs under the Copyright Act, 17 U.S.C. §§ 502 to 505. NBME and the Federation seek statutory damages, a permanent injunction prohibiting further infringement, the impoundment and destruction of the infringing materials, and their incurred costs and attorney's fees.

15

1. Statutory Damages

Under 17 U.S.C. § 504, the copyright owner may elect to recover either (1) its actual

damages and any additional profits of the infringing party, or (2) statutory damages. 17 U.S.C. §

504(a); see also Thoroughbred Software Int'l, Inc. v. Dice Corp., 488 F.3d 352, 358 (6th Cir.

2007) ("A plaintiff may seek either actual damages or statutory damages for copyright

infringement."). NBME and the Federation have opted to pursue statutory damages under section

504(c), which states in pertinent part that

> the copyright owner may elect, at any time before final judgment
> is rendered, to recover, instead of actual damages and profits, an
> award of statutory damages for all infringements involved in the
> action, with respect to any one work, for which any one infringer
> is liable individually, or for which any two or more infringers are
> liable jointly and severally, in a sum of not less than $750 or more
> than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1). If the copyright owner proves that the infringement was willful, the Court

may increase the award of statutory damages up to $150,000. 17 U.S.C. § 504(c)(2). Statutory

damages must be awarded for each infringement, and it is within the district court's broad

discretion to award any amount of statutory damages between the minimum and maximum limits

set by the Act. Digital Filing Sys., L.L.C. v. Aditya Int'l, 323 F. App'x 407, 412 (6th Cir. 2009)

(citing Wildlife Internationale, Inc. v. Clements, No. 84-3828, 84-3834, 1985 WL 14088, at *2

(6th Cir. Dec. 3, 1985) (per curiam)). "Statutory damages are designed not solely to compensate

the copyright owner for losses incurred, but also to deter future infringement." Johnson v. Jones,

149 F.3d 494, 504 (6th Cir. 1998) (quoting F.W. Woolworth Co. v. Contemporary Arts, Inc., 344

U.S. 228, 233, 73 S. Ct. 222, 97 L. Ed. 276 (1952)).

The acts of Suliman and Optima were clearly willful. An infringer acts willfully when he

knows that his conduct constitutes copyright infringement or acts with reckless disregard of that

fact. Zomba Enters., Inc. v. Panorama Records, Inc., 491 F.3d 574, 584-85 (6th Cir. 2007), cert. denied, 553 U.S. 1032, 128 S. Ct. 2429, 171 L. Ed. 2d 229 (2008); King Records, Inc. v. Bennett, 438 F. Supp. 2d 812, 860 (M.D. Tenn. 2006). Suliman, as the owner of a USMLE preparation course company, either knew or acted in reckless disregard of the fact that USMLE questions were copyrighted and reproducing them was unlawful. Additionally, Suliman had registered for the USMLE twelve times and taken Steps 1 and 2. (Dillon Decl. ¶ 24, D.E. No. 62-6.) When registering, Suliman was required to affirm that he had read and would comply with the USMLE's Bulletin of Information, including its confidentiality requirement and prohibition against reproducing or providing information related to exam content. (Id. at ¶¶ 9-10.) Further, the Court finds evidence of Defendants' willfulness from their refusal to obey the Court's impoundment order. Defendants' efforts to operate surreptitiously and obstruct the investigation into their use of copyrighted USMLE material reflect a reckless disregard for the Plaintiffs' property rights.

NBME and the Federation seek the maximum statutory damages of $2,400,000 ($150,000 for each of the 16 copyrighted works), and the Court finds that such an award is appropriate. Maximum statutory damages will compensate Plaintiffs' for the harm they have suffered, promote the integrity of the USMLE, and serve as a strong deterrent to Optima and Suliman from future infringing behavior. Plaintiffs are thus AWARDED statutory damages of $2,400,000 pursuant to 17 U.S.C. § 504(c).

2. Injunctive Relief

Plaintiffs next seek a permanent injunction against Defendants pursuant to 17 U.S.C. § 502, which authorizes the Court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "'It

is uncontroversial that a 'showing of past infringement and a substantial likelihood of future infringement' justifies issuance of a permanent injunction.'" Bridgeport Music, Inc. v. Justin Combs Publ'g, 507 F.3d 470, 492 (6th Cir. 2007) (quoting Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.06 [B] (2007)), cert. denied, 555 U.S. 818, 129 S. Ct. 85, 172 L. Ed. 2d 29 (2008); see also Digital Filing Sys., 323 F. App'x at 420 ("Permanent injunctions are granted where liability is determined and a continuing threat to a copyright exists.").

The Court finds that permanent injunctive relief is warranted here. See Nat'l Conference of Bar Exam'rs, 458 F. Supp. 2d at 262 (awarding injunctive relief under similar circumstances); Graduate Mgmt. Admission Council v. Raju, 267 F. Supp. 2d 505, 507, 512 (E.D. Va. 2003) (same). As discussed above, Plaintiffs have established that Optima and Suliman infringed upon copyrighted USMLE questions, see supra Part III.A, and the Court finds a substantial threat that they will continue to do so in the future. For twelve months, the Defendants operated in willful violation of this Court's order permitting Plaintiffs to impound a copy of all USMLE-type questions and course materials used by Defendants in their test preparation programs. (See D.E. Nos. 21, 56, 58, 60.) The Court has twice held Suliman in contempt and issued a warrant for his arrest. (See D.E. Nos. 56, 60.) However, the Defendant has managed to avoid capture by the United States Marshals. The Defendants' willful ignorance of orders of this Court and disregard for the intellectual property rights of the Plaintiffs suggests a substantial likelihood they will infringe upon Plaintiffs' copyrights in the future. See Collins v. Whitt, No. 3:04CV-646-H, 2006 WL 2457926, at *2 (W.D. Ky. Aug. 18, 2006) (defendant's disregard for plaintiff's rights and failure to participate in lawsuit or follow orders of court justified permanent injunction).

18

Accordingly, pursuant to 17 U.S.C. § 502 and Fed. R. Civ. P. 65(d), Optima, Suliman, their employees, and their agents are PERMANENTLY ENJOINED from infringing in any manner with the Plaintiff's copyrights by copying, duplicating, distributing, posting, displaying, advertising, selling, adapting, publishing, reproducing, preparing derivative works based on, renting, leasing, offering or otherwise transferring or communicating in any manner, including but not limited to any publication on the internet, or communication to any agent, representative, employee, member, person or affiliate, or in written or downloadable electronic materials, any test questions or answers that are identical or substantially similar to actual, copyrighted test questions or answers from any USMLE or to any other copyrighted USMLE material, or aiding, abetting, enabling, or authorizing any other person to do the same. Defendants, their employees, and agents are also PERMANENTLY ENJOINED from taking any USMLEs for any purpose other than to satisfy a requirement of a medical school for advancement or to obtain a license to practice medicine. Finally, Defendants are PERMANENTLY ENJOINED from attempting to subvert any USMLE by aiding or abetting others in the infringement of any copyrighted USMLE materials.

### 3. Destruction of Infringing Material

Pursuant to 17 U.S.C. § 503(b), the Defendants are also ORDERED to provide to Plaintiffs' counsel for destruction within thirty (30) days of the entry of this order all copies of all documents, in paper or electronic format, that are in Defendants' possession or control and that include any copyrighted USMLE materials, including but not limited to test questions and answers.

19

### 4. Attorney's Fees and Costs

Lastly, Plaintiffs seek to recover all costs incurred in prosecuting this action, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505. Section 505 of the Copyright Act grants discretion to the Court to award costs and reasonable attorney's fees to the prevailing party in a copyright infringement action. 17 U.S.C. § 505. Although they are not automatic, the Sixth Circuit has recognized that "[t]he grant of fees and costs 'is the rule rather than the exception and [they] should be awarded routinely.'" Bridgeport Music, Inc. v. WB Music Corp., 520 F.3d 588, 592 (6th Cir. 2008) (quoting Positive Black Talk Inc. v. Cash Money Records, Inc., 394 F.3d 357, 380 (5th Cir. 2004)); see also Thoroughbred Software, 488 F.3d at 362 ("[Attorney's fees] are awarded routinely."). The Court must consider "four non-exclusive factors to determine whether to award attorney's fees in a copyright action: 'frivolousness of the claim, motivation, reasonableness, and deterrence.'" Thoroughbred Software, 488 F.3d at 361 (quoting Coles v. Wonder, 283 F.3d 798, 804 (6th Cir. 2002)).

The Court has considered those factors and finds an award of attorney's fees and costs is appropriate. The Defendants have willfully infringed upon the Plaintiffs' copyrights and disregarded directives issued by this Court to protect those rights. Optima and Suliman have not put on any defense of the merits, but rather sought to avoid liability by destroying evidence of their wrongdoing. The first three factors—frivolousness, motivation, and objective unreasonableness—weigh in favor of Plaintiffs. See Controversy Music v. Packard Grill, LLC, No. 10-cv-12015, 2011 WL 317736, at *5 (E.D. Mich. Feb. 1, 2011) (finding that attorney's fees were warranted where defendants put on no defense and admitted liability); Broadcast Music, Inc. v. Marler, No. 1:09-cv-193, 2009 WL 3785878, at *6 (E.D. Tenn. Nov. 12, 2009) (awarding fees and costs where infringements were willful, defendants were warned that its actions were

unlawful, and they put on no defense on the merits). Finally, the need to deter conduct such as that of Optima and Suliman is vital. USMLE scores are relied upon by state medical boards when licensing doctors. The disclosure of secure, copyrighted test questions undermines the integrity of the USMLE and presents the threat that persons without the skill and knowledge required to practice medicine will be licensed as a doctor. See Nat'l Conference of Bar Exam'rs, 458 F. Supp. 2d at 262 ("By exposing its students to questions likely to appear on the MBE, PMBR undermined the integrity of the bar examination, possibly causing the admission of unqualified applicants.").

Accordingly, the Plaintiffs are hereby AWARDED costs, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505. Plaintiffs are directed to submit to the Court proof of their costs and attorney's fees within thirty (30) days of the entry of this order.

## IV. CONCLUSION

In summary, the Court holds that Defendants, Suliman and Optima, directly and contributorily infringed upon the copyrighted USMLE questions of the NBME and Federation. Plaintiffs are awarded maximum statutory damages of $2,400,000, as well as attorney's fees and costs, which they shall document within thirty (30) days. Defendants are permanently enjoined from engaging in further infringing activity and shall provide any copyrighted USMLE materials in their possession or control to Plaintiffs' counsel within thirty (30) days for its destruction. The Clerk of Court is directed to enter judgment in favor of the Plaintiffs.

IT IS SO ORDERED this 29th day of September, 2011.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

21

# Exhibit #5

UNITED STATES DEPARTMENT *of* JUSTICE

THE UNITED STATES ATTORNEY'S OFFICE

DISTRICT *of* NEW JERSEY

SEARCH THE SITE

Search  [ SEARCH ]

| HOME | ABOUT | NEWS | U.S. ATTORNEY | DIVISIONS | PROGRAMS | FAQ | CONTACT US |

Home»News» Press Release

NEWS

UNITED STATES ATTORNEYS' OFFICES
HOMEPAGE

UNITED STATES ATTORNEYS' OFFICES
BRIEFING ROOM



JUSTICE 101

## Test Prep Company Owner Who Was Extradited From Latvia Admits Stealing Questions From Medical Licensing Exam

FOR IMMEDIATE RELEASE                                     December 17, 2012

NEWARK, N.J. – One of the owners and operators of a Totowa, N.J., test preparation business who was extradited last month from Latvia today admitted her role in stealing "live" licensing examination questions from the National Board of Medical Examiners, U.S. Attorney Paul J. Fishman announced.

Egija Kuka, 38, who owned and operated Optima University with her former husband, co-defendant Eihab Suliman, pleaded guilty before U.S. District Judge Stanley R. Chesler in Newark federal court to Counts One and Three of an Indictment charging her with mail and wire fraud and conspiracy to commit mail and wire fraud. Suliman remains a fugitive.

According to documents filed in this case and statements made in court:

Optima University was a test preparation business that provided courses designed to prepare students for the U.S. Medical Licensing Examination (USMLE), which is created and administered by the National Board of Medical Examiners (NBME), an independent, not-for-profit organization headquartered in Philadelphia.

The USMLE is used by medical licensing authorities throughout the United States to evaluate physicians seeking an initial license to practice medicine. The test assesses whether international medical school graduates are ready to enter accredited residency or fellowship programs in the United States. Medical school graduates – whether they graduated from a United States medical school or a foreign medical school – generally must complete at least some parts of the USMLE as a prerequisite to enter into residency training or receive a medical license. NBME goes to extensive lengths to keep test questions secure and examinees are advised that the test questions used in the USMLE are copyrighted and not to be distributed or reproduced.

Beginning in December 2007, Suliman and Kuka solicited potential Optima University students by guaranteeing that the students would pass the USMLE, even if the student had previously failed it. Suliman and Kuka also assured potential students that any tuition paid to Optima University would be "risk-free," and that any student who did not pass the USMLE could retake the Optima course at no additional cost.

On Dec. 2, 2007, Kuka applied via the internet to take the USMLE in Milan, Italy, falsely stating that she had graduated from the University of Oradea, an accredited medical school in Romania, with a doctorate in medicine. On Dec. 18, 2007, Kuka submitted a "Certification of Identification Form" along with a copy of a fabricated diploma from University of Oradea's medical school to enable her to take the exam and gain access to, steal, and reproduce the live test questions.

Kuka took Steps 1 and 2 of the USMLE on April 7, 2008, and April 14, 2008, in Milan. Video surveillance from those test sessions show Kuka using a small digital video recording device to record the live test questions that were displayed on the computer monitor. On May 28, 2008, Kuka sat again for Step 1 of the USMLE examination.

On May 28, 2008, a search was conducted at Optima University and live test questions were found. These live test questions were used by Suliman and Kuka on practice examinations provided to Optima University students.

The six-count Indictment was returned in July of 2011, however, Kuka had already fled to Latvia. In

FEMA
Federal Emergency Management Agency (FEMA) announced that federal disaster aid has been made available to the State of New Jersey.

FEMA is now accepting applications from residents and business owners who sustained losses in Atlantic County, Cape May County, Essex County, Hudson County, Middlesex County, Monmouth County, Ocean County and Union County.

Register online at Www.disasterassistance.gov , by web-enabled mobile device at m.fema.gov or by calling 1-800-621-FEMA(3362) or 1-800-462-7585 (TTY) for the hearing and speech impaired. The toll-free telephone numbers will operate from 7 a.m. to 10 p.m. EDT seven days a week until further notice.



Community Outreach

Giving Back to the Community through a variety of venues & initiatives.

[ LEARN MORE ]

LAW ENFORCEMENT
COORDINATING
COMMITTEE

Training and seminars for Federal, State, and Local Law Enforcement Agencies.

[ LEARN MORE ]

September 2011, U.S. authorities requested Kuka's extradition pursuant to the extradition treaty between the United States and Latvia.

Each count of the Indictment is punishable by a maximum prison term of 20 years in prison and a fine of $250,000 or twice the gross gain or loss caused by the offenses. Sentencing is scheduled for March 19, 2013.

U.S. Attorney Fishman credited special agents of the FBI, under the direction of Special Agent in Charge Michael B. Ward, with the investigation that led to today's guilty plea. He also thanked the Office of International Affairs, Criminal Division, at DOJ and Officials in the Republic of Latvia for their assistance in this matter.

The government is represented by Assistant U.S. Attorney Deborah J. Gannett of the U.S. Attorney's Office Health Care and Government Fraud Unit.

12-440

Defense counsel: Peter Carter Esq., Assistant Public Defender's Office, Newark

Kuka, Egija & Suliman, Eihab Indictment

Return To Top



Civil Rights Enforcement

**LEARN MORE**

The Right Prescription for New Jersey in 5 easy steps...

Take The Right Prescription For New Jersey

REPORT FBI 973.792.3000

Report Health Care Fraud: FBI Newark's Ad Campaign

STOPFRAUD.GOV
FINANCIAL FRAUD ENFORCEMENT TASK FORCE

Report Residential Mortgage-Backed Securities Fraud

OFICINAS DE LOS FISCALES DE LOS ESTADOS UNIDOS
EN ESPAÑOL



DISTRICT of NEW JERSEY

JUSTICE.GOV.USAO

| Home | About | News | US Attorney | Divisions | Programs | FAQ | CONTACT US |
| | The Office | Press Releases | | Appeals | Outreach | | Office |
| | The District | Audio/Video | | Civil | Law | | Directions |
| | | | | Criminal | Enforcement Committee | | Civil Rights Complaints |
| | | | | Special Prosecutions | Victim Witness | | |
| | | | | Administrative | Need & See | | |

# Exhibit #6

# Announcements

## Optima Test Prep Sued

**March 11, 2009**

The sponsoring organizations of the United States Medical Licensing Examination® (USMLE®) have
Court for the Western District of Tennessee, alleging copyright infringement by Optima University, a prov
courses. On February 24, a U.S. Marshal executed a court order to obtain the Optima prep materials from
McKenzie, Tennessee.

In their filing, the National Board of Medical Examiners and the Federation of State Medical Boards alleg
using questions that they own and have copyrighted.

"Americans rely on the USMLE as a keystone in the medical licensing process, our primary means of asse
physicians who wish to practice medicine in the United States," said Daniel Kimball, Jr., MD, chair of the
Committee, which sets policy for the exam's administration. "The integrity of the exam is critical for publi

The USMLE is copyrighted, and USMLE examinees agree not to disclose secure test questions at any time
secure test materials may raise questions about the validity of a test-taker's score.

Providers of legitimate review courses create their own test prep materials. Under U.S. copyright laws, tes
right to use USMLE test items.

The USMLE maintains rigorous security at all test sites, including monitoring by trained proctors and vid
score responses and patterns to identify potential breaches. When test-takers sign up for the exam, they a
confidentiality of the materials" and not to provide information about content "that may give an unfair ad
may be taking the examination."

Dr. Kimball points out test-takers who do not fulfill their pledges of confidentiality fail to meet the medica
vitally important ways. "We depend on our physicians for the highest standards of ethics as well as medic

The USMLE Composite Committee includes representatives from the two sponsoring organizations, the A
Educational Commission for Foreign Medical Graduates.

# Exhibit #7

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **NATIONAL BOARD OF MEDICAL EXAMINERS** <br> **3750 Market Street** <br> **Philadelphia, Pennsylvania  19104,** <br><br> **and** <br><br> **FEDERATION OF STATE MEDICAL BOARDS** <br> **400 Fuller Wiser Road, Suite 300** <br> **Euless, Texas 76039-3855** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **OPTIMA UNIVERSITY LLC** <br> **1774 Highway 22** <br> **McKenzie, Tennessee 38201,** <br><br> **EIHAB MOHAMED SULIMAN** <br> **1774 Highway 22** <br> **McKenzie, Tennessee 38201, and** <br><br> **JOHN DOES 1-10,** <br><br> **Defendants.** | Civil Action No. _____ |

## COMPLAINT FOR DAMAGES AND
## INJUNCTIVE RELIEF

Plaintiffs the National Board of Medical Examiners ("NBME") and the Federation of State Medical Boards (the "Federation") (collectively, "Plaintiffs) hereby allege as follows:

### NATURE OF ACTION

1.      This is a copyright infringement action for damages and injunctive relief

against defendants Optima University LLC (a/k/a Optima USMLE Review) ("Optima");

its owner, Eihab Mohamed Suliman (a/k/a Eihab Sullivan, Sihab M. Suliman, Eihab M.

Ebrahim, Eihab Brahim, and Eihab M. Ibrahim) ("Suliman"); and John Does 1-10 ("Doe

Defendants") (collectively, "Defendants").   Three causes of action are asserted:  direct

copyright infringement, contributory copyright infringement, and vicarious liability for

copyright infringement by others.

### THE PARTIES

2.      NBME is a not-for-profit organization that provides examinations for the

health professions. Its mission is to help protect the public through state-of-the-art

assessment of the knowledge and skills of prospective health care providers.  The NBME

was founded in 1915 because of the need for a voluntary, nationwide examination system

that medical licensing authorities could use as a common standard by which to evaluate

candidates for medical licensure.

3.      The Federation is a non-profit organization established in 1912 and

representing the 70 state medical boards of the United States and its territories. The

Federation's mission is to continuously improve the quality, safety and integrity of health

care through developing and promoting high standards for physician licensure and

practice.

4.      The NBME and the Federation own and sponsor the United States

Medical Licensing Examination® ("USMLE"), which is a standardized examination that

is used in evaluating applicants for medical licensure in the United States. The USMLE

is designed to assess a physician's ability to apply knowledge, concepts, and principles --

85016961.1

2

5.      With the assistance of various Doe Defendants, Optima University LLC and its owner, Eihab Suliman, operate a test preparation program which purports to assist prospective examinees in preparing to take the USMLE examination.  As part of that program, the Defendants have improperly solicited, obtained, copied and distributed copyrighted USMLE examination materials owned by the Plaintiffs, including confidential test questions that are intended to be used on future examinations.

6.      Despite its name, Optima is not a "university."   It is a for-profit, commercial test preparation program.

## JURISDICTION AND VENUE

7.      NBME is a not-for-profit District of Columbia corporation having its principal place of business at 3750 Market Street, Philadelphia, Pennsylvania 19104.

8.      The Federation is a non-profit Nebraska corporation having its principal place of business at 400 Fuller Wiser Road, Suite 300, Euless, Texas 76039-3855.

9.      Eihab Suliman is an individual who resides or may be found in this district.  On information and belief, Suliman maintains residences in New Jersey and Tennessee.  He owns Optima, which is incorporated in Tennessee, and he regularly transacts business here.  His Tennessee address (home and/or work) is 1774 Highway 22, McKenzie, Tennessee 38201.

10.     Optima is a Tennessee corporation whose address is 1774 Highway 22, McKenzie, Tennessee 38201.   Optima incorporated in Tennessee in January 2008. Optima has also operated from a location in Totowa, New Jersey.

11.     The true names and capacities of John Does 1-10 are unknown to Plaintiffs at this time. Upon information and belief, each of the John Doe defendants has helped Optima and Suliman copy and distribute the Plaintiffs' copyrighted materials, and each resides, may be found or is otherwise subject to suit in this district. Plaintiffs believe that information obtained in discovery will lead to the identification of each Doe Defendant. Plaintiffs will amend their complaint to allege the true names and capacities of the Doe Defendants as they are ascertained.

12.     The matter in controversy consists of claims brought under federal law, exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. The Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1338(a).

13.     Venue is proper under 28 U.S.C. §§ 1391(b) and 1400(a).

14.     This Court has personal jurisdiction over Optima and Suliman because they reside and/or conduct business in this district, and because Optima owns property here.

15.     This Court has personal jurisdiction over the Doe Defendants because, on information and belief, one or more of the Doe Defendants reside or may be found in this district and/or commercial transactions have occurred between the Doe Defendants and residents of Tennessee.

## FACTUAL ALLEGATIONS

### A.     The USMLE

16.     The USMLE examination is integral to each state's effort to ensure that only competent and qualified individuals are licensed to practice medicine.

17.     There are three parts of the USMLE, known as "Steps." Passage of all three Steps is accepted by all U.S. medical licensing authorities to satisfy the examination requirements for licensing physicians holding the M.D. or its equivalent degree in the case of graduates of international medical schools.

18.     All three USMLE Step exams, except for the Clinical Skills component of Step 2, include multiple-choice questions.     The multiple-choice questions are administered in a computer-based (rather than paper-and-pencil) format.  The USMLE is administered at locations around the world to individuals who are attending, or have attended, medical schools in the United States and in other countries.

19.     The USMLE Step 1 examination assesses whether the examinee understands and can apply important concepts of the sciences basic to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease, and modes of therapy.  Step 1 assesses mastery of not only the sciences that provide a foundation for the safe and competent practice of medicine, but also the scientific principles required for maintenance of competence through lifelong learning. The Step 1 exam consists of approximately 350 multiple-choice questions.

20.     The USMLE Step 2 exam, which includes a Clinical Knowledge component ("Step 2 CK") and a separate Clinical Skills component ("Step 2 CS"), assesses whether the examinee can apply medical knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision, and emphasizes health promotion and disease prevention.  Step 2 is designed around principles of clinical sciences and basic patient-centered skills that provide the foundation for the safe and competent practice of medicine.  Step 2 CK consists of approximately

85016961.1

5

21.     The USMLE Step 3 examination assesses whether the examinee can apply medical knowledge and understanding of biomedical and clinical science essential for the unsupervised practice of medicine, with emphasis on patient management in ambulatory settings.  Step 3 provides a final assessment of physicians assuming independent responsibility for delivering general medical care.    The Step 3 examination consists of approximately 450 multiple-choice questions, as well as approximately nine computer-based case simulations.

22.     For each of the three USMLE Step exams, the development of test questions and question pools is a lengthy, painstaking and expensive creative process involving input from many subject matter experts and other individuals, with multiple levels of substantive, editorial and psychometric review and analysis.

23.     The USMLE tests and test questions are original, copyrightable materials, and the Plaintiffs have complied in all respects with the requirements of the Copyright Act, 17 U.S.C. § 101 *et seq.*  They therefore enjoy certain exclusive rights with respect to the test and the test questions, including the exclusive right to copy, distribute, display, and publish the tests and test questions; to authorize others to do so; and to prepare derivative works.

24.     At all relevant times, the Plaintiffs have been the sole owners and holders of all right, title and interest in and to the copyrights in the USMLE tests and test questions at issue in this lawsuit.

85016961.1

6

25.     It has been, and will continue to be, the regular practice of the Plaintiffs to register USMLE tests and test questions with the United States Copyright Office.  The "TX" registration numbers assigned by the Copyright Office to USMLE forms and/or sets of computer-based questions registered by the Plaintiffs include the following:  TX 6-845-880; TX 6-845-857; TX 6-596-343; TX 6-419-276; TX 6-468-136; and TX 6-343-190.

26.     The USMLE is a "secure" test, which means that the questions that appear on each exam are confidential and have not been previously disclosed by the Plaintiffs to the general public.  USMLE test materials are registered with the Copyright Office in compliance with regulations that the Copyright Office has adopted specifically to protect the confidentiality of secure tests.

27.     As is common practice with respect to secure, standardized tests, the Plaintiffs reuse a certain number of USMLE questions on subsequent examinations in order to "equate" examination scores from one test form to another, and occasionally for other reasons.  As a result, a certain number of questions that appear on each version of a USMLE exam may also appear on future versions of the exam.

28.     Because the USMLE is a secure examination, confidential USMLE test questions are not intended to be disclosed except during actual test administrations.

29.     The unauthorized disclosure of secure test items compromises the integrity of the examination process.  It can also jeopardize the validity of the resulting scores and undermine the medical licensing process in the United States.  This has particular significance here, because the examinations in question are used by state medical boards in making decisions about licensing doctors.  Examinees should pass the USMLE by

30.     This case involves the unauthorized copying and disclosure of secure

USMLE questions. It also involves the unauthorized copying and disclosure of publicly

released, non-secure USMLE questions.

31.     The USMLE "Bulletin of Information" alerts prospective examinees to the

fact that the USMLE exam materials are confidential and copyrighted:

> **OWNERSHIP AND COPYRIGHT OF**
> **EXAMINATION MATERIALS**
>
> The examination materials used in the USMLE are
> copyrighted.    If you reproduce and/or distribute any
> examination    materials,    by    any    means,    including
> memorizing and reconstructing them, without explicit
> written permission, you are in violation of the rights of the
> owners.... [E]very legal means available to protect USMLE
> copyrighted materials and secure redress against those who
> violate copyright law may be pursued.

The Bulletin also sets forth certain "Rules of Conduct" that examinees agree to comply

with in applying to take the USMLE, including the following two rules:

> 7.     You will not remove materials in any form (written,
> printed, recorded, or any other type) from the test center.
>
> 8.     All examination materials remain the property of
> the USMLE parent organizations, and you will maintain the
> confidentiality of the materials, including the multiple-
> choice items..... You will not reproduce or attempt to
> reproduce examination materials through memorization or
> any other means. Also, you will not provide information
> relating to examination content that may give or attempt to
> give unfair advantage to individuals who may be taking the
> examination. This includes [making] postings regarding
> examination content and/or answers on the Internet.

The Bulletin is found on the USMLE website and is available to all examinees well in

advance of their test date. When they apply to take any USMLE Step, examinees are

required to affirm that they have read and will comply with the Bulletin. They see a screen on the computer reminding them of the rules when they take the exam.

32.     In order to help prospective examinees familiarize themselves with the types of questions contained on the USMLE and otherwise prepare for the exam, the Plaintiffs publish previously administered, "retired" USMLE questions. For example, the Plaintiffs make practice tests available to all prospective examinees, in an electronic format that is similar to what examinees will encounter when they take the actual USMLE exams. The practice tests contain hundreds of publicly released, non-secure USMLE questions. The practice materials are copyrighted.

**B.     Defendants' Unlawful Conduct**

33.     This case involves the unauthorized copying, reconstruction and distribution of copyrighted USMLE test questions and answers by Optima, Suliman, the Doe Defendants, and other individuals for whose conduct the Defendants are responsible. Defendants have obtained, used, and distributed USMLE questions that have been improperly and unethically copied or disclosed by individuals who have taken the USMLE.

34.     In 2007, NBME noted a series of unusual test results from individuals who took their USMLE exams in Bucharest, Romania and Budapest, Hungary. The test results suggested that these individuals might be taking the exams *not* in an effort to pass, but rather to gain access to exam content.

35.     Plaintiffs obtained video recordings of the testing sessions for certain of the individuals. On more than one of the recordings, the examinee is seen using a device



36.     One of the individuals who is seen photographing, videotaping or scanning test content from his computer screen has taken the USMLE exams at least six times, failing each time with an anomalously low score.     On four of his exam applications, he listed an address in New Jersey that was associated with Suliman, 1341 North Avenue, Apt. 9K, Elizabeth, New Jersey. In two of his other applications, he listed an address in Romania that has been associated with Suliman, Str. Morii, No. 8, BL. ANS. ScA et 4, Apt. 18, Oradea 3700, Bihor, Romania.

37.     Other individuals also took USMLE exams in Romania or Hungary, scored very poorly, and listed as their address the same addresses in New Jersey or Romania that have been associated with Suliman.

38.     Suliman has registered to take the USMLE numerous times and has taken the USMLE at least twice.

39.     On each occasion that he took the USMLE, Suliman was informed in writing that the USMLE is copyrighted and that examinees may not disclose the test questions or answers that they see when taking the test.

40.     Notwithstanding his awareness of this non-disclosure obligation, Suliman has actively encouraged examinees to copy and distribute USMLE test questions and answers, and he has done so himself.

41.     Optima offers 12-week, 7-week and 4-week programs for individuals who are preparing to take the USMLE Step 1 or USMLE Step 2 examination.     Optima currently charges $6,950, $4,950, and $3,250 for those programs, respectively.

42.     Optima claims that its customers have a pass rate on the USMLE exams of over 98% and that its customers include individuals who have previously been unable to pass the exams. Optima's website tells prospective customers that "[w]e will get you an average 45 points gain from your non-passing score ... don't waist [sic] your time and energy in irrelevant materials...."

43.     Optima tells its customers that they will have "[a]ccess to over 3,000 USMLE style questions."

44.     The Optima course materials include questions which are owned and copyrighted by the Plaintiffs (and perhaps by third-party copyright holders, such as Kaplan or other test-preparation organizations). The use of the Plaintiffs copyrighted materials by Optima is unauthorized and unlawful.

45.     Despite the fact that Optima's materials included copyrighted materials developed and owned by the Plaintiffs, Optima tells its customers that Optima owns the copyrights in all of the "Content provided in lectures, our books, our DVD's, multimedia kinds or tools or in the website;" that customers "are not permitted to copy, modify, reproduce, disclose or distribute any of the copyrighted Content in whole or in part;" and that "[a]ny unauthorized use of the Content is a violation of Optima University rights protected by USA Federal laws and could subject you and others who are involved to criminal and civil penalties...."

46.     Defendants do not have and have never had permission to reproduce, publish, display, distribute copies of, or prepare derivative works based on any released or unreleased USMLE test questions or other copyrighted USMLE materials.

47.     Defendants' misappropriation, use and distribution of the Plaintiffs' copyrighted materials has at all relevant times been, and continues to be, willful and knowing.

## COUNT I:  COPYRIGHT INFRINGEMENT

48.     Plaintiffs repeat the allegations above as if fully set forth herein.

49.     Each version of each USMLE exam is an original work of authorship that is copyrighted under the laws of the United States on creation.  Plaintiffs own the copyright in each of these USMLE exams and in the questions and answers contained therein.

50.     Under the Copyright Act, 17 U.S.C. § 101 et seq., Plaintiffs enjoy exclusive rights with respect to the USMLE tests and the questions and answers contained therein, including the exclusive rights to reproduce, distribute, display and create derivative works based on the tests and test questions and answers.

51.     Plaintiffs have been issued certificates of registration by the Register of Copyrights for the USMLE examination materials.

52.     Defendants have not been authorized by the Plaintiffs to reproduce, publish, distribute copies of, or prepare derivative works based on any published or unpublished USMLE test or test questions or any other copyrighted USMLE works.

53.     Defendants have copied, reproduced, distributed, published and/or displayed copyrighted USMLE test preparation materials and copyrighted USMLE test questions, or derivations thereof, without permission or authorization from the Plaintiffs.

54.     Defendants have willfully infringed and are continuing to infringe the Plaintiffs' copyrights by copying, reproducing, distributing, publishing, preparing

85016961.1

12

55.     Defendants' infringement of the Plaintiffs' copyrights has harmed the Plaintiffs, for which the Plaintiffs are entitled to damages and other relief.

<b>COUNT II:  CONTRIBUTORY INFRINGEMENT</b>

56.     Plaintiffs repeat the allegations above as if fully set forth herein.

57.     With knowledge of the infringing activity, Defendants have induced, caused, or materially contributed to the acts of third parties who have infringed upon copyrights held by the Plaintiffs.  Among other activities, Defendants have encouraged, solicited and/or facilitated others to copy USMLE questions and other USMLE materials that are protected by the copyrights held by the Plaintiffs.

58.     Defendants' acts have harmed the Plaintiffs, for which the Plaintiffs are entitled to damages and other relief.

<b>COUNT III:  VICARIOUS LIABILITY FOR INFRINGING
CONDUCT OF OTHERS</b>

59.     Plaintiffs repeat the allegations above as if fully set forth herein.

60.     Defendants Optima and Suliman determine and control what materials are used in the Optima test preparation program.

61.     Defendants Optima and Suliman have encouraged and induced others to copy, disclose, discuss, access, and distribute copyrighted USMLE questions and answers and other USMLE materials, and have supervised such unlawful activities.

62.     Defendants Optima and Suliman have an obvious and direct financial interest in having copyrighted USMLE questions and answers copied, discussed,

63.     Defendants Optima and Suliman have known, at all relevant times, that other individuals are copying, disclosing and/or distributing materials that are copyrighted by the Plaintiffs for use in connection with Optima's test preparation program. Defendants Optima and Suliman have also known that the disclosure and distribution of such USMLE materials have not been authorized by the Plaintiffs. Defendants Optima and Suliman are vicariously liable for these third-party infringements of the Plaintiffs' copyrights.

64.     The acts of Defendants Optima and Suliman have harmed the Plaintiffs, for which the Plaintiffs are entitled to damages and other relief.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that the Court:

(1)     Enter a preliminary and a permanent injunction, as specifically provided by 17 U.S.C. § 502 and any other applicable law, that prohibits the Defendants, their agents, servants, employees, attorneys, assigns and all persons in concert or participation with them, from infringing in any manner the Plaintiffs' existing or future copyrights by copying, duplicating, distributing, posting, displaying, advertising, selling, adapting, publishing, reproducing, preparing derivative works based on, renting, leasing, offering or otherwise transferring or communicating in any manner, orally or in written, printed, audio, electronic, photographic, machine-readable, or other form, including but not limited to any publication on the internet, or communication to any agent, representative, employee, member, person or affiliate, or in written or downloadable electronic

materials, any test questions or answers that are identical or substantially similar to actual, copyrighted USMLE test questions or answers or other copyrighted USMLE material, or aiding, abetting, or licensing any other person to do the same;

(2)    Enter an order, as specifically provided for in 17 U.S.C. § 503, impounding in unencrypted, plain text format:

(a)    all copies of all test questions, answers, workbooks, software, simulated exams and other materials that are used by the Defendants and that contain test questions or other materials that infringe the Plaintiffs' copyrights, and

(b)    all plates, molds, matrices, masters, tapes, disks, hardware, software and other articles for reproducing such infringing copies;

(3)    Enter an order, as specifically provided by 17 U.S.C. § 503, for destruction of all infringing copies of materials that include all or any part of any copyrighted USMLE test questions or answers or any USMLE materials derived from such test questions or answers;

(4)    Award the Plaintiffs:

(a)    All profits earned by the Defendants, directly or indirectly, by reason of their infringement of the Plaintiffs' copyrights, plus the Plaintiffs' actual damages resulting from the infringement of their copyrights by the Defendants, as authorized by 17 U.S.C. § 504(b); or

(b)    As an alternative to the Plaintiffs' actual damages and the Defendants' profits, and at the election hereinafter by the Plaintiffs, statutory damages

based upon the Defendants' willful infringement in the maximum amount permitted by the Copyright Act, as authorized by 17 U.S.C. § 504(c);

(5)     Award the Plaintiffs their costs incurred in this action, including reasonable attorneys' fees, as provided by 17 U.S.C. § 505 and by any other applicable law; and

(6)     Enter an order requiring that Defendants file with this Court and serve upon the Plaintiffs, within thirty (30) days after the entry and service of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction; and

(7)     Award the Plaintiffs such other, further, different, or additional relief as this Court deems equitable and proper.

DATED: This, the 23rd day of February, 2009.

Respectfully submitted,


/s/ Russell E. Reviere


Rainey, Kizer, Reviere & Bell, P.L.C.
105 Highland Avenue South
P.O. Box 1147
Jackson, TN 38301
(731) 423-2414
Fax: (731) 426-8111
rreviere@raineykizer.com


Robert A. Burgoyne
Caroline M. Mew
FULBRIGHT & JAWORSKI LLP
801 Pennsylvania Avenue, N.W.
Washington, DC 20004-2623
(202) 662-0200
Fax: (202) 662-4643
rburgoyne@fulbright.com
cmew@fulbright.com


*Counsel for Plaintiffs National Board of
Medical Examiners and Federation of State
Medical Boards*