**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
_____
                                   :
MATHEW THOMAS, JR.                 :     CIVIL ACTION
                                   :
          v.                       :     NO. 2:13-CV-03946-CMR
                                   :
NATIONAL BOARD OF MEDICAL          :
EXAMINERS, et al.                  :
_____:
```

<u>**ORDER**</u>

AND NOW, this _____ day of _____, 2014, upon consideration of the Motion for Summary Judgment of the National Board of Medical Examiners, and Plaintiff's response thereto, it is hereby **ORDERED** and **DECREED** that the Motion for Summary Judgment of the National Board of Medical Examiners is **GRANTED.** Plaintiff's claims against the National Board of Medical Examiners are **DISMISSED,** with prejudice.

**BY THE COURT:**

_____
**CYNTHIA M. RUFE, J.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

|                                   |   |              |
|-----------------------------------|---|--------------|
| MATHEW THOMAS, JR.                | : | CIVIL ACTION |
|                                   | : |              |
| v.                                | : | NO. 2:13-CV-03946-CMR |
|                                   | : |              |
| NATIONAL BOARD OF MEDICAL         | : |              |
| EXAMINERS, et al.                 | : |              |

---

**MOTION FOR SUMMARY JUDGMENT OF
THE NATIONAL BOARD OF MEDICAL EXAMINERS**

For the reasons set forth in the accompanying memorandum of law and joint statement of stipulated material facts, Defendant the National Board of Medical Examiners ("NBME") moves for summary judgment in its favor and against Plaintiff Mathew Thomas, Jr.

/s/ Maureen P. Holland
Neil J. Hamburg
Maureen P. Holland
ID. Nos. 32175 and 206327
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590
hamburgnj@hamburg-golden.com
hollandmp@hamburg-golden.com
Attorneys for Defendant
the National Board of Medical
Examiners

Dated:    June 16, 2014

**TABLE OF CONTENTS**

**PAGE**

I.   INTRODUCTION                                              1

II.  FACTS                                                     3

III. ARGUMENT                                                 9

     A.   The Standard for Summary Judgment                  9

     B.   Discrimination                                     12

     C.   Defamation                                         15

     D.   Negligence                                         17

     E.   Violation of the First Amendment                  19

IV.  CONCLUSION                                              21

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                       :
MATHEW THOMAS, JR.                     :      CIVIL ACTION
                                       :
          v.                           :      NO. 2:13-CV-03946-CMR
                                       :
NATIONAL BOARD OF MEDICAL              :
EXAMINERS, et al.                      :
_____:

MEMORANDUM OF LAW IN SUPPORT OF
THE NATIONAL BOARD OF MEDICAL EXAMINERS'
MOTION FOR SUMMARY JUDGMENT

## I.   INTRODUCTION

On or about July 5, 2013, Plaintiff Mathew Thomas, Jr. ("Plaintiff"), acting *pro se*, filed a Complaint (Doc. 1) that contained no legal claims, but alleged in general terms that the National Board of Medical Examiners ("NBME") and the Educational Commission for Foreign Medical Graduates ("ECFMG") treated him unfairly by subjecting him to "inappropriate punishment and inconsistent decisions" by labeling his USMLE Step 2 CK score "indeterminate."[1]  On or about December 13, 2013, Plaintiff filed an Amended Complaint (Doc. 17), which was equally unclear and devoid of legal claims.  Plaintiff has asked this Court to validate his December 31, 2007 attempt at USMLE Step 2 CK--an exam he took and failed *five times*[2]--because he claimed that the

_____

[1] Doc. 1 at ¶ 1 of factual summary attached to Plaintiff's Complaint.

[2] By way of background, Plaintiff attended three different medical schools--Ross University in Dominica, St. Matthew's University in the Cayman Islands, and St. Christopher Iba Mar Diop in Senegal.  See Exhibit B, Joint Statement of Stipulated Material Facts, at ¶ 1.  He failed USMLE Step 1 exam six times

NBME had "no direct evidence, just assumptions" that he had previous exposure to stolen exam materials.[3]

At Plaintiff's deposition, in response to a request that he clarify the legal bases for his complaint, Plaintiff announced that he had four claims against the NBME: discrimination, defamation, negligence and First Amendment violations.[4]  On or about June 2, 2014, Plaintiff filed an Opposition to Defendants' Summary Judgment Motions (Doc. 30) ("Plaintiff's Opposition") in which he re-articulates the same four claims against the NBME.[5]

The NBME moves for summary judgment under Federal Rule of Civil Procedure 56 because there are no genuine issues of material fact and because the NBME is entitled to judgment as a matter of law.  In accordance with the Court's procedures, the NBME prepared and filed an outline of its Motion for Summary Judgment along with a Joint Statement of Stipulated Material Facts ("Joint Statement").  The NBME incorporates the facts as agreed to by the parties in their Joint Statement, which is

---

before achieving a passing score, and he failed USMLE Step 2 CK five times before the administration at issue.  Id. at ¶ 29. Under the USMLE six-attempt limit, Plaintiff is ineligible to take Step 2 CK again.  Id. at 30.  In addition, under the ECFMG seven year rule, Plaintiff's passing scores on Step 1 and Step 2 CS score have expired.  Id. at 33.

[3] Doc. 17, p. 3.

[4] Exhibit A, Thomas Dep., at pp. 48:11 through 61:24, Jan. 10, 2014.

[5] See Thomas's Opposition to Defendants' Summary Judgment Motions ("Plaintiff's Opposition") (Doc. 30) at 5 for negligence; id. at 11 for discrimination; id. at 12 for defamation; and id. at 13 for "Guilty by Association", which is Plaintiff's title for his discussion of the First Amendment.

attached as Exhibit B.  The NBME also incorporates the arguments
in the ECFMG's reply in support of summary judgment that is
being filed today.  The NBME asks the Court to dismiss this
action in its entirety.

## II.  FACTS

The NBME is an independent not-for-profit organization
whose purpose is to protect the health of the public through the
state of the art assessment of physicians and other health
professionals.[6]  Along with the Federation of State Medical
Boards ("FSMB"), the NBME sponsors the United States Medical
Licensing Examination ("USMLE"), the standardized examination
used to evaluate applicants for medical licensure in the United
States.[7]  The USMLE is designed to assess a physician's ability
to apply knowledge, concepts, and principles, as well as
demonstrate fundamental patient-centered skills, that are
required for providing safe and effective patient care.[8]  State
medical boards, which are the entities that grant licenses to
practice medicine, require applicants to pass all of the USMLE
component exams, consisting of three "Steps."[9]  All USMLE
questions and answers are confidential and protected by
copyright.[10]

---

[6] See Exhibit B at ¶ 4.
[7] Id. at ¶ 6.
[8] Id. at ¶ 7.
[9] Id. at ¶ 8.
[10] Id. at ¶ 15.

- 4 -

In 2008, the Federal Bureau of Investigation raided a facility in New Jersey out of which a test prep company called Optima University ("Optima") operated. The FBI was conducting a federal criminal investigation of Optima for possessing and distributing copyrighted USMLE test material.[11] Plaintiff, who was working as an Optima employee, was present on site during the FBI raid, and the FBI questioned him for two to three hours.[12]

In 2009, the NBME and FSMB filed a lawsuit against Optima alleging that Optima's unauthorized use of copyrighted test questions was copyright infringement.[13] Based on evidence retrieved by court-ordered seizure from Optima's headquarters, the NBME and FSMB alleged that Optima agents stole and disseminated actual USMLE test questions by photographing and videotaping computer screens during exam administrations and by memorizing and reproducing test content.[14]

The NBME analyzed several thousand test questions and answers that it recovered from Optima's electronic question bank.[15] Personnel in the NBME's Test Development Services division analyzed the seized material to determine whether or not it matched actual copyrighted USMLE examination questions.[16]

---

[11] Id. at ¶ 16.
[12] Id. at ¶¶ 19-20.
[13] Id. at ¶ 17.
[14] Id.
[15] See Exhibit G, deposition of Dr. Steven Haist, p. 16:19 through 16:22.
[16] Id., pp. 11:18 through 15:2.

- 5 -

Most of the seized Optima content that the NBME analyzed matched word-for-word with copyrighted USMLE test content.[17]  The vast majority of the seized questions were part of the "live pool," meaning that they were still being used in actual USMLE exam administrations.[18]  The NBME removed the stolen test material from the live pool between 2009 and 2010, long after Plaintiff took the examination at issue in this case.[19]  On December 31, 2007, when Plaintiff took and obtained his only passing score on Step 2 CK, almost one-third of his exam was comprised of stolen questions.[20]

Plaintiff filed this complaint because the USMLE's Committee on Score Validity ("CSV") ruled that his December 31, 2007 USMLE Step 2 CK passing score was "indeterminate," meaning simply that the CSV could not certify that the exam score at issue was a valid measure of Plaintiff's ability.[21]  Plaintiff's exam score came to the CSV's attention because he was both an Optima student and employee.[22]

The NBME investigation into Plaintiff's score began with a statistical analysis of Plaintiff's performance on the exam.  Consistent with his having been exposed to Optima's

[17] Id., 14:13 through 14:16.
[18] Id., 28:7 through 28:9.
[19] Id., 18:8 through 19:24.
[20] See Exhibit E, analysis of Plaintiff's December 31, 2007 Step 2 CK exam showing that 32 percent of the exam questions on Plaintiff's form of the test were exposed.
[21] Exhibit B at ¶ 24.
[22] As Plaintiff has consistently admitted, he attended Optima as a student to study for his December 31, 2007 attempt at USMLE Step 2 CK. See e.g. Exhibit D, pp. 7:24 through 11:8; .

- 6 -

question bank, Plaintiff performed better on the questions known to have been stolen than he did on the other questions.  He answered 84 percent of stolen questions correctly, but answered correctly just 66 percent of questions not known to have been stolen.[23]  Plaintiff also answered the stolen questions faster. He spent an average of 59 seconds per question on stolen items, but an average of 73 seconds per question on other items.[24]  A comparison group of 1162 other examinees showed no such differential in correctness or timing.[25]

As part of the investigation into Plaintiff's Step 2 CK score, the USMLE Secretariat gave Plaintiff an opportunity to submit a written statement and to make an in-person appearance before the CSV.[26]  Plaintiff submitted a written statement by email in which he falsely said, "… I want it to be made very clear that I have nothing to do with Optima University, its proprietary information, its owner, or its existence or materials."[27]  Plaintiff testified in person at the CSV meeting on December 16, 2009.[28]  Contrary to his written representations, Plaintiff admitted to the CSV that he studied at Optima immediately before taking the Step 2 CK examination in question, and that he had been an Optima employee.[29]  Plaintiff testified

---

[23] <u>See</u> Exhibit E.
[24] <u>Id.</u>
[25] <u>Id.</u>
[26] Exhibit B at ¶ 23.
[27] Exhibit C, August 12, 2009 email from Plaintiff.
[28] Exhibit B at ¶ 23; and Exhibit D, transcript of CSV meeting.
[29] Exhibit D, pp. 7:24 through 11:8, and 37:8.

- 7 -

that beginning in November 2007, Plaintiff's exam preparation at Optima consisted of being in a "little cubicle" from "7:00 a.m. to 10:00 p.m. every day."[30]   Plaintiff claims that he "didn't have too much exposure to the [stolen question] bank" and instead spent his time "focused on learning the material with other students who were stronger."[31]   Plaintiff offered no explanation for his superior performance or faster response times on stolen questions.

After reviewing Plaintiff's score and testing history, and after hearing his testimony, which included his admission that he was both a student and an employee at Optima, the CSV determined that it could not certify that Plaintiff's score was a valid measure of his ability.[32]   The USMLE Secretariat sent a letter to Plaintiff dated September 15, 2009 in which the Secretariat explained that Plaintiff's score would be deemed "indeterminate."[33]   Although there were doubts about the validity of Plaintiff's score, he was given the opportunity to take a free exam on condition that, if he passed, his score on the December 31, 2007 Step 2 CK examination would be reported as valid.[34]

---

[30] <u>Id.</u>, pp. 8:6 through 9:9.
[31] <u>Id.</u>, p. 10:3.
[32] Exhibit B at ¶ 24; and Exhibit D, pp. 7:24 through 9:12 and 36:4 through 36:18.
[33] <u>See</u> Exhibit F, September 15, 2009 letter to Plaintiff.
[34] Exhibit B at ¶ 26.

- 8 -

Plaintiff delayed taking the validating exam and eventually took and failed the exam on September 3, 2011.[35] Plaintiff complained that the validating exam was not comparable to his original exam.[36] In support of this position, Plaintiff takes out of context a portion of the deposition testimony of Dr. Steven Haist, the NBME's Vice President for Test Development Services.[37] Although Plaintiff would have this Court believe that Dr. Haist admitted that Plaintiff's validating exam was not comparable, that is not the case. At his deposition, Dr. Haist testified that the NBME's Test Development Services created a validating exam for Plaintiff in accordance with the specifications of the 2011 USMLE examination.[38] Dr. Haist also testified that Dr. Dillon, the NBME's Vice President for Licensing Programs, asked Dr. Haist to evaluate whether Plaintiff's validating exam was comparable to Plaintiff's December 31, 2007 Step 2 CK exam, which Dr. Haist did and found them to be comparable.[39] Dr. Haist recorded his findings in a letter, attached as Exhibit H, which Plaintiff received in discovery. Plaintiff questioned Dr. Haist about that letter at Dr. Haist's deposition, but Plaintiff conveniently neglected to

---

[35] Id. at ¶ 27.
[36] Id.; and see Plaintiff's Opposition (Doc. 30) at 2.
[37] Plaintiff's Opposition (Doc. 30) at 2-3.
[38] Exhibit G, pp. 37:16 through 38:4.
[39] Id., pp. 39:15 through 51:17, and 53:23 through 54:23.

- 9 -

mention its conclusion:  that Plaintiff's validating exam was comparable to his December 31, 2007 Step 2 CK exam.[40]

After failing the validating exam, Plaintiff registered for his seventh attempt at Step 2 CK on December 27, 2012.[41]  Plaintiff requested an extension to his testing window, which would have allowed him to take Step 2 CK anytime before June 2013.[42]  For reasons known only to Plaintiff, he forfeited his registration and decided not to attempt Step 2 CK again.[43]  Instead, he filed this lawsuit.

There are no genuine issues of material fact in this case and Plaintiff has not stated any valid claims against the NBME.  Therefore, the NBME asks this Court to grant its motion for summary judgment.

## III. ARGUMENT

### A.   The Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides for summary judgment where the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-252 (1986).  An issue is genuine only if the evidence is such that a reasonable jury could find for the nonmoving party.

---

[40] See Exhibit H.
[41] Exhibit B at ¶ 31.
[42] Id.
[43] Id.

- 10 -

Id. at 251.  If the record would not support a rational finding that an essential element of the nonmoving party's claim exists, summary judgment must be entered.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Even if the evidence is "colorable," summary judgment may still be appropriate.  Anderson, 477 U.S. at 249-250.

The party moving for summary judgment has the initial burden of identifying the absence of any genuine issue of material fact.  Celotex, 477 U.S. at 324; Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988).  Once the moving party has satisfied its burden, the nonmoving party must establish the existence of a genuine issue of material fact through affidavits, depositions, admissions, interrogatories or other admissible evidence.  Celotex, 477 US. at 324.  The nonmoving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. Id. at 321, n.3.  The nonmoving party cannot rely upon speculation, conjecture or the arguments or assertions in his brief.  Savers v. Automated Trans., Inc., 645 F.Supp. 194, 196 (W.D.Pa. 1986).  The nonmoving party must demonstrate the existence of evidence that would support a jury finding in its favor.  Anderson, 477 U.S. at 248-49.

Plaintiff's *pro se* status does not alter the burdens he must carry in this case.  Federal courts generally treat *pro se* litigants the same as any other litigant.  Mala v. Crown Bay

- 11 -

Marina, Inc., 704 F.3d 239, 244 (3d Cir. 2013).  There are only
two ways in which *pro se* litigants are treated differently:
first, they are granted procedural leeway, and second, they are
entitled to notice by the court in certain circumstances.  Id.
at 244-245.  Both of these exceptions are narrow and limited
departures from the "general rule of evenhandedness."  Id. at
245.

Courts grant leeway when applying procedural rules to
*pro se* litigants, especially when interpreting their pleadings.
Id., citing Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir.
2011) ("The obligation to liberally construe a *pro se* litigant's
pleadings is well-established.").  This tradition of leniency
descends from the Supreme Court's decision in Haines v. Kerner,
404 U.S. 519 (1972), in which the Court instructed judges to
hold *pro se* complaint to "less stringent standards than formal
pleadings drafted by lawyers."  Haines, 404 U.S. at 520.  But
procedural leniency does not relieve the *pro se* litigant from
his obligation to advance a legally cognizable claim.  Although
a *pro se* litigant's complaint may be entitled to a liberal
construction, "*pro se* litigants must still allege sufficient
facts in their complaints to support a claim."  Mala, 704 F.3d
at 245.  Similarly, "the [*pro se*] plaintiff must still set forth
facts sufficient to survive summary judgment."  Lignore v.
Hospital of the University of Pennsylvania, 2007 WL 1300733

- 12 -

(E.D.Pa. May 1, 2007) (citing <u>Shabazz v. Odum</u>, 591 F. Supp. 1513 (M.D.Pa. 1984).

Plaintiff's *pro se* status does not entitle him to assistance from the Court.  Although courts are required to give notice to *pro se* litigants in limited circumstances--none of which apply in this case--the default rule is nonassistance. <u>Mala</u>, 704 F.3d at 245.  In order to maintain judicial impartiality, judges are discouraged from providing trial assistance to *pro se* litigants.  <u>Id.</u> at 244, citing <u>Pliler v. Ford</u>, 542 U.S. 225 (2004) ("Requiring district courts to advise a *pro se* litigant … would undermine district judges' role as impartial decisionmakers.").

Although not required to, this Court has appropriately attempted to facilitate Plaintiff's expression of his claims by encouraging him to retain counsel and to clarify his pleadings. Plaintiff has done neither.  Instead, he has baldly stated, without any evidence or legal basis, that he was defamed, discriminated against, and harmed by the negligence of the NBME, and that the NBME violated his right to associate under the First Amendment.[44]  However, accepting each of his factual allegations as true, the NBME is entitled to summary judgment on all claims as a matter of law.

---

[44] <u>See</u> Exhibit A, Thomas Dep., at pp. 48:11 through 61:24, Jan. 10, 2014; and <u>see</u> Plaintiff's Opposition (Doc. 30) at 5 for negligence; <u>id.</u> at 11 for discrimination; <u>id.</u> at 12 for defamation; and <u>id.</u> at 13 for violation of the First Amendment.

- 13 -

**B.** __Discrimination__

Plaintiff alleges that the NBME discriminated against him based on his participation in Optima, his history of multiple examination attempts, and his having attended multiple medical schools.[45] Because Plaintiff does not assert that he was discriminated against based upon his membership in a protected class recognized under Pennsylvania or federal law, the NBME is entitled to summary judgment on Plaintiff's claim of discrimination.

As a co-sponsor of the USMLE, the NBME is subject to both federal and Pennsylvania anti-discrimination laws. Both federal law and Pennsylvania law prohibit discrimination based on membership in a protected class. Federal anti-discrimination laws prohibit discrimination based on race, color, religion and national origin. 42 U.S.C. § 2000a. The Americans with Disabilities Act proscribes discrimination based on disability. See generally 42 U.S.C. §§ 12181 through 12189. Similarly,

---

[45] See Plaintiff's Opposition (Doc. 30) at 11–12 ("Defendants placed the Plaintiff in the same category as the accused of Optima University for the pure fact that Plaintiff was employed with Optima, had acquaintances from the review course, and the number of attempts of taking the exam."); and see Plaintiff's Amended Complaint (Doc. 17) at p. 4 ("Plaintiff is clearly being discriminated against because he participated as a student with Optima University. In addition, Plaintiff is also being discriminated against because of the number of attempts made towards the exam."); and see Exhibit A, pp. 257:22 through 259:7 ("I think also [I was discriminated against] based on my test exam history, the amount of attempts I've taken over the years…it may also be the notion that I switched schools so much, whether it's assumed that it was because of reasons that they kicked me out versus me choosing to leave.")

- 14 -

Pennsylvania law prohibits discrimination based on race, color, religion, national origin, sex, ancestry or disability.  See  43 P.S. § 955(h)(11)(i).

Neither federal nor Pennsylvania law prohibits discrimination on bases other than those protected classifications.  It is the Plaintiff's burden to establish proof of membership in a protected class and to set forth a prima facie case on the merits of his discrimination claim.  See Bennun v. Rutgers State University, 941 F.2d 154, 171 (3d Cir. 1991).  Plaintiff has failed to do so here.[46]  Plaintiff repeatedly stated that his discrimination claim was based upon his affiliation with Optima, his poor testing history, and his attendance at multiple medical schools.[47]  These are not protected characteristics under the discrimination laws.  Nor should the Court credit Plaintiff's last-minute unsupported allegation of race discrimination; there is no evidence that

---

[46] For the first time, in his Opposition to Defendants' Motion for Summary Judgment, Plaintiff adds that his discrimination claim is also based on his race and color.  See Plaintiff's Opposition (Doc. 30) at 11. Plaintiff's bald assertion does not create a genuine issue of material fact, and this Court should not credit his unsupported statement when deciding this motion. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss.")

[47] See Plaintiff's Opposition (Doc. 30) at 11-12; and see Plaintiff's Amended Complaint (Doc. 17) at p. 4; and see Exhibit A, pp. 257:22 through 259:7.

similarly situated people of other races were treated differently.[48]

### C. **Defamation**

Plaintiff alleges that the NBME defamed him because NBME employees told members of the CSV that Plaintiff had been an employee and student at Optima.[49]  Because the alleged defamatory statements are true, and because they were communicated appropriately, the NBME is entitled to summary judgment on Plaintiff's defamation claim.

To establish a claim for defamation in Pennsylvania, a plaintiff has the burden of proving 1) the defamatory character of the communication, 2) its publication by the defendant, 3) its application to the plaintiff, 4) the recipient's understanding of its defamatory meaning, 5) the recipient's

---

[48] See Wilson v. Lock Haven University, 474 Fed.Appx. 74, 76 (3d Cir. 2012) (holding that to advance a *prima facie* case of race discrimination, plaintiff must offer evidence that ties the conduct he complains of to his race, or evidence that shows that similarly situated individuals of other races were treated differently.)

[49] See Plaintiff's Opposition (Doc. 30) at 12 ("Defendants took it upon themselves to state at the Score Validity hearing that the Plaintiff began working for Optima University after taking the exam… The purpose of the hearing was to discuss the validity of the Plaintiff's exam score, but instead the Defendants offered employment information during the hearing that had no relevance to the exam score.  These actions were done to allow the Committee to prejudge the Plaintiff's character."); and see Plaintiff's Amended Complaint (Doc. 17) at 6 ("Defendants made false statements to participating committee members, causing harm to the Plaintiff's career and livelihood."); and see Exhibit A, pp. 50:13 through 51:11 ("I believe that by going forward and continuing to show that I was involved in Optima and in the hearing as well, [USMLE Secretariat] Susan Deitch went out of her way to bring up my employment.")

- 16 -

understanding that it applies to plaintiff, 6) special harm resulting from its publication, and 7) abuse of a conditionally privileged occasion. 42 Pa. C.S. § 8343. After a plaintiff has met his burden, a defendant has the burden of proving the following affirmative defenses, where applicable:  1) the truth of the defamatory communication, 2) the privileged character of the publication, and 3) that the subject matter of the defamatory comment is one of public concern. Id. In this case, Plaintiff has not come close to meeting his burden. Nevertheless, the NBME asserts two affirmative defenses that Plaintiff cannot rebut.[50]

First, the alleged defamatory communications are true. Plaintiff admits that he was a student at Optima prior to taking the USMLE Step 2 CK exam on December 31, 2007.[51]  Likewise, Plaintiff admits that he was an employee at Optima and was present as an employee during the FBI raid.[52]

Second, the statements were made on a conditionally privileged occasion.  Conditional privilege attaches "when a statement is made on a proper occasion, in a proper manner, for a legitimate reason of the speaker and is based on reasonable cause."  Giordano v. Claudio, 714 F.Supp.2d 508, 528 (E.D.Pa.

---

[50] Because Plaintiff did not raise claims in his pleadings, the NBME did not raise affirmative defenses to those claims.  The NBME raises those affirmative defenses here.
[51] See Exhibit D, pp. 7:24 through 9:12 (concerning Plaintiff's time as an Optima student); and see Exhibit B at ¶ 18.
[52] See Exhibit D, pp. 37:8 (concerning Plaintiff's employment at Optima); and see Exhibit B at ¶¶ 19-20.

2010).   NBME   staff   members'   communications   to   the   CSV   were
conditionally   privileged   because   they   served   the   legitimate
purpose   of   assisting   the   CSV   in   evaluating   the   validity   of
Plaintiff's exam score.

Because   Plaintiff   has   not   carried   his   burden   with
regard   to   his   defamation   claim,   and   because   the   alleged
discriminatory   communications   were   privileged   and   true,   the
Court   should   grant   summary   judgment   in   favor   of   the   NBME   on
Plaintiff's defamation claim.

### D.   Negligence

Plaintiff   alleges   that   the   NBME   was   negligent   in
failing   to   warn   him   not   to   participate   in   Optima's   USMLE   prep
course.[53]   Plaintiff   has   offered   no   evidence   to   support   his
contention   that   the   NBME   had   a   duty   to   warn   him   not   to
participate   in   a   USMLE   prep   course   of   which   the   NBME   had   no
knowledge   or   affiliation.   No   court   in   the   United   States   has
held that entities that offer standardized tests have a duty to

---

[53] See Plaintiff's Opposition (Doc. 30) at 5 ("Defendants
suspected that an unethical action was occurring with Optima
University and as such, the FBI became aware and conducted their
investigation.   However, defendants continued to allow students
to attend the prep course without putting these students on
notice knowing full well that if their suspicion was
substantiated, the students would be brought up for score
validity and possible irregular behavior."); and see Plaintiff's
Amended Complaint (Doc. 17) at 5 ("Defendants unreasonable acts
has caused them to breach their duty of care towards the
Plaintiff.   Defendant had notice of an illegal activity
occurring but yet allowed students to continue attending the
Optima University course."); and see Exhibit A, pp. 53:23
through 54:17 ("[The NBME] let students go [to Optima], continue
there for a long time and then they came afterwards.   So I think
there's a large level of negligence on the NBME's part.")

- 18 -

warn examinees against participating in disreputable test prep courses that use stolen copyrighted content. Because the law does not impose such a duty on testing entities, summary judgment should be granted in favor of the NBME on the issue of negligence.

   To establish a claim for negligence, a plaintiff must establish: 1) that the defendant had a duty to the plaintiff, 2) that the defendant breached that duty, 3) that the defendant's breach caused injury or loss, and 4) that the plaintiff suffered injury or loss. Ungalo v. Zubik, 29 A.3d 810 (Pa. Super. 2011). Pennsylvania recognizes a duty to warn in certain limited contexts. For example, manufacturers and sellers of dangerous products may have a duty to warn consumers about the dangerous nature of those products. See e.g. Thomas v. Avron Products Co., 424 Pa. 365 (Pa. 1967).

   In this case, there are no facts that support Plaintiff's contention that the NBME had a duty to warn him, or that it breached that duty by "allowing" students to attend Optima.[54] Optima was in no way affiliated with the NBME or the USMLE Program and the full scope of Optima's illegal activities only became known to the NBME in 2008 and 2009 through investigations by the NBME and the FBI.[55] Because Plaintiff took the examination at issue in 2007, it would have been impossible for the NBME to warn Plaintiff against participating in Optima.

---

[54] See Plaintiff's Opposition (Doc. 30) at 5.
[55] Exhibit B at ¶¶ 17 and 20.

- 19 -

Because Plaintiff cannot establish that the NBME had a legally-recognized duty to warn him not to participate in Optima, and because Plaintiff cannot establish breach, causation or damages, the Court should grant summary judgment in favor of the NBME on Plaintiff's negligence claim.

**E.   Violation of the First Amendment**

Plaintiff alleges that the NBME violated his First Amendment freedom to associate based upon his involvement with Optima.[56] The First Amendment proscribes only state action, and the NBME is not a state actor.   Moreover, Plaintiff cannot establish that his association with Optima is one of the two types of association that are constitutionally protected. Because the NBME is not a state actor, and because his association with Optima is not constitutionally protected, the NBME is entitled to judgment as a matter of law on Plaintiff's First Amendment claim.

A plaintiff who alleges First Amendment violations bears the burden of establishing that the party who engaged in the challenged conduct is "a person or entity that can be fairly said to be a state actor." White v. Communication Workers of America, 370 F.3d 346, 350 (3d Cir. 2004); and see NAACP v. State of Alabama, 357 U.S. 449, 462 (1958).   The Third Circuit

---

[56] See Plaintiff's Opposition (Doc. 30) at 16 ("The First Amendment states we have the right to associate.  A fundamental element of personal liberty is the right to choose to enter and maintain."); and see Plaintiff's Amended Complaint (Doc. 17) at 4 ("The First Amendment states we have the right to associate.")

has held that the NBME is a non-governmental actor and does not act under color of state law for purposes of civil rights claims.  <u>Boggi v. Medical Review and Accrediting Council</u>, 415 Fed.Appx. 411, 414 (3d Cir. 2011).

Even if the NBME was a state actor, Plaintiff's association with Optima is not one of the two types of association that are constitutionally protected:  "intimate association" and "expressive association."  <u>See</u> <u>Roberts v. U.S. Jaycees</u>, 468 U.S. 609, 617-618 (1984) (holding that the First Amendment protects the formation of intimate human relationships and the freedom to assemble, speak and petition for the redress of grievances); <u>and</u> <u>see</u> <u>City of Dallas v. Stanglin</u>, 490 U.S. 19, 25 (1989) (holding that there is no generally recognized right of social association); <u>and</u> <u>see</u> <u>Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh</u>, 229 F.3d 435, 442-45 (3d Cir. 2000) (holding that membership in a fraternity was neither intimate nor expressive association and was therefore not protected by the First Amendment.)  Plaintiff's association with Optima is neither an intimate nor an expressive association.  Therefore, it is not the type of association that is entitled to First Amendment protection.

Because the NBME is neither a state actor nor has it interfered with any intimate or expressive association, the Court should grant summary judgment in favor of the NBME on Plaintiff's claim of First Amendment violations.

- 21 -

IV.  **CONCLUSION**

For the reasons set forth above, the NBME requests that judgment be entered in its favor and against Plaintiff under Rule 56 of the Federal Rules of Civil Procedure.


                                        /s/ Maureen P. Holland
                                        Neil J. Hamburg
                                        Maureen P. Holland
                                        ID. Nos. 32175 and 206327
                                        HAMBURG & GOLDEN, P.C.
                                        1601 Market Street, Suite 3310
                                        Philadelphia, PA  19103-1443
                                        (215) 255-8590
                                        hamburgnj@hamburg-golden.com
                                        hollandmp@hamburg-golden.com
                                        Attorneys for Defendant
                                        the National Board of Medical
                                        Examiners

Dated:    June 16, 2014

### CERTIFICATE OF SERVICE

I, Maureen P. Holland, hereby certify that the foregoing Motion for Summary Judgment has been filed electronically and is now available for viewing and downloading from the Court's Electronic Case Filing System. I further certify that a copy is being served by e-mail on June 16, 2014 on the following:


Mathew Thomas, Jr.
31 Roosevelt Avenue
Staten Island, NY  10314
dr.mathew.thomas.jr@gmail.com

*Pro Se Plaintiff*

            and

Brian W. Shaffer, Esquire
Elisa P. McEnroe, Esquire
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921
bshaffer@morganlewis.com
emcenroe@morganlewis.com

*Attorneys for Defendant*
*Educational Commission for*
*Foreign Medical Graduates*


                    /s/ Maureen P. Holland
                    Maureen P. Holland