**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MATHEW THOMAS, JR.,<br><br>                                        *Plaintiff*<br><br>v.<br><br>ECFMG – EDUCATIONAL COMMISSION<br>FOR FOREIGN MEDICAL GRADUATES<br>and NBME – NATIONAL BOARD OF<br>MEDICAL EXAMINERS<br>                                        *Defendants.* | Civil Action No. 13-3946 |

**THE EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES'**
**REPLY IN SUPPORT OF SUMMARY JUDGMENT**

Dated:  June 16, 2014

Brian W. Shaffer
Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
215.963.5000 (tel)
215.963.5001 (fax)
bshaffer@morganlewis.com
emcenroe@morganlewis.com

*Attorneys for Defendant Educational
Commission for Foreign Medical Graduates*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   FACTUAL BACKGROUND .................................................................................... 2

    A.    The Educational Commission for Foreign Medical Graduates ............................ 2

    B.    The United States Medical Licensing Examination .............................................. 2

    C.    Plaintiff Failed to Enter a Residency Program When He Was Eligible .............. 3

    D.    Plaintiff's Involvement in Optima as a Student and an Employee ...................... 5

    E.    USMLE Committee on Score Validity Deemed Plaintiff's December 31,
        2007 Step 2 CK Score Indeterminate .................................................................. 6

    F.    Plaintiff Failed The Free Validation Exam ......................................................... 8

    G.    Practical Consequences of Plaintiff's Indeterminate Score ................................. 9

        1.    USMLE's 6 Attempt Limit ..................................................................... 10

        2.    ECFMG's 7-Year Rule ............................................................................ 10

    H.    The Present Action .............................................................................................. 12

III.   LEGAL STANDARD ............................................................................................. 12

IV.   ARGUMENT .......................................................................................................... 13

    A.    Plaintiff's Claims Fail ......................................................................................... 13

        1.    Plaintiff's Negligent Failure to Warn Claim Fails ................................. 13

        2.    Plaintiff's Discrimination Claim Fails ................................................... 15

        3.    Plaintiff's Defamation Claim Fails ........................................................ 17

        4.    Plaintiff's "Guilt By Association" Claim Fails ...................................... 18

        5.    Plaintiff's Other Allegations Fail ........................................................... 19

            a.    Plaintiff's Arguments About Discovery Are Untimely and
                Unwarranted ................................................................................ 20

            b.    Plaintiff's Arguments About His Online Access to
                ECFMG's Services Are Irrelevant .............................................. 20

            c.    Plaintiff's Reliance on Bennett Law Firm Article is
                Misplaced .................................................................................... 21

    B.    Plaintiff Would Not Be Entitled to the Damages Sought, Even if Some
        Claim Were to Survive Summary Judgment ...................................................... 22

V.    CONCLUSION ....................................................................................................... 24

Pursuant to Federal Rule of Civil Procedure 56 and this Court's preferred procedures for summary judgment, Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") files this Reply in Support of Summary Judgment.  As detailed in ECFMG's Motion for Summary Judgment (Doc. 29), the Court should dismiss this action in its entirety because there remains no genuine issue of material fact and ECFMG is entitled to judgment as a matter of law.

## I.   <u>INTRODUCTION</u>

Plaintiff Mathew Thomas, Jr. ("Plaintiff") is aggrieved by the consequences of his being caught up in Optima University ("Optima"), a criminal enterprise that stole and disseminated protected examination content—and not as a result of any legally-actionable conduct of ECFMG, a non-profit organization that promotes quality health care for the public.  Following discovery of Plaintiff's participation in Optima and analysis of Plaintiff's performance on his Step 2 CK test, the body responsible for the United States Medical Licensing Examination ("USMLE") was not able to certify that one of Plaintiff's examination scores was a valid measure of his ability. Accordingly, that score was deemed, and remains, "indeterminate."  Plaintiff's claims relate to that determination and the consequences that flowed therefrom.

Defendants ECFMG and the National Board of Medical Examiners ("NBME") have actively participated in discovery, been subject to depositions from Plaintiff, and provided documents in response to Plaintiff's requests.  Discovery has revealed no valid claim.  It is appropriate for the Court to determine the legal validity of this case.  Plaintiff raises a litany of arguments in his opposition to summary judgment, none of which takes his naked allegations and changes them into a legally actionable claim.  Further, even if Plaintiff has stated a claim for relief—which he has not—there remains no genuine issue as to any material fact.   Accordingly, this Court should grant summary judgment and dismiss Plaintiff's claims with prejudice.

## II.    FACTUAL BACKGROUND[1]

### A.    The Educational Commission for Foreign Medical Graduates.

ECFMG is a non-profit organization that promotes quality health care for the public by, among other things, certifying international medical graduates ("IMGs") for entry into graduate medical education in the United States.  *See* Statement of Stipulated Material Facts, ¶ 5, (Doc. 29-1) (hereinafter "Stip. Facts"); Kelly Dep., 4:9-17 (Ex. 1).  ECFMG fills myriad roles in the U.S. medical community, including with respect to the United States Medical Licensing Examination ("USMLE"), as it relates to IMGs.   *See* Stip. Facts at ¶ 9; *see also* ECFMG Information Booklet, ECFMG000656-743 (Ex. 2).  Plaintiff is an IMG and he has interacted with ECFMG with regard to certain aspects of the USMLE.  *See* Stip. Facts at ¶ 2.

### B.    The United States Medical Licensing Examination.

Candidates to practice medicine in the United States take a series of standardized exams, referred to as USMLE "Steps."  *See* Stip. Facts at ¶¶ 8-13.  There are three USMLE Steps with four component exams: Step 1, Step 2 CK ("clinical knowledge"), Step 2 CS ("clinical skills") and Step 3.  *See id.*  The USMLE is designed to assess a physician's ability to apply knowledge, concepts, and principles, as well as demonstrate fundamental patient-centered skills, which are required to provide safe and effective patient care.  *See id.* at ¶ 7.

The exam at issue is Plaintiff's Step 2 CK score dated December 31, 2007 ("December 2007 Exam").  *See id.* at ¶ 24.  Step 2 CK in particular tests an examinee's ability to apply the knowledge, skill, and understanding of clinical science essential to providing patient care under supervision (*i.e.*, in a residency program).  *See id.* at ¶ 11.

---

[1] Given the pervasive deficiencies in Plaintiff's claims, there are very few facts that are actually material in this case; however, for this Court's convenience and to provide context to Plaintiff's Opposition Brief (Doc. 30), additional facts learned through discovery are detailed herein.  Inclusion of facts here and disputes by Plaintiff thereto, if any, in no way creates a genuine dispute as to a material fact.

**C.    Plaintiff Failed to Enter a Residency Program When He Was Eligible.**

Before Plaintiff's involvement with Optima (discussed more below) was known to NBME, Plaintiff was ECFMG certified for **more than two years**, from January 24, 2008 to March 4, 2010, meaning that he was eligible to apply for residency positions.  *See* Stip. Facts at ¶¶ 5 & 34.  Even so, Plaintiff did not obtain a residency position.  *See id.* at ¶ 36.   Plaintiff testified that he does not recall precisely how many times in the more than two years that he was ECFMG certified he participated in "the Match," which is the program set up to match residents with residency positions, but he specifically described at least one attempt at the "scramble," which is a post-match process through which residency positions are filled:

> After I passed [Step 2 CK in] 2007 I tried to scramble.  It was a very bad scramble.  First time trying I became very, very –what's the word I'm looking for – discouraged about how the match went knowing that Step 3 was probably my only last chance to try to get in if I had passed it the first time around.

Thomas Dep., 63:20-64:3 (Ex. 3).[2]  Plaintiff testified that his participation in the "scramble" resulted in **no** interviews.  *See* 12/16/09 CSV Transcript, NBME 00169-96, 45:16-46:8 (Ex. 4) (". . . the scramble itself is so discouraging in terms of not even getting a call back, not even getting through, that I wasn't sure what I was going to do.").

Plaintiff attributes his failure to get any interviews and match to his history of having multiple attempts at the USMLE component exams and his low Step 1 score.[3]  *See* Thomas Dep., 67:5-10 & 68:3-13.  Plaintiff testified that residency programs have "made it very clear" that they care about multiple attempts and that "the first thing" people in residency programs tell you "is you should make sure you pass the first time, high score"; "You go to Kaplan, you go to all

_____

[2] In the interest of brevity, all deposition transcripts will be cited to as "Witness Last Name, Dep."  A small portion of Plaintiff's deposition transcript is redacted because the parties agreed to keep it confidential.

[3] Plaintiff has numerous retakes of Step 1 and ultimately a low score, despite his use of numerous preparation methods and courses: (i) First Aid; (ii) Kaplan; (iii) Kaplan Qbank; (iv) USMLE World; (v) NBME assessment tests; (vi) PASS (in IL); (vii) Northwest Medical Review (in MI).  *See* Thomas Dep., 97:6-99:14.  Plaintiff testified that he did not prepare for Step 1 with Optima because Optima did not yet exist.  *Se*e id. at 99:15-100:2.

these review courses, the professors who teach tell you right away, don't take the exam until you're ready." Thomas Dep., 69:23-70:11.  Plaintiff's examination history is as follows:

| Date | Exam Taken | Result |
|------|-----------|--------|
| 05/31/2002 | USMLE Step 1 | 119/50 – Fail |
| 03/31/2003 | USMLE Step 1 | 128/54 – Fail |
| 10/15/2003 | USMLE Step 1 | 152/63 – Fail |
| 02/19/2004 | USMLE Step 2 CK | 125/52 – Fail |
| 06/30/2004 | USMLE Step 1 | 153/63 – Fail |
| 12/08/2004 | USMLE Step 1 | 169/69 – Fail |
| 01/12/2005 | USMLE Step 2 CS | Pass |
| 05/28/2005 | USMLE Step 2 CK | 161/66 – Fail |
| 10/31/2005 | USMLE Step 1 | 179/73 – Fail |
| 02/14/2006 | USMLE Step 1 | 184/75 – Pass |
| 10/25/2006 | USMLE Step 2 CK | 172/71 – Fail |
| 02/14/2007 | USMLE Step 2 CK | 174/71 – Fail |
| 07/27/2007 | USMLE Step 2 CK | 182/74 – Fail |
| 12/31/2007 | USMLE Step 2 CK | 206/85 – Pass (indeterminate) |
| 09/03/2011 | Validating Exam | Fail |

Stip. Facts at ¶ 29.  Setting aside Plaintiff's December 2007 Exam and validating exam, his examination history includes **six failures** on Step 1 before passing on the seventh attempt and **five failures** on Step 2 CK.  *See* Thomas Dep., 242:21-245:1.  Plaintiff passed Step 1 **eight years ago** (in 2006) and Step 2 CS **nine years ago** (in 2005).  *See id.*

There are numerous other factors in the record that also hindered Plaintiff's acceptance to a residency program.  For example, Plaintiff attended three different foreign medical schools in the course of his education.  *See* Stip. Facts at ¶ 2.  To get into Plaintiff's first medical School, Ross University, Plaintiff testified that he did not need either an MCAT score or to have been a pre-med major in his undergraduate studies.  *See* Thomas Dep., 85:17-24.  While in medical school, Plaintiff had to repeat his first semester and also later had to repeat his anatomy course. *See* Thomas Dep., 86:11-19 & 94:5-24.  Further, the medical school from which Plaintiff eventually graduated is located in Senegal.  *See id.* at 93:11-14.

**D.    Plaintiff's Involvement in Optima as a Student and an Employee.**

Optima was a USMLE preparation course, whose headquarters the FBI raided in May 2008 in connection with a federal criminal investigation of Optima for possessing and distributing copyrighted USMLE test material.  *See* Stip. Facts at ¶ 16.  Optima was also subject to a civil lawsuit brought by NBME, among others, based on the fact that Optima associates stole and disseminated real USMLE test questions by photographing and videotaping computer screens during exam administration and by memorizing and reproducing test content (hereinafter "Optima Civil Suit").  *See id.* at ¶ 17.  The Optima Civil Suit resulted in a judgment of $2.4 million plus attorney's fees and costs.[4]  *See id.*

Plaintiff's involvement with Optima was twofold.  First, Plaintiff was a student at Optima while preparing for the December 2007 Exam.  *See id.* at ¶ 18.  Plaintiff testified that while a student, he reviewed all of the 700 to 1,000 questions in the Optima Step 2 CK question bank, each at least once and some more.  *See* Thomas Dep., 56:19-57:1.  Plaintiff also explained that Optima's course did not include any study materials beyond the bank of questions.  *See id.* at 227:14-20.  Second, Plaintiff was an Optima employee from February 2008 through August 2008.[5]  *See* Stip. Facts at ¶ 19.  When the FBI raided Optima's headquarters in May 2008, the FBI questioned Plaintiff.  *See id.* at ¶ 20.  Plaintiff is still in contact with former Optima employees.  *See* Thomas Dep., 285:22-291:23.

---

[4] The Optima Civil Suit included numerous "John Doe" defendants that Plaintiff discusses in his opposition brief. *See, e.g.*, Plaintiff's Opposition (Doc. 30) at 4.  Plaintiff was never named in connection with that action.  *See NBME v. Optima Univ.*, Case No. 09-cv-1043, 2011 WL 7615071 (W.D. Tenn. 2011).  Throughout his opposition brief, Plaintiff confuses any criminal proceedings prosecuted as a result of the FBI's investigation and the civil action initiated by NBME and others.  *See, e.g.*, Plaintiff's Opposition (Doc. 30) at 13.

[5] When asked for his pay stubs for his work at Optima, Plaintiff testified that the owner (Dr. Suliman) "paid [] cash or personal checks so there was no stub attached."  Thomas Dep., 226:9-20.  Plaintiff also testified that he did not pay income taxes on his income from Optima.  *See id.* at 227:10-13.

**E.    USMLE Committee on Score Validity Deemed Plaintiff's December 31, 2007 Step 2 CK Score Indeterminate.**

USMLE's Committee on Score Validity ("CSV"), a committee to which ECFMG and NBME appoint representatives, decides "whether or not they believe a passing outcome is really a valid outcome."  Dillon Dep., 68:18-22 (Ex. 5); Stip. Facts at ¶ 21.  The "cornerstone" of the CSV's inquiry is "whether we have a valid pass."  12/16/09 CSV Transcript, NBME 00169-96, 53:17-19 (Ex. 4); *see also* USMLE Policies and Procedures Regarding Indeterminate Scores, NBME 000401-05 (Ex. 6) (hereinafter "USMLE Policies & Procedures").  USMLE's Policies & Procedures provide that "[s]tatistical procedures will be applied routinely, as well as in response to particular information, to identify scores that may be subsequently classified as indeterminate."  USMLE Policies & Procedures at ¶ A.2.  Dr. Gerard F. Dillon, NBME's Vice President for Licensing Programs explained that the CSV does not "focus on whether or not they think there have been any irregularities that have occurred, and really purely focus[] on whether or not they can support that label, that passing label, or not."  Dillon Dep., 68:23-69:2.

The NBME referred passing USMLE scores of known or suspected Optima students to the CSV.[6]  *See* Stip. Facts at ¶ 21.  This included Plaintiff's December 2007 Exam score, so the USMLE Secretariat provided Plaintiff notice of the referral.  *See id*; 7/27/09 Letter from S. Deitch to M. Thomas, NBME 00197-198 (Ex. 7); Thomas Dep., 149:19-150:6.  As a result of this referral, the CSV reviewed the performance data from Plaintiff's December 2007 Exam.  *See* Stip. Facts at ¶ 22.  The statistics surrounding Plaintiff's performance are telling (summarized in chart form at NBME 00152, Ex. 8):

---

[6] Plaintiff raises the question of why not all known Optima students were referred to the CSV.  *See* Plaintiff's Opposition (Doc. 30) at 5 & 10.  As Ms. Deitch explained at Plaintiff's in-person appearance before the CSV, the CSV's focus is on whether the passing score is valid.  As a result, there would be no need to consider cases of Optima students who failed, or of any who passed by such a margin that they still would have passed even if they had gotten all of the Optima-exposed materials on their exam wrong.  *See* 12/16/09 CSV Transcript, NBME 00169-96, 52:20-53:12 (Ex. 4).

- 6 -

- 32% = Percentage of Plaintiff's December 2007 Exam that contained materials Optima exposed ("exposed material").

- 84% vs. 66% = Plaintiff's percentage correct of exposed vs. non-exposed material.

- 75 % vs. 75% = 1,162 person comparison group's ("Group") percentage of correct exposed vs. non-exposed material.

- 59 seconds vs. 73 seconds = Plaintiff's time spent on exposed v. non-exposed questions.

- 73 seconds vs. 76 seconds = Group's time spent on exposed v. non-exposed questions.

- Plaintiff's difference in performance and time spent on exposed vs. non-exposed material was greater than **99%** of the Group.

*See* 9/15/09 Letter from S. Deitch to M. Thomas, NBME 00199-203 (Ex. 9); *see also* Dillon Dep., 62:1-65:16.[7]

In connection with the review of Plaintiff's passing score, and in conformity with the USMLE Policies & Procedures, Plaintiff was given an opportunity to appear in person before the CSV with counsel and to submit documentation to the committee.  *See* Stip. Facts. at ¶ 23; Thomas Dep., 233:18-234:8.  Plaintiff submitted a written statement and personally appeared before the CSV on December 16, 2009.  *See* Stip. Facts at ¶ 23; 12/16/09 CSV Transcript, NBME 00169-96 (Ex. 4); Thomas Dep., 29:10-14 (verifying that answers given before CSV are true).

After reviewing all of the materials and hearing Plaintiff's testimony, the CSV could not certify that Plaintiff's passing December 2007 Exam score was a valid measure of his ability.  *See* Stip. Facts at ¶ 24; 2/17/10 Letter from S. Deitch to M. Thomas, NBME 00204-07 (Ex. 10); Materials Reviewed by CSV, NBME 00223-78 (Ex. 11).  Accordingly, the CSV found Plaintiff's December 2007 Exam score to be "indeterminate," meaning that they could not validate that it was, in fact, valid based on all the information available to it. *See* 2/17/10 Letter from S. Deitch

---

[7] Though Plaintiff argues that the USMLE Policies & Procedures were violated because he does not agree there was a "statistical analysis," the record shows otherwise.  *See, e.g.*, chart form at NBME 00152, Ex. 8.  At most, Plaintiff is quibbling with the description of the analysis performed.  As a result, it is not a disputed material fact that would impact ECFMG's motion for summary judgment.

to M. Thomas, NBME 00204-07, -06 (Ex. 10); *see also* 1/21/10 E-mail from S. Deitch to M.

Thomas, NBME 00130-31 (Ex. 12).

 Thereafter, Plaintiff was given the opportunity to appeal the CSV's finding of

indeterminacy, and Plaintiff did so appeal.  *See* Thomas Dep., 234:9-235:2; 1/22/10 E-mail from

M. Thomas to S. Deitch, NBME 00126 (Ex. 13); Submission of M. Thomas for Appeal, NBME

00113-20 (Ex. 14); Thomas Dep., 180:23-181:4.  The Composite Committee upheld the decision

of the CSV, leaving Plaintiff's December 2007 Exam score indeterminate.  *See* 8/25/10 Letter

from A. Buono to M. Thomas, NBME 00121-25 (Ex. 15).

  **F. Plaintiff Failed The Free Validation Exam.**

 Along with finding Plaintiff's December 2007 Exam score indeterminate, the CSV

offered Plaintiff an opportunity to take a free validating exam, which, if he passed, would have

validated his original passing score.  *See* 2/17/10 Letter from S. Deitch to M. Thomas, NBME

00204-07, -06 (Ex. 10); *see also* Stip. Facts at ¶ 26; Thomas Dep., 235:7-14.

 The CSV offered Plaintiff six months to take the validating exam, but Plaintiff repeatedly

requested extensions, extending the time for taking his validation exam.  *See* Stip. Facts at ¶ 27;

*see also* 1/26/11 E-mail from M. Thomas to A. Buono, NBME 00108 (Ex. 16) (seeking an

extension and explaining "I have had many personal issues and will not be prepared by

[February 25, 2011]").  Ultimately, Plaintiff was given over a year to take the validating exam,

which he took on September 3, 2011.  *See* Stip. Facts at ¶ 27; Thomas Dep., 235:7-17.  Plaintiff

failed the validating exam.  *See id.*; *see also* 10/17/11 Letter from A. Buono to M. Thomas,

NBME 00026 (Ex. 17).

 Plaintiff complained that his validating exam was not "comparable" to his original

December 2007 Exam.  *See, e.g.*, Stip. Facts at ¶ 28; Plaintiff's Opposition (Doc. 30) at 2.

NBME conducted an analysis of the comparability of the exams, and NBME concluded that the

validating exam was comparable to Plaintiff's original exam.[8]  *See* Stip. Facts at ¶ 28.  Despite

NBME's analysis, Plaintiff continues to dispute the comparability.  To support his argument,

Plaintiff cites to testimony from Dr. Steven Haist, M.D., NBME's Vice President, Test

Development Services, agreeing that, when NBME prepared the validation exam for Plaintiff to

take in 2011, it was prepared as an exam in 2011 and not as an exam in 2007.  *See* Plaintiff's

Opposition (Doc. 30) at 2-3.

Plaintiff overlooks Dr. Haist's contemporaneous comparison of Plaintiff's 2007 Step 2

CK exam to Plaintiff's 2011 validating exam.[9]  *See* 10/10/11 E-mail from S. Haist, NBME 0027

(Ex. 19); Memo from S. Haist entitled "Comparison of Step 2 C01607 and C02385," NBME

0013-14 (Ex. 20) ("Haist Analysis").  Dr. Haist found that the adjusted percentage of items in the

2011 validating exam that were from the same content category as the December 2007 Exam

was **96.4%**.[10]  *See* Haist Analysis at NBME0013.  In his comparison, Dr. Haist concludes as

follows:  "Overall, the [December 2007 Exam] and the [2011 validating exam] are very similar

with differences which I would consider minimal."  *See id.* at NBME0014.  Ultimately, the

relatively minor distinctions between the two exams are inconsequential because Plaintiff's

performance on the questions with the updated formats "did not have an impact on [his] pass/fail

outcome."  *See* 10/17/11 Letter from A. Buono to M. Thomas, NBME 00026 (Ex. 17).

### G.    Practical Consequences of Plaintiff's Indeterminate Score.

There are various rules and procedures from different entities that are triggered by and

relate to the USMLE component exams.  This includes: (1) USMLE's 6 Attempt Limit, which

---

[8] ECFMG plays no role with respect to validation exams.  *See* Kelly Dep., 37:9-12.

[9] Plaintiff also ignores that he was only held to the **lower** passing score required in 2007; he was not held to the higher passing score required to pass in 2011.  *See* 8/8/11 E-mail from A. Buono to M. Thomas, NBME 00041 (Ex. 18); Thomas Dep., 192:14-193:4.

[10] Plaintiff's complaint about Dr. Haist's analysis is that it "has a lot of details" (*see* Thomas Dep., 203:1-10), a particularly incongruous criticism given Plaintiff continues to dispute other analyses because they purportedly do not have enough details (*see* Plaintiff's Opposition (Doc. 30) at 17 (complaining about perceived lack of detail around statistical analysis)).

limits examinees to six unsuccessful attempts at taking any single USMLE exam; and (2)

ECFMG's 7-Year Rule, described below in Section II.G.2. *See* Stip. Facts at ¶ 30.

### 1. USMLE's 6 Attempt Limit

In August 2011, USMLE announced that it was instituting a rule that limited examinees

to six unsuccessful attempts to pass any Step or Step component. *See id.* The rule went into

effect on January 1, 2013 for examinees who had previous failures, meaning that until January 1,

2013, examinees could register for and take the Step or Step components again, even if they

already had six failures. *See id.* Plaintiff's examination history is detailed above in Section II.C.

Under the 6 Attempt Limit, Plaintiff is ineligible to take Step 2 CK again.

There is a notable caveat to that consequence from Plaintiff's invalidated score and

subsequent failure of the validating exam: Plaintiff had another chance to take Step 2 CK before

the 6 Attempt Limit came into full effect. Plaintiff registered to take Step 2 CK on December 27,

2012, giving him until March 2013 to take the exam. *See* Stip. Facts at ¶ 31. Plaintiff requested,

and then received, a three-month extension to that examination period, allowing him to pick an

examination date until June 2013. *See id.* Plaintiff chose not to take the exam at that time,

forfeited his registration, and lost out on the opportunity to retake Step 2 CK. *See id.*; *see also*

6/12/13 E-mail from M. Thomas, ECFMG00620 (Ex. 21). If Plaintiff had taken Step 2 CK

during that time when he was registered, he would have avoided the practical consequences that

flowed from his indeterminate score.

### 2. ECFMG's 7-Year Rule

ECFMG has policies and procedures, which it applies to further its mission. One

example is ECFMG's 7-Year Rule. To obtain an ECFMG certificate, an IMG must pass Step 1,

Step 2 CS and Step 2 CK within seven years.[11] *See* Stip. Facts at ¶ 32; Kelly Dep., 21:22-22:10.

---

[11] Though USMLE does not also have a rule that certain exams be taken within a set period of time, USMLE
recommends to medical licensing boards that they impose a 7-year limit. Dr. Dillon explained that this

One purpose of this rule is to ensure that the scientific and medical knowledge of IMGs obtaining ECFMG certification is current.  *See* Stip. Facts at ¶ 32

As explained in Section II.C, above, prior to the December 2007 Exam score being deemed indeterminate, Plaintiff had passed the required exams within a 7-year period and was ECFMG certified.  After his Step 2 CK exam score was deemed indeterminate because he failed to validate the passing result, Plaintiff asked ECFMG for an exception to the 7-Year Rule through legal counsel.  *See* Thomas Dep., 256:5-10; Stip. Facts at ¶ 37; 2/8/13 E-mail from R. Robichaud to W. Kelly, ECFMG000607-09 (showing Plaintiff's then legal counsel requesting exception request for Plaintiff) (Ex. 22); 4/1/13 Letter from W. Kelly to M. Thomas, ECFMG000613-14 (acknowledging Plaintiff's request for exception and describing process) (Ex. 23).[12]

Plaintiff submitted materials to support his exception request to the ECFMG Medical Education Credentials Committee ("MECC"), a standing committee of the ECFMG Board of Directors.  *See* Thomas Dep., 256:11-21; 3/27/13 Letter from M. Thomas with attachments, ECFMG000630-44 (Ex. 24); Kelly Dep., 26:5-10.  Consistent with ECFMG's policies and procedures, the MECC considered Plaintiff's request for an exception at its April 17, 2013 meeting, including the materials Plaintiff submitted.  *See* Thomas Dep., 254:11-14 & 256:11-257:1; Stip. Facts at ¶ 38; ECFMG MECC Materials, ECFMG000627-646 (Ex. 24); 4/1/13 Letter from W. Kelly to M. Thomas, ECFMG-000645-46 (Ex. 24).

Plaintiff's request for an exception was denied.  *See* Stip. Facts at ¶ 39; 4/25/13 Letter from K. Corrado to M. Thomas, ECFMG000615 (Ex. 25).  When asked whether he would agree

---

recommendation is made because "it's valuable to try to assess an individual on all the competencies we're trying to assess within some limited amount of time.  In other words, it shouldn't take a long period of time to do that . . ." Dillon Dep., 73:22-74:3.  Further, some state medical licensing boards impose similar (or stricter) standards on the timing of the USMLE component exams.  *See id.* at 73:15-21.

[12] Plaintiff is *pro se* in the present action.  *See* Thomas Dep., 26:19-27:4 (clarifying that Plaintiff is not represented by R. Robichaud in this case).

that ECFMG took his request for an exception to the 7-Year Rule seriously, Plaintiff testified: "Yes, I do."  Thomas Dep., 264:10-14.

### H.    The Present Action

On July 5, 2013, Plaintiff filed a Complaint against NBME, ECFMG, and USMLE[13] (Doc. 1).  ECFMG and NBME answered Plaintiff's Complaint (Docs. 7 & 8).   The Court held a Rule 16 conference on November 26, 2013 (Doc. 16).  Following the Rule 16 conference, this Court gave Plaintiff an opportunity to amend the Complaint (*see* 11/26/13 Order (Doc. 14)), which he did (Doc. 17).  ECFMG and NBME both answered Plaintiff's Amended Complaint (Docs. 19 & 20).

The parties actively participated in discovery, as is detailed below in Section II.5.a.  Fact discovery closed on February 17, 2014 (Doc. 23).  Expert discovery proceeded with no expert reports being exchanged.  Thereafter, ECFMG and NBME filed motions for summary judgment on May 12, 2014 (Docs. 28 & 29).  On June 2, 2014, Plaintiff opposed ECFMG and NBME's motions for summary judgment in one brief (Doc. 30).   ECFMG hereby replies in support of its motion for summary judgment.

### III.    <u>LEGAL STANDARD</u>

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the . . . pleadings," but must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

---

[13] By consent of the parties, this Court dismissed USMLE.  *See* 11/27/13 Order (Doc. 14).

"While generalized allegations of injury may suffice at the pleading stage, a plaintiff can no longer rest on such 'mere allegations' in response to a summary judgment motion, but must set forth 'specific facts' by affidavit or other evidence." *Pennsylvania Prison Soc. v. Cortes*, 508 F.3d 156, 161 (3d Cir. 2007), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561; Fed. R. Civ. P. 56(e). A mere "scintilla of evidence" in support of a plaintiff's position is insufficient to defeat a properly supported motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rather, there must be sufficient evidence on which a factfinder could reasonably find for the plaintiff. *Id.* The failure to demonstrate probative evidence on any element is fatal and requires summary judgment for the defendant. *Celotex*, 477 U.S. at 322-23.

## IV. ARGUMENT

### A. Plaintiff's Claims Fail.

Plaintiff's opposition brief clarifies that he alleges: (a) negligent failure to warn; (b) discrimination based on Plaintiff's participation in Optima, his exam and educational history, and (for the first time) also based on race; (c) defamation; and (d) guilt by association. Each of these claims fails. Plaintiff's Amended Complaint (Doc. 17) does not state any valid claim against ECFMG, there is no genuine issue as to any material fact; nothing in Plaintiff's opposition to summary judgment changes that, and ECFMG is entitled to judgment as a matter of law.

#### 1. Plaintiff's Negligent Failure to Warn Claim Fails.

Plaintiff blames his own (advertent or inadvertent) use of illegally-obtained exam materials in his exam preparation on Defendants, and accuses Defendants of failing to warn him not to do so.[14] *See* Plaintiff's Opposition (Doc. 30) at 5-11. Essentially, Plaintiff claims Defendants should have warned him not to cheat. This claim fails as a matter of law and fact.

---

[14] It is not clear if Plaintiff has alleged this claim against ECFMG as well as NBME because at his deposition, Plaintiff appeared to clarify that NBME was the target of this claim. *See* Thomas Dep., 262:14-19. If any party were to have had a duty to warn—which ECFMG does not concede—it would have been NBME and not ECFMG. Even so, ECFMG responds briefly herein in an abundance of caution.

The failure to warn concept is generally applicable to the sale and manufacture of goods, and Plaintiff has provided no legal basis to impose such obligation here. *See, e.g.*, *Salvio v. Amgen, Inc.*, 810 F. Supp. 2d 745, 752 (W.D. Pa. 2011) (indicating that to state a claim for negligence for "failure-to-warn" under Pennsylvania law, a Plaintiff "must show: that the manufacturer owed a duty to the plaintiff; that the manufacturer breached that duty; and such breach was the proximate cause of plaintiff's injuries.") (internal quotation and citations omitted). Further, Plaintiff has not established (and cannot establish) that ECFMG had a duty to warn Plaintiff not to participate in Optima. *See, e.g.*, Restatement (Second) of Torts § 314 (1965) ("The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."); § 452, cmt. b ("[W]here the third person is under no duty to the other to take any action . . . his failure to act not only does not make him liable, but is not a superseding cause which will relieve the original actor of liability.").

As a factual matter, Plaintiff's claim fails for numerous additional reasons. First, Plaintiff's Exhibits 6 and 9 shows that announcements about the Optima investigation were made. Second, Plaintiff wrongly assumes that Defendants had perfect (and immediate) information about Optima.[15] As Janet Carson, then-counsel to USMLE, aptly observed at Plaintiff's in-person CSV appearance, there can be a difference between when exposure happens and when it is known. *See* 12/16/09 CSV Transcript, NBME 00169-96, 34:6-10 (Ex. 4). Third, Plaintiff ignores that an investigation is a process. He alleges (without evidentiary support) that "[s]tudents began receiving letters regarding Optima University exposure without any data attached in 2008" and "[i]nitial letters without exposure data were sent out when the entire test bank was not possessed or compared by the NBME." Plaintiff's Opposition (Doc. 30) at 10. In

---

[15] *See Orion Ins. Co., Ltd. v. United Technologies Corp.*, 502 F. Supp. 173, 177 (E.D. Pa. 1980) (stating that failure to warn claim "is based on what the defendant reasonably knew or should have known").

making these non-documented allegations, Plaintiff overlooks that such inquiries might have been part of NBME's investigation and/or NBME's role in the FBI investigation.[16]

> 2.      Plaintiff's Discrimination Claim Fails.

At his deposition, Plaintiff testified that the bases for his discrimination claim are as follows:

> Q:  And you said that the discrimination was based on the fact that you had been an Optima student, correct?
>
> A:  Yes.
>
> Q:  Are you saying that discrimination is based on anything else?
>
> A:  I think also it's based on my test exam history, the amount of attempts I've taken over the years.
>
> Q:  Anything else?
>
> A:  I guess to a point it may also be the notion that I switched schools so much, whether it's assumed that it was because of reasons that they kicked me out versus me choosing to leave.
>
> Q:  Anything else?
>
> A:  No.  I think that's about it.

Thomas Dep., 257:22-258:16; *see also id.* at 48:24-50:1 ("I believe that the major issues I'm having is that I believe I was discriminated against solely on the fact that I was an employee at Optima. . .") & 264:15-19 (indicating Plaintiff had no other claims against ECFMG not discussed in the deposition).  Though questioned extensively about his claims at his deposition, Plaintiff **never** raised an issue, question, or suggestion of race discrimination by ECFMG.[17]

---

[16] In light of Plaintiff's defamation claim, it is surprising that he fails to foresee that premature public accusations against Optima might have had consequences for the entities making those public accusations if they were later proved false.  Indeed, as Plaintiff's Exhibit 6 demonstrates, the public announcement was made regarding Optima in conjunction with the filing of a civil lawsuit, which would have been made pursuant to professional pleading standard obligations.

[17] In his deposition, Plaintiff explained that Dr. Suliman, the owner and operator of Optima originally told Plaintiff that the FBI raid was "a racist thing because he's Muslim and not to worry about it," but Plaintiff eventually came to believe that Dr. Suliman "was lying to all of us."  Thomas Dep., 103:18-104:17.

When asked "[a]side from the decision not to grant your exception request, are you alleging that ECFMG discriminated against you?" Plaintiff responded: "No." *Id.* at 260:24-261:4.

As explained in ECFMG's Motion for Summary Judgment, Plaintiff's participation in Optima, his exam history, and his attending different medical schools (all of which are true) are not characteristics that place him in a protected class on which he can base a discrimination claim. *See, e.g.*, *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 171 (3d Cir. 1991) (obligating plaintiff to establish a *prima facie* case on the merits of his discrimination claim, including proof of membership in a protected class). In his opposition brief, Plaintiff raised no legal basis for finding otherwise.

Plaintiff alleges race as a basis for his discrimination claim for the first time in his opposition to summary judgment. *See* Plaintiff's Opposition (Doc. 30) at 11. Plaintiff's Amended Complaint (Doc. 17) does not contain a race discrimination claim. Plaintiff's new race discrimination claim—lodged for the first time in his opposition to summary judgment—is procedurally improper. *See Spence v. City of Philadelphia*, 147 F. App'x 289, 292 (3d Cir. 2005) (precluding plaintiff from raising new claim for the first time at summary judgment when he failed to raise this claim in his Complaint and did not follow proper amendment procedures); *see also Newman v. Ormond*, 396 F. App'x 636, 639 (11th Cir. 2010).

Moreover, there is a no evidence of racial discrimination in the record, and Plaintiff has not proffered more than a naked allegation of race discrimination in his opposition brief. As detailed in Section II.G above, the record is replete with facts supporting that ECFMG (and NBME and the CSV) acted with the legitimate purposes of protecting the public by upholding the policies and procedures (*i.e.*, the 7-Year Rule) and by invalidating the December 2007 Exam, which CSV could not certify as a valid passing score. Plaintiff's allegations of race

discrimination are too late, do not create a genuine dispute as to a material fact, and ECFMG is

entitled to judgment as a matter of law.

3.   Plaintiff's Defamation Claim Fails.

Plaintiff's defamation claim appears to be based on the CSV's discussion of Plaintiff's

involvement with Optima.  As Plaintiff testified at his deposition:

> I believe that by going forward and continuing to show that I was
> involved in Optima and in the [CSV] hearing as well, Susan Deitch
> went out of her way to bring up my employment.
>
> I think they tried to post a picture of me as being part of the
> Optima University and, therefore, assumptions that I had access to
> materials, whether I was a student or not a student, that may have
> been copyright infringement or stolen.
>
> And I think by making me look that way already, you put a
> stereotype in a person's mind, including the committee that day,
> because if it was strictly regarding the score validity on my exam,
> my employment never had to come up.

Thomas Dep., 50:17-51:11.  Plaintiff has not alleged that ECFMG made any public statements

with respect to his Optima involvement (or anything else).[18]  *See, e.g., id.* at 52:17-24.  The

MECC meeting at which Plaintiff's exception request was considered was attended solely by

members of the committee (who are all ECFMG board members), ECFMG staff and legal

counsel.  *See* Kelly Dep., 27:2-28:15.

As a matter of law, Plaintiff's defamation claim fails for at least two reasons.  First, it is

undisputedly true that Plaintiff was both an Optima student and an Optima employee.  *See* Stip.

Facts at ¶¶ 18-19; Thomas Dep., 115:14-21.  Truth is a complete defense to defamation.  *See* 42

Pa. C.S. § 8343(b)(1); *Fanelle v. LoJack Corp.*, 79 F. Supp. 2d 558, 562 (E.D. Pa. 2000) ("It is

well established that truth is an absolute defense to defamation.") (citing *Schnabel v. Meredith*,

107 A.2d 860 (Pa. 1954)).  Second, ECFMG did not publish or otherwise disseminate Plaintiff's

---

[18] To the extent Plaintiff is aggrieved by some supposed public statements about his participation in Optima, such allegations were aimed solely at NBME and not at ECFMG.  *See* Thomas Dep., 107:1-6 (saying that others told Plaintiff that NBME said Plaintiff worked at Optima).

Optima involvement.  *See* 42 Pa. C.S. § 8343 (including "publication by the defendant" as an element of defamation in Pennsylvania).  To the extent Plaintiff is aggrieved that his involvement with Optima has become known publicly, it was **Plaintiff** that made his involvement in Optima and claims related thereto public by filing the instant lawsuit.  Accordingly, Plaintiff's defamation claim fails.

> 4.    Plaintiff's "Guilt by Association" Claim Fails.

Plaintiff is aggrieved that he has had negative consequences from his association with Optima and, rather than take personal responsibility or blame the individuals who ran Optima's criminal enterprise, Plaintiff alleges a claim based on "guilt by association" and/or a violation of his First Amendment right to freedom of association against ECFMG and NBME.

Plaintiff's claim fails for a number of reasons.  First, "guilt by association" is not a valid claim, and Plaintiff has not articulated a legal basis for this claim.

Second, a valid claim for a breach of the First Amendment requires that the actor at issue be a state actor.  *See, e.g.*, *Fogarty v. Boles*, 121 F.3d 886, 891 (3d Cir. 1997) ("[T]he First Amendment applies only to public employers, and there is no doubt that government has a greater right to limit the speech of its employees than it does a private citizen.").  ECFMG is **not** a state actor.  *See, e.g.*, *Elias v. ECFMG*, 2010 WL 4340640 (N.J. Super. Ct. App. Div. Nov. 4, 2010) ("ECFMG is a private, not-for-profit organization, which through its certification program assesses the readiness of a[n IMG] to enter residency or fellowship programs in the United States.  ECFMG is not a subdivision of or affiliated with any governmental entity, its Board of Trustees receives no funding from any governmental entity, no individual from defendant New Jersey State Board of Medical Examiners (NJSBME) sits on ECFMG's Board of Trustees, and it sets its own standards for an [IMG]'s eligibility to take the United States Medical Licensing Examination (USMLE).") (unpublished); *Staudinger v. ECFMG*, No. 92-8071, 1993 WL 138954 (S.D.N.Y. Apr. 28, 1993) (dismissing Section 1983 claims because ECFMG is not a state actor

and does not act under the color of state law); *Brown v. Fed'n of State Med. Bds.*, No. 82-7398, 1985 WL 1659, at *5 (N.D. Ill. May 31, 1985) (holding that ECFMG is "not [a] state agenc[y]" and that "[t]he actual state actors here are the state licensing boards, which have complete control over whether or not to use the defendants' tests, and if so, how to use these tests.  Thus, the defendants are supplying a service used by candidates and state boards.  This supplying of a testing service does not make defendants state actors any more than the company which provides the state with office supplies acts under color of state law.  The state boards are at most defendants' consumers; defendants do not participate in a state activity.").[19]

Third, as is detailed in ECFMG's Motion for Summary Judgment, Plaintiff's claim also fails because it is not based on either of the two types of activities that fall within the constitutionally protected freedom of association: "intimate association" and "expressive association."  *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) (citing *Roberts v. U. S. Jaycees*, 468 U.S. 609, 617-18 (1984)) (holding that there is no generalized right of social association that would include chance dance halls encounters); *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 442-45 (3d Cir. 2000) (citing same) (holding that membership in university fraternity did not constitute either intimate or expressive association).  Plaintiff has not made (and cannot make) a showing that his participation with Optima falls within one or both of these categories of protected associations.

        5.     <u>Plaintiff's Other Allegations Fail.</u>

In addition to the claims Plaintiff articulates in his response brief, Plaintiff also raises various other issues, none of which presents a claim for which relief can be granted, and none of which prevents this Court from entering summary judgment in ECFMG's favor.

---

[19] To the extent Plaintiff is somehow bringing a Due Process claim, such claim would also be barred because ECFMG is not a state actor.  *See, e.g.*, *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) (describing the state action requirement of the Fourteenth Amendment).

a.   *Plaintiff's Arguments About Discovery Are Untimely and Unwarranted.*

Plaintiff injects discovery disputes into his opposition brief.  *See, e.g.*, Plaintiff's Opposition (Doc. 30) at 4.  Such disputes are neither timely nor appropriately included in the summary judgment analysis.  ECFMG and NBME made document productions in this action and made the following witness available Plaintiff for deposition, each of whom Plaintiff deposed: (i) William Kelly, ECFMG's Associate Vice President for Operations (*see* Kelly Dep., 3:24-4:6 (Ex. 26)); (ii) Dr. Steven Haist, M.D., NBME's Vice President of Test Development Services (*see* Haist Dep., 7:15-24 (Ex. 27)); (iii) Janet Carson, Esq., former legal counsel for the USMLE program (*see* Carson Dep., 4:14-15; 5:11-12 (Ex. 28)); and (iv) Dr. Gerard Dillon, M.D., Ph.D., NBME's Vice President for Licensing Programs (*see* Dillon Dep., 4:22-24 (Ex. 29)).

Fact discovery closed on February 17, 2014.  *See* 1/7/14 Order (Doc. 23).  Upon the conclusion of a Settlement Conference with Magistrate Judge Sandra Moore Wells on March 19, 2014—30 days after the close of discovery—Plaintiff sent subpoenas for additional discovery. *See* Subpoenas Received on March 21, 2014 (Exs. 30 & 31).  Such discovery was untimely, but even so, Defendants responded by lodging objections and responses.  *See* 4/8/14 Responses and Objections of ECFMG (Ex. 32); 4/14/14 Responses and Objections of NBME (Ex. 33). Thereafter, Plaintiff took no action; he never filed a motion to compel and he never otherwise appealed to the Court for assistance.  Summary judgment is not the right time to raise a discovery dispute—that time has long passed—and these belated arguments about discovery do not serve as a basis to defeat summary judgment.

b.   *Plaintiff's Arguments About His Online Access to ECFMG's Services Are Irrelevant.*

Certain of ECFMG's roles in the U.S. medical community involve online registration and other services.  *See* ECFMG Information Booklet, ECFMG000656-743 (Ex. 2).  During the course of events, Plaintiff's automated access to certain online services was restricted (*see* Stip.

Facts at ¶ 35), meaning that his account required human intervention to allow him access to services and the automatic services were discontinued.  *See* Kelly Dep., 13:22-14:15.  As Mr. Kelly, ECFMG's Associate Vice President for Operations, testified, "[i]f ECFMG were alerted by the USMLE program that they had information that an individual may have been a student at Optima University, ECFMG would flag their record[, which] means that no automated process could take place without a staff member knowing about it."  *Id.*  Mr. Kelly explained that a "flag" does not mean that a student cannot register for an exam, it just means that "[i]t takes an active act on the part of an ECFMG staff member to determine whether the individual is eligible to be registered."  *Id.* at 23:11-20; *see also id.* at 42:10-43:1.  Plaintiff has stated no legal claim, nor does ECFMG believe could he with respect to the "flag" on his file, which was merely an administrative check.

### c.    *Plaintiff's Reliance on Bennett Law Firm Article is Misplaced.*

The report Plaintiff relies on extensively throughout his Amended Complaint and that he refers to on page 17 of his opposition brief, which allegedly provides facts and figures from other students to support Plaintiff's case, contains fabricated data.  That article is "USMLE and Appeals: The Hefty Burden Examinees Face in Appealing a USMLE Finding of Indeterminate Score or Irregular Behavior"[20] by the Bennett Law Firm, which was Exhibit 62 at Plaintiff's deposition (and is attached as Ex. 34 hereto) ("Bennett Law Firm Article"); Thomas Dep., 294:3-295:13.  The Bennett Law Firm Article is a marketing piece advocating that individuals facing potential indeterminate scores or determination of irregular behavior should engage counsel, going so far as to call having counsel an examinee's "only hope" and suggesting that an "attorney with experience before the USMLE Committee on Score Validity may be able to get the investigation quashed, if it can be shown that the student did not attend Optima."

---

[20] Plaintiff has not been accused of irregular behavior.  *See* Thomas Dep., 302:7-303:1.

Plaintiff quotes extensively from and relies on the Bennett Law Firm Article in his Amended Complaint, including by citing and relying on particular statistical figures described therein. *See, e.g.*, Amended Complaint (Doc. 17) at 4. These figures are mere fabrications:

- "Some statistics have been altered to protect the identity of any student/doctor represented by the authors." Bennett Law Firm Article (Ex. 34) at 10, n.7.

- "Some percentage [sic] and statistics have been altered to protect the identity of any student." *Id.* at 21, n.13.

*See also* Thomas Dep., 300:14-301:16. Plaintiff is not personally acquainted with anyone at the Bennett Law Firm, has not discussed the Bennett Law Firm Article with anyone at the firm, has not validated the content therein, and does not know the students referenced therein. *See id.* at 295:16-300:10. The Bennett Law Firm Article is irrelevant.

### B. Plaintiff Would Not Be Entitled to the Damages Sought, Even if Some Claim Were to Survive Summary Judgment.

As described in Section V of ECFMG's Motion for Summary Judgment, even if Plaintiff were to prevail, he would not be entitled to damages because his inability to enter the practice of medicine in the United States is his own doing, and was not caused by his exam score being deemed indeterminate. Before the Optima issue came to light, there was an extended period of time when Plaintiff was certified by ECFMG—from January 24, 2008 to March 4, 2010—during which Plaintiff could have entered graduate medical education (*i.e.*, residency) in the United States (*see* Stip. Facts at ¶ 34); however, Plaintiff did not obtain a residency position during the time he was ECFMG certified (*see id.* at ¶ 36; *see also* Section II.C, above).

Despite Plaintiff's unsupported statement in his opposition brief (at 18) that he has been "approached" about two residency positions but had to turn them down because of this litigation (which, in and of itself, makes no sense and raises an issue of Plaintiff's failure to mitigate damages), Plaintiff has offered and produced no evidence relating thereto. Through discovery, no evidence has come to light to indicate that Plaintiff could have entered a residency program,

but for the conduct at issue.  *See* Thomas Dep., 245:10-246:9 (showing Plaintiff does not know the requirements to practice medicine New York or Texas, his preferred states).  To the contrary, at his deposition, Plaintiff claimed to have "connections" to residency programs but refused to provide any details or information about how/where he anticipates he would be able to get a residency position.  *See id.* at 218:6-219:10, 269:17-22 & 270:4-271:21.

Aside from the facts at issue, Plaintiff has other obstacles to obtaining a residency position.  Plaintiff conceded that getting a residency position would be an "uphill battle."  *Id.* at 268:16-269:1.  For example, Plaintiff agreed that he would need letters of recommendation for residency programs and last got letters of recommendation in 2001-2003 and 2006-2007.  *See id.* at 273:6-275:23.  Plaintiff testified that he would seek updated letters of recommendation, but that his most recent contact with a patient where he was providing medical treatment was in 2009.  *See id.* at 276:16-279:1.  By way of further example, Plaintiff testified that he would need to take the final USMLE component exam, Step 3 (which he has not yet attempted, and which is not at issue here), and agreed that it would be detrimental to his attempt to get a residency position if he did not pass Step 3 on his first attempt.  *See id.* at 280:16-281:16.  Additionally, even if Plaintiff's examination score were somehow validated, Plaintiff's USMLE transcript would still reflect his full examination history, including his six failures on Step 1 and five failures on Step 2 CK.  *See id.* at 266:16-267:4.

Moreover, Plaintiff's damages demand of "over $450,000 in monetary damages, $450,000 in salary as a physician, as well as 6 years in his career as a profession [sic] and over four years in education" is utterly unsupported by the record.[21]  Plaintiff is currently employed

---

[21] It is unclear if Plaintiff still seeks injunctive relief.  At his deposition, when asked what he wanted out of the lawsuit, Plaintiff responded: "I would like my exam validated from 2007 and, therefore, be completely ECFMG certified and not having to re-take Step 1 or Step 2 CS."  Thomas Dep., 216:11-19.  However, in his recent opposition brief, Plaintiff appears to only ask for damages.  *See* Plaintiff Opposition (Doc. 30) at 21.  As described in ECFMG's Motion for Summary Judgment at Section V.A, if Plaintiff is seeking injunctive relief, such relief would be against the public interest and would be recoverable as damages, making injunctive relief improper.

and has been working since 2009 with no periods of unemployment.  *See* Thomas Dep., at 265:9-15.  Plaintiff works for St. Barnabas Hospital in the Bronx, New York managing an off-site clinical called Southern Medical Group, where he oversees 18 to 20 people, including about 5 physicians.  *See id.* at 30:5-31:15.  Plaintiff has various other jobs (*see id.* at 32:14-23), and explained his need for multiple jobs as follows: "I have no choice.  I have a housewife."  *Id.* at 32:24-33:2.  Plaintiff estimated his salary from last year as between $110,000 to $115,000.  *See id.* at 39:8-13.  In contrast, Plaintiff testified that medical residents earn "[n]ot too much" and clarified "anywhere from 35,000 to, like, 70,000, depending, I think.  I mean, the numbers have changed over the years.  I mean, getting 52,000 a year ago was a big deal back four, five years ago."  *Id.* at 219:20-220:6.  There is no factual or expert evidence in the record of what Plaintiff would have been able to be earning now, or in the future, if his examination score had not been deemed indeterminate.  Therefore, even if Plaintiff were to have one or more of his claims survive summary judgment somehow, he would be unable to prove damages.

Plaintiff should not be allowed to use this Court to improperly bolster his credentials and garner a windfall when he was unable to secure a residency position on his own merit before the exam score invalidity question was even raised.  Instead, the Court should end this expensive escapade and dismiss Plaintiff's claims with prejudice.

**V.    CONCLUSION**

As stated in ECFMG's Motion for Summary Judgment (Doc. 29), there remains no genuine issue of material fact and ECFMG is entitled to judgment as a matter of law.  Accordingly, ECFMG respectfully requests that this Court grant this Motion for Summary Judgment and enter an Order in the form attached, dismissing this case with prejudice.

Respectfully submitted,

Dated:  June 16, 2014

*/s/ Elisa P. McEnroe*
Brian W. Shaffer
Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
215.963.5000 (tel)
215.963.5001 (fax)
bshaffer@morganlewis.com
emcenroe@morganlewis.com

*Attorneys for Defendant Educational Commission*
*for Foreign Medical Graduates*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing Motion for Summary

Judgment was served this 16th day of June, 2014 via electronic mail:

> Mathew Thomas, Jr.
> 31 Roosevelt Ave.
> Staten Island, NY 10314
> dr.mathew.thomas.jr@gmail.com
>
> *Pro Se Plaintiff*
>
>           - and -
>
> Neil J. Hamburg, Esq.
> Maureen Holland, Esq.
> Hamburg & Golden, P.C.
> 1601 Market Street, Suite 3310
> Philadelphia, PA  19103
> hamburgnj@hamburg-golden.com
> hollandmp@hamburg-golden.com
>
> *Attorneys for Defendant National*
> *Board of Medical Examiners*

> */s/ Elisa P. McEnroe*
> Elisa P. McEnroe