# EXHIBIT 28

Case 2:13-cv-03946-CMR   Document 32-28   Filed 06/16/14   Page 2 of 3

Janet Carson, Esq.                                        Thomas vs. ECFMG, et al.
                           January 17, 2014

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION
------
MATHEW THOMAS, JR.      : CIVIL ACTION
    vs.                 :
ECFMG, et al.           : NO. 13-3946
------

Friday, January 17, 2014

------

Oral deposition of JANET CARSON, ESQUIRE, held at NATIONAL BOARD OF MEDICAL EXAMINERS, 3750 Market Street, Philadelphia, Pennsylvania, beginning at approximately 2:30 p.m., on the above date, before LANCE A. BRUSILOW, Registered Professional Reporter, Approved Reporter for the United States District Court, and Notary Public, there being present.

------

brusilow + associates
255 South 17th Street
Suite 1503
Philadelphia, PA 19103
215.772.1717
www.brusilow.com

------

Page 2

APPEARANCES

SOUTHERN MEDICAL GROUP
BY: MATHEW THOMAS, JR., M.D.
326 East 149th Street
Bronx, NY 10541
ph: 718.585.6262
(mthomas1@sbhny.org)
Counsel for Plaintiff

MORGAN, LEWIS & LEWIS, LLP
BY: ELISA P. McENROE, ESQUIRE
1701 Market Street
Philadelphia, PA 19103-2921
ph: 215.963.5917
(emcenroe@morganlewis.com)
Counsel for ECFMG and William C. Kelly, M.S.

HAMBURG & GOLDEN, P.C.
BY: MAUREEN P. HOLLAND, ESQUIRE
1601 Market Street, Suite 3310
Philadelphia, PA 19103-143
ph: 215.255.8584
(hollandmp@hamburg-golden.com)
Counsel for Gerard F. Dillon, M.D., Steven Haist, M.D.
and Janet Carson, Esquire

NATIONAL BOARD OF MEDICAL EXAMINERS
BY: SUZANNE WILLIAMS, ESQUIRE
3750 Market Street
Philadelphia, PA 19104-3102
Ph: 215.590.9538
(swilliams@nbme.org)
Counsel for NBME

Page 3

1    (It is hereby agreed by and among
2    counsel that signing, sealing, certification and
3    filing are waived; and that all objections, except
4    as to the form of the question, are reserved until
5    the time of trial)
6         JANET CARSON, ESQUIRE, having been
7    first duly sworn, was examined and testified as
8    follows:
9         (EXAMINATION)
10   BY DR. THOMAS:
11       Q.  Hello, Ms. Carson how are you?
12       A.  Fine, thank you, Dr. Thomas.
13       Q.  For the record, could you please state your
14   full name for the record?
15       A.  Janet Duffy Carson.
16       Q.  Would you please give me your educational
17   background?
18       A.  Sure:  I attended undergraduate at
19   Pennsylvania State University and received my BA from
20   there in 1971.  I attended Villanova University School
21   of Law and graduated with a JD in 1974.
22       Q.  Do you have any other degrees?
23       A.  No, I do not.
24       Q.  And currently are you working?

Page 4

1        A.  Yes, I am.
2        Q.  Do you mind saying what you're working as?
3        A.  I'm self-employed.  I do legal consulting for
4    organizations involved in testing and certification.
5        Q.  Are you a consultant currently for NBME?
6        A.  Not currently, no.
7        Q.  Will you tell me if you were ever a consultant
8    for NBME?
9        A.  Yes:  I was a consultant from my retirement in
10   employment at the national board in 2004 until 2010,
11   approximately.
12       Q.  Could you tell me your tenure as an employee
13   at NBME?
14       A.  I joined the staff of the NBME in 1981 and
15   left in 2004.
16       Q.  Thank you.  Are there any specific
17   certifications or licenses that you hold in addition to
18   the degrees that you mentioned?
19       A.  I certainly hold a license to practice law in
20   the Commonwealth of Pennsylvania.
21       Q.  During your twenty-some years here at NBME,
22   can you tell me the different roles that you played?
23       A.  My title changed somewhat over time, but
24   essentially I served in the role of general counsel.

Janet Carson, Esq.                                              Thomas vs. ECFMG, et al.
                              January 17, 2014

Page 5

1   At one point in time I was called consulting legal
2   counsel.  At one point I was general counsel and
3   director of the office of examination security.  I also
4   served in the capacity of corporate secretary for the
5   board.
6       Q.  The title secretariat, is that a title you
7   held?
8       A.  No, I did not.
9       Q.  Did you work for the office of the
10  secretariat?
11      A.  I worked as legal counsel for the USMLE
12  program.  The secretariat is a function within that
13  program.
14      Q.  Could you tell me the role that the
15  secretariat would play in terms of any indeterminate
16  scores on the USMLE exam?
17      A.  The secretariat in general would basically
18  take the cases that were being referred to the
19  committee on either score validity or committee on
20  irregular behavior, would review the information
21  provided and draft a letter to the involved examinee;
22  would organize the meetings of those two committees,
23  provide agenda materials to the committee members;
24  arrange for the appropriate logistics for the meeting;

Page 6

1   following the meeting, would prepare and send letters
2   advising examinees of the outcomes.
3       Q.  Did they ever do direct investigation with the
4   students at question?
5       A.  Since I was not the secretariat, I really
6   can't answer that definitively.  The process, as I
7   understood it, the role was more oriented towards
8   implementing policies and procedures.
9       Q.  As the general counsel, did you ever have to
10  interview students that had scores that were
11  indeterminate?
12      A.  No, not as part of an investigation.  No, I
13  certainly would have had some conversations with
14  examinees, but not investigatory.
15      Q.  Are you aware of the case against Optima
16  University?
17      A.  In a general way, yes.
18      Q.  Did you have any direct involvement with the
19  case against Optima University?
20      A.  No.  Other than being informed of its filing
21  and having access to a copy of the complaint, I was not
22  directly involved in the prosecution of that.
23      Q.  Okay.  The students that went to Optima
24  University, did you have a direct role in the sanctions

Page 7

1   put against them for being a student at Optima
2   University?
3       A.  Any sanctions that were imposed on those
4   examinees would have been imposed by the committee on
5   score validity or the committee on irregular behavior.
6   It was not the prerogative of staff or of myself to
7   impose sanctions.
8       Q.  Students who went to Optima University were
9   basically told that their scores were invalidated
10  because of alleged copyright infringement by Optima
11  University.
12          Would that list of students come to your
13  office first?
14      A.  First, as a result of the investigation into
15  Optima, there is identification of examinees who
16  participated in the course and whose scores were the
17  subject of concerns.
18          Those examinees and data related to them were
19  reviewed by a staff group to reach a decision as to
20  whether or not the matter should be referred to the
21  committee on score validity for further review and
22  action.
23      Q.  So, did you get the name of every student who
24  was found to be attending Optima or only those who had

Page 8

1   -- how did you phrase it? -- that they found that there
2   would be an issue and they might need to be referred to
3   the committee for score validity.
4       A.  I really can't recall offhand.  We reviewed
5   scores and scores of files.  Certainly there were cases
6   that came before that staff group that did not result
7   in referrals to the committee on score validity and
8   some that did result in referrals.
9           I can't recall whether information regarding
10  every participant came before that staff group or not.
11      Q.  Could you tell me who ran the staff group?
12      A.  It was -- I don't remember all the
13  participants.  It included representatives of the
14  Educational Commission For Foreign Medical Graduates,
15  the Federation of State Medical Boards, and the
16  National Board of Medical Examiners.
17      Q.  Were there specific titles to be part of that
18  committee or --
19      A.  The individuals who participated were
20  designated by their organizations to be the
21  representatives at those discussions.
22      Q.  Were you ever part of that committee?
23      A.  I was present at the meetings of the
24  committee.