# Mathew Thomas, Jr.
# 31 Roosevelt Avenue
# Staten Island, New York 10314
# 917-856-0368

June 21, 2014

The Honorable Cynthia M. Rufe
United States District Court
Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street, Suite 12614
Philadelphia, PA 19106-1797

Re: Mathew Thomas, Jr. v NBME and ECFMG
Civil Action No. 13-3946

Dear Judge Rufe:

Enclosed please find Sur-Reply Motion Papers along with exhibits in Response to
Defendant's NBME and ECFMG  Reply Motion.

Sincerely,

Mathew Thomas, Jr. MD

Cc: Maureen P. Holland, Esq. (email)
    Neil J. Hamburg, Esq. (email)
    Elisa P. McEnroe, Esq. (email)
    Brian W. Schaffer, Esq. (email)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Mathew Thomas, Jr.,

             Plaintiff

  -V-                                Civil Action No. 13-3946

ECFMG, Educational Commission for Foreign
Medical Graduates,
NBME, National Board of Medical Examiners

             Defendants

**FILED**

JUN 27 2014

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

Plaintiff, Mathew Thomas, Jr, Pro Se, for its Sur-Reply in Defendants' Reply Summary

Judgment Motion of NBME and ECFMG:

## I)    **Introduction**

Defendants, ECFMG and NBME, (hereinafter "Defendants"), have continued to state

occurrence of events instead of focusing on the actual question hand.  Defendants' submission

has shown to just ridicule and mock this matter.  Plaintiff, Mathew Thomas, Jr.,  (hereinafter

"Plaintiff") has been wrongfully accused because of being a victim of an unethical occurrence

caused by Optima University prep course.

Defendants continue to prove that they have been discriminating against the Plaintiff due to

what they interpret as being associated with Optima University. Defendants clearly demonstrate

discrimination action as recent as their last submission in their Reply, where they state, "plaintiff

is aggrieved by the consequences of his being caught up with Optima University"[1] Defendants have defamed the Plaintiff by painting an imagine that Plaintiff was part of the wrong doing. Plaintiff was a victim just like every other student that attended the prep course. The difference was that some students were never affected or they never had to validate their scores. Defendants continue to describe the Plaintiff as participating in Optima University and giving the illusion that Plaintiff participated in the illegal action where his only participation was as a student for less than six weeks and an employee that assigned students to a study area for less than eight months.

Defendants state that Plaintiff's scores did not measure his ability without providing justification to their accusations. Defendants discuss how an analysis was conducted on the exam, but clearly through the evidence that they presented it was just a simple comparison of invalidated data. Defendant continues to wrongly state that a statistical analysis was done. Defendants confuse statistical analysis versus data comparison through their Reply. Therefore, they did not only violate their own policy and procedure, but failed to justify or prove that Plaintiff's score was not a valid measure of his own ability.

Defendants claim Plaintiff revealed no valid claim, but Defendants fail to acknowledge that they have not responded to Plaintiff's discovery request. Once again failing at proving their own claim and justified Plaintiff's allegation against Defendants. In addition, Defendants have avoided all direct discovery and have not submitted to the Plaintiff any evidence proving any tangible matter of facts to justify their actions. Through Defendants' action they have proven the allegations that Plaintiff has set forth throughout this lawsuit. Plaintiff has claimed his relief in his Summons and Complaint and verbally at the settlement conference and the Rule 26 Conferences.

---

[1] ECFMG Reply

**II)     Residency**

Defendants have clearly shown that they fail to understand the process in attaining

Residency. Defendants are desperate to find a reason for their actions by portraying the Plaintiff

as not taking ownership of his own responsibility.  The process of attaining Residency is not a

rolling admission. In September of a given year an international medical graduate must attain a

Token in order to register at MyERAS and start a residency application.  The Token is a code

that is requested via ECFMG's OASIS.   MyERAS is the website where applicants complete

their application, select residency programs to apply to, and assign documents to be received by

programs. Supporting documents for MyERAS application are pulled from the OASIS.  In

March of the following year, the results of the "Match" are released and candidates are notified if

they attained a residency position.  Any position not filled is available in the postmatch scramble,

48 hours when unmatched applicants contact programs with unfilled positions. In June of the

Match year, all data in MyERAS is deleted, and one must reapply and refill the application for

the next Match year.

Defendants portray an image to the court where the Plaintiff had over two years to attain

Residency because he was ECFMG certified, but fail to clearly state that his access to OASIS

was shut off in July 2009. By restricting access to OASIS, Defendant ECFMG did not allow the

Plaintiff to get a Token for the 2009/2010 Match.  In essence, the only time in which the Plaintiff

was able to attempt a Residency was the 2008/2009 Match year, which he did apply in.

Defendants give the impression that it is easy for a qualified candidate to get a Residency.

According to Issue 137 - April 02, 2009 – of The ECFMG(r) Reporter, "Of the 10,980 IMGs

who participated in the 2009 Match, 4,796 **(43.7%)** matched. In the 2008 Match, 4,698 **(45.2%)**

IMGs were matched to first-year positions... Of the 3,390 U.S. citizen IMG participants, 1,619

**(47.8%)** were matched to first-year positions." **(Exhibit #1)** The illusion illustrated fades away when the information is put into context. Most international medical graduates participate in multiple Match and scramble to attain a residency.

Defendants once again make a false statement about the Plaintiff by eluding that Plaintiff did not get into Residency because of his transfer to other medical schools. Plaintiff made it clear that it was a personal choice to transfer schools not for academic reasons. One of these included transferring to his graduating school because it allowed him to do clinical rotations in New York after the attacks of 9/11 verses being in England.

Defendants continue to submit the same occurrence of events instead of focusing on the actual questions at hand that Plaintiff passed based on his own merit. Defendants admit through their Reply that Plaintiff has common test patterns with both Step 1 and Step 2 exam, in which Step 1 was passed on his own without Optima University Prep Course.

Defendants have prolonged the process which prevented Plaintiff to complete all required exams within the 7 years. As evident through Plaintiff's date of exams, the Plaintiff passed his Step 2CS, Step 1 and Step 2CK within three years of the original pass. According to exhibits submitted by both Plaintiff and Defendants, the timeline shows that Defendant had all information including names of students in 2008 and chose to notify Plaintiff in 2009, extending the process and preventing him from continuing to take the exam. Defendant then continues to contradict themselves by stating in their Reply that the information they received was "not perfect or complete", showing once again that their decisions was based on assumption, discrimination, and negligence, towards Plaintiff. Defendants have continued to mock the Pro Se Plaintiff as well as disrespecting the Court and failing at following proper Civil Procedure.

Defendants fail to include in their statement that Plaintiff stated that Optima's course did not only include questions, but also offered lectures to their students. Plaintiff stated at his deposition of January 10, 2104, "there's a set of lecture set for everyday of the week." [2]

Defendants falsely claim that Plaintiff was present during the FBI raid in May 2008. Plaintiff clearly stated that he was at an interview for a full time position, and returned to the test center to speak to the FBI. The interview was just a few months after starting employment at Optima, and if the Plaintiff felt he was part of any wrongdoing, he would not have gone back to the center without an attorney to speak to the FBI.

Defendants failed to explain when stating that Plaintiff is still in contact with Optima's former employees, which were support staff not the owner, that Plaintiff was in contact with them to get supporting evidence for this lawsuit in preparation for the depositions.

Defendants have no bearing or substance to state that Plaintiff is confused by the criminal proceeding or civil action that was brought forth toward Optima University. Plaintiff clearly used these actions and proceeding to show proof of notice.

Defendants discuss the "cornerstone" of the CSV's inquiry as "whether we have a valid pass" If this was in fact the process used then it would be clear that Plaintiff would have passed even with the removing of the questions that were assumed to be previewed.  It can also be ascertained that some if not many of the alleged "exposed questions" were general knowledge and would have been answered correctly by a candidate who had missed passing his prior attempt by just one point.

Defendants present the breakdown of how many question are assumed to be exposed to Plaintiff, but fails to realize that the information that Defendants supposedly received came from a seizure that occurred in May 2008 or beyond.  Any seized material would have included any

---

[2] Mathew Thomas, Jr. Deposition of January 10, 2014, page 47, lines 7-11

**5 | P a g e**

updates added to the Optima system after the Plaintiff's exam in 2007, with the majority of updates being Step 2CK material. As the Defendants stated in their Reply the information was not "perfect" showing that the Defendants did not have any matter of fact for canceling Plaintiff's passing score.

**III)   Validation Exam**

Plaintiff submitted the "comparison" that was written up by Dr. Haist. Defendants fail to state that it was clear by Dr. Haist's email that was submitted by Plaintiff in his Opposition Papers that there was a difference in the December 2007 exam that Plaintiff took and the validating exam. Dr. Haist gave vague and round about answers to the explanation of the comparison exam making it very clear the exam was not compatible. He clearly stated in his deposition that validation exam was compatible to the "USMLE 2011 exam" [3] not the 2007 exam that was taken by the Plaintiff. **(Exhibit 2)** He also states that he, nor his department, was ever asked to create a validation exam for Plaintiff, let alone one comparable to 2007. In his opinion any validation exam should have been for that year, thus going against any policy and procedure. Upon questioning about defining his email on the word "content" Dr. Haist continued to be vague, and could not defend the interpretation in his email.

Defendant admits that the information received was not perfect and therefore proving that assumption was made because of not having true facts. Courts cannot be given evidence based on assumption, but only proof and facts. It is fair to say that any relevant information review is from 2008 and forward, after Plaintiffs exam. Therefore Defendants have proven that there is no information that would justify giving the Plaintiff am "indeterminate" score.

---

[3] Dr. Steven Haist, January 17, 2014 Deposition, pages 37& 38 Lines 13-24& Lines 1-4

## IV)   Discrimination and Defamation

The legal definition for Discrimination is clearly defined; therefore it captures all aspects of the meaning. Defendants are well aware that Plaintiff's claim included race when he made the Discrimination allegation.

Defendants state that Plaintiff fails to foresee that there were public accusations against Optima, but Defendants clearly show through their actions that they made decisions based on public accusations towards the Plaintiff.  Defendants selected certain individuals to validate their score, with the majority being of a minority race. Defendant used public accusations as their reasoning for defaming and discriminating against the Plaintiff, instead of true facts.

Defendants continue to state that Plaintiff was a student and employee. This has never been denied by Plaintiff.  Defendants have never shown any proof of their decision making other than those two facts, therefore defaming because of association and discriminating against Plaintiff.

## V)   Guilt by Association

Defendants continue to give Plaintiff an image of being guilty because of being an Optima student.  Yet they contradict themselves in their Reply when they state Plaintiff should "blame the individuals who ran Optima", proving that Plaintiff was a victim to someone else's wrong doing. Yet certain students were individually selected to prove themselves instead of every Optima student having the same consequences.

## V)   Discovery

Defendants failed to respond to Request for Discovery submitted on January 17, 2014 and Subpoenas that were served for discovery.  Using Motion to Compel as reasoning to not respond to Discovery is poor and unacceptable. It is known to those, especially as trained lawyers, that the Motion to Compel is another option to receive ignored Discovery. It is also understood that

Subpoenas have the same purpose.  As for the failing excuse for not submitting Discovery because of the claim they did not receive Subpoena, this was cleared by Plaintiff and submitted proof that it was an administrative error not by Plaintiff. **(Exhibit 3)**  Defendants still fail to acknowledge that they failed to comply with Federal Rules of Civil Procedure Rule 37. Defendants' failure to produce evidence and failure to respond to Subpoena have violated Federal Rules of Civil Procedure Rule 37, Failure to make Disclosure or to cooperate to Discovery.

Defendants state the Summary Judgment is not the time to bring up failing to comply with any law is another mocking action toward the Pro-Se Plaintiff. Defendants have made it clear that they are not familiar with the Residency process and therefore pre-judging whether Plaintiff could get Residency at this time has no bearing. Plaintiff has testified that he continued to work in hospitals to make relationships that would allow the opportunity to get Residency, but once again Defendants fail to state these facts and continue to make assumptions.

In addition, Defendants were adamant that they did not receive any information from the FBI or law enforcement agencies and therefore could not comply with Plaintiff's Notice of Discovery for such. Their Reply states differently as evident of page 4 of NBME Reply, where it states that they received evidence by "court-ordered seizure from Optima's University."[4] They purposely withheld information that would have proved that the data collected did not show the Plaintiff's score as being indeterminate.

**VI)   Negligence**

Defendants have minimized their Duty to Warn by stating that they have no affiliation with Optima University and that relieves them from their duty.  What Defendants are ignoring is their duty towards their students. Defendants do have an affiliation with each student that is enrolled

---

[4] Page 4, NBME Reply

with them and spends a substantial amount of money for their services and therefore has a duty

to warn them.  As such Defendant did not dispute that they had a duty to warn.

In addition, as presented in the Plaintiff's Opposition Motion, if Defendants truly believe that

their purpose is to protect the health of the public, then all Optima University's students should

have be subject to the same process.  Instead, Defendants picked and chose which students, thus

making a subjective choice as to who would and would not hurt the public health.

### VII)   Conclusion

Defendants continue to overlook the actual facts and allegations. They just continue to state a

series of occurrence with no evidence of proof on the actual matter at hand. Defendants continue

to mock Plaintiff and disrespect the Court by taking advantage of a Pro-Se Plaintiff by not

sticking to the Courts Rules and Civil Procedures, as shown through their failure of responding

to Plaintiff's Discovery request that would answer the whole purpose of this lawsuit.

Plaintiff has not denied being an Optima student or being an employee of Optima after taking

the exam. Plaintiff denies the validity of the data presented and has proven that his score was

based on his own hard work.

Defendants even admit in their Reply that Plaintiff was never named in the connection of the

Optima action, but Plaintiff has been treated as if he was by Defendants.  Defendants have

contradicted themselves throughout this lawsuit.  Defendants' action clearly shows that they

have acted unethically and violated laws specifically towards the Plaintiff. They have taken

advantage of students who depend on their service. They even failed on following their own

Policy and Procedures as proven in Plaintiff's Opposition papers.

Plaintiff continues to support their Opposition Motion, along with this Sur-Reply.
Accordingly, Plaintiff Mathew Thomas, Jr., respectfully request that the Court Grant in
favor to Plaintiff's Opposition Motion and Sur-Reply against both Defendants , ECFMG
and NBME Summary Judgment.

Date: June 21, 2014

Respectively submitted,

Mathew Thomas, Jr.
Pro Se
31 Roosevelt Avenue
Staten Island, New York

# Exhibit 1

Steven A. Haist, M.D.

January 17, 2014

Thomas vs. ECFMG, et al.

1   on the USMLE?

2                     MS. HOLLAND:   Objection for the reasons

3       stated before.

4   BY DR. THOMAS:

5       Q.   Who develops the validation exam?

6       A.   Test development.

7       Q.   Is there a specific validation exam as

8   compared to a normal exam where a student comes and

9   sits for the exam?

10      A.   It's built to the same specifications.   It's

11  not a real common occurrence.   They're built to the

12  same specs.   I'm not sure of the other.

13      Q.   Mathew Thomas was given an exam December 31,

14  2007 and then told to take a validation exam in

15  September 2011.

16              Were you ever asked to create a validation

17  exam that was comparable to the exam that was done four

18  years prior?

19      A.   No, it was built to the specification of the

20  2011 USMLE exam.

21      Q.   My question is, were you asked to create a

22  validation exam that was comparable to 2007?

23      A.   It was comparable to -- no, it was comparable

24  to the 2011 USMLE exam.

Page 38

1        Q.    So, you're stating that the validation exam

2    was a 2011 exam.

3        A.    Yes, because anyone passing an examination in

4    2011 had to pass the 2011 examination specifications.

5        Q.    When was the first you were contacted

6    regarding Mathew Thomas' validation?

7        A.    I don't know.

8        Q.    Was it before or after the exam had taken

9    place?,

10        A.    My unit would have had to have been before.

11    Me personally, I don't remember.

12        Q.    Who in your unit would have been contacted?

13        A.    I'm not sure.

14        Q.    What would be the protocol for contacting your

15    department for a validation exam?

16        A.    Somebody in USMLE would have contacted

17    probably a managing editor of the particular step, but

18    I'm not sure.

19        Q.    Would you be able to say who the manager was

20    at that time?

21        A.    Yes: I think it was June Farrell, but I'm not

22    positive.

23        Q.    What would that manager do as his or her next

24    step?

# Exhibit 2



**FILING SERVICES, INC.**

March 20, 2014

Matthew Thomas, Jr.

Re: Thomas vs. ECFMG, et al

Dear Matt:

On February 19, 2014, we received, via Federal Express, 4 subpoenas regarding the above matter. My office attempted to contact you for payment for our services prior to serving the subpoenas. At the time, we did not realize that you were referred to us from an existing client. If we had known that we would have served them. As a result, we were unable to reach you. Consequently, the subpoenas were not served. As of this date, we received a new date of March 27, 2014 for the subpoenas. Service will be effectuated on March 21, 2014. I hope that this was not an inconvience for you.

Very truly yours,

Michael Damiano

317 SOUTH 13ᵀᴴ STREET    PHILADELPHIA, PA 19017    ☐    (215) 981 – FILE    ☐    (215) 981 – 3453

# Exhibit 3



# FW: The ECFMG Reporter: Issue 137 - April 2, 2009

**nomad in SHAOLIN** <nomadsbu31@hotmail.com>                                    Sat, Jun 21, 2014 at 11:50 AM
To: "dr.mathew.thomas.jr@gmail.com" <dr.mathew.thomas.jr@gmail.com>

> Date: Thu, 2 Apr 2009 14:54:36 -0400
> From: ECFMGReporter@ECFMG.ORG
> Subject: The ECFMG Reporter: Issue 137 - April 2, 2009
> To: ECFMG-REPORTER@LISTSERV.ECFMG.ORG
>
> The ECFMG(r) Reporter
>
> An E-Newsletter for International Medical Graduates Pursuing Graduate
> Medical Education in the United States
>
> Issue 137 - April 2, 2009
>
> ************************************************
>
> IN THIS ISSUE:
>
> - 2009 MATCH PERFORMANCE – NUMBER OF IMGS MATCHING INCREASES
>
> ************************************************
>
> 2009 MATCH PERFORMANCE – NUMBER OF IMGS MATCHING INCREASES
>
> For the seventh consecutive year, the number of first-year (PGY-1)
> residency positions offered through the Match increased. A total of
> 22,427 first-year positions were offered in the 2009 Match, held last
> month. This represents an increase of 187 positions compared to last
> year and an increase of 1,825 positions since 2002.
>
> The number of IMGs, including Fifth Pathway participants, who matched to
> first-year positions increased by 98 compared to 2008. Of the 10,980
> IMGs who participated in the 2009 Match, 4,796 (43.7%) matched. In the
> 2008 Match, 4,698 (45.2%) IMGs were matched to first-year positions.
>
> There was an increase in the number of matches for U.S. citizen IMGs,
> IMGs who are citizens of other countries, and Fifth Pathway
> participants.
>
> Of the 7,484 IMG participants who were not U.S. citizens, 3,112 (41.6%)
> obtained first-year positions. The number of non-U.S. citizen IMGs who
> obtained positions in 2009 increased by 4 compared to last year.
>
> Of the 3,390 U.S. citizen IMG participants, 1,619 (47.8%) were matched
> to first-year positions, an increase of 78 over last year. This is the
> sixth consecutive year that there has been an increase in the number of
> U.S. citizen IMGs matching to first-year positions.
>
> Of the 106 Fifth Pathway participants in the Match, 65 (61.3%) were
> matched to first-year positions, an increase of 16 over last year. This
> is the third consecutive year that there has been an increase in the

> number of Fifth Pathway participants matching to first-year positions.
>
> It is important to note that the total number of IMGs, including Fifth
> Pathway participants, who will fill PGY-1 positions for the 2009-2010
> academic year will be higher than the number obtaining positions through
> the 2009 Match. Although the majority of PGY-1 positions in the United
> States are filled through the Match, a significant number of IMG
> applicants obtain positions outside of the Match. For example, while
> 4,563 IMGs obtained PGY-1 positions through the 2007 Match, 7,225 IMGs
> entered PGY-1 for the 2007-2008 academic year.
>
> The 7,225 IMGs entering PGY-1 for the 2007-2008 academic year is an
> increase of 306 over the prior year and an increase of 1,152 since the
> 2002-2003 academic year.
>
>
> ABOUT THE MATCH
>
> The annual NRMP Match is the system by which applicants are matched with
> available residency positions in U.S. programs of graduate medical
> education (GME). Participants submit to the NRMP a list of residency
> programs, in order of preference. Ranked lists of preferred residency
> candidates are likewise submitted by U.S. GME programs with available
> positions. The matching of applicants to available positions is
> performed by computer algorithm. The Match results announced in March of
> each year are typically for GME programs beginning the following July.
>
>
> ADDITIONAL RESOURCES ON THE MATCH AND MATCH RESULTS
>
> The preceding data are taken from the Advance Data Tables for the 2009
> Main Residency Match compiled by the NRMP. These tables provide detailed
> information on the positions offered and filled by the Match in 2009 and
> prior years. To access these tables, or to obtain further information on
> the NRMP, visit www.nrmp.org.
>
> The June issue of Academic Medicine, the journal of the Association of
> American Medical Colleges, usually offers an analysis of Match results
> from the preceding March. For more information, visit your medical
> school's library or www.academicmedicine.org.
>
> The September issue of JAMA: The Journal of the American Medical
> Association traditionally provides an in-depth analysis of graduate
> medical education in the United States. This analysis includes the
> number of IMGs entering and continuing in U.S. GME programs and a
> breakdown of IMG resident physicians by specialty and subspecialty.
> Visit your medical school's library or http://jama.ama-assn.org.
>
>
>
> ************************************************
>
> ABOUT THIS PUBLICATION
>
> As an organization, ECFMG is committed to providing information on
> issues of importance to international medical graduates. We realize that
> many individuals would like updated information on developing issues
> related to ECFMG Certification and entry into graduate medical education
> in the United States. As a result, ECFMG has developed The ECFMG(r)
> Reporter to provide international medical graduates worldwide with
> timely, objective information on current topics of interest. It is our

# Certificate of Service

I, Mathew Thomas, Jr., Pro Se, Plaintiff, hereby certify that the forgoing Sur-Reply

Papers for Defendant Reply was served on 21st June, 2014 via electronic mail:


Brian W. Schaffer, Esq. & Elisa P. McEnroe, Esq.
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
Defendant Attorney for ECFMG

Neil J. Hamburg, Esq.  & Maureen P. Holland, Esq.
Hamburg and Golden
1601 Market Street
Philadelphia, Pennsylvania 19103
Defendant  Attorney for NBME


Mathew Thomas, Jr., Pro Se, Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Mathew Thomas, Jr.,

Plaintiff

Civil Action No. 13-3946

-V-

ECFMG, Educational Commission for Foreign Medical Graduates, and
NBME-National Board of Medical Examiners,
Defendants.

## ORDER

AND NOW, this _____ day of _____, 2014, upon consideration of

Plaintiff's Opposition Papers  and Sur Reply for Defendants  ECFMG and NBME Summary

Judgment Motion and Defendants Response thereto, it is hereby Ordered and Decreed that the

Plaintiff's Opposition Papers & Sur Reply is **GRANTED** and Defendants ECFMG and NBME

Summary Judgment Motion & Reply is **DISMISSED.**