**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MATHEW THOMAS, JR.** **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. 13-3946** |
| **NBME – NATIONAL BOARD OF MEDICAL EXAMINERS, *et al.*** **Defendants.** | |

**MEMORANDUM OPINION**

**Rufe, J.** **February 13, 2015**

Plaintiff has filed suit against two entities responsible for the test that enables graduates of foreign medical schools to become licensed to practice medicine in the United States, alleging that they wrongly rescinded his passing score on a segment of the examination. Defendants have moved for summary judgment on all claims. For the reasons that follow, the motions will be granted.

## I. FACTUAL BACKGROUND

The parties have stipulated to most of the relevant facts in this litigation. Where the parties have not stipulated, the facts are viewed in the light most favorable to Plaintiff as the non-moving party. Plaintiff is a United States citizen who attended medical school outside of the United States.[1] Graduates of medical schools located outside of the United States or Canada are known as international medical graduates ("IMGs"). IMGs may obtain certification for entry into graduate medical education in the United States and obtain medical licensure in the United

[1] Joint Statement Stipulated Material Facts ("SMF") at ¶¶ 1-2. Plaintiff testified in his deposition that he attended medical school for one year at Ross University in the Caribbean, which did not require students to take the Medical College Admission Test or have majored in pre-medical studies in college, then transferred to St. Matthew's School of Medicine in Belize (attending classes both in Belize and the United States as well as clinical studies in England), before completing his degree at the English campus of St. Christopher Iba Mar Diop, a Senegal-based medical school. Thomas Dep. at 84-85, 89-93.

States by taking and passing the United States Medical Licensing Examination ("USMLE").[2] The USMLE is sponsored by Defendant National Board of Medical Examiners ("NMBE") and a non-party to this litigation, the Federation of State Medical Boards ("FSMB").[3] An IMG registers for the USMLE through Defendant the Educational Commission for Foreign Medical Graduates ("ECFMG").[4] The USMLE consists of a three-step series of examinations designed to test an examinee's (1) understanding and application of scientific concepts basic to the practice of medicine, (2) clinical knowledge and skills (which has two separate components, 2CK and 2CS), and (3) ability to apply medical knowledge and clinical science necessary to practice medicine without supervision.[5] A passing score is required on each step. All of the examinations except for the evaluation of clinical skills (2CS) are administered by computer.[6] The examination questions are copyrighted, and examinees are prohibited from disclosing the questions.[7]

Plaintiff's troubles began with a 2008 federal investigation of, and 2009 lawsuit by NMBE and FSMB against, a test preparation company known as Optima University.[8] Plaintiff attended Optima as a student before taking one of the USMLE exams on December 31, 2007, and was an Optima employee from February through August of 2008.[9] In the civil lawsuit, the United States District Court for the Western District of Tennessee granted summary judgment in

[2] SMF at ¶¶ 6-8.

[3] SMF at ¶ 6.

[4] SMF at ¶ 9.

[5] SMF at ¶¶ 10-14.

[6] SMF at ¶ 14.

[7] SMF at ¶ 15.

[8] SMF at ¶¶ 16-17.

[9] SMF at ¶¶ 18-19.

favor of NBME and FSMB and against Optima and its principal, finding that the defendants willfully infringed upon the copyright the plaintiffs held in USMLE questions.[10] In its ruling, the court found that Optima had copied USMLE questions and made them available to Optima students through test preparation materials.[11]

After Optima was implicated in the wrongful use of USMLE questions, the USMLE Committee on Score Validity reviewed Plaintiff's 2CK examination from December 31, 2007, which had initially been awarded a passing score.[12] After reviewing all of the materials and hearing testimony from Plaintiff, the Committee determined that it could not certify that the December 31, 2007 score was a valid measure of Plaintiff's ability.[13] Plaintiff was given the opportunity to sit for an exam at no cost, with the proviso that if he passed that exam, the December 31, 2007 score would be deemed valid.[14] After several delays for personal reasons, Plaintiff took the validating exam on September 3, 2011 and failed.[15] Plaintiff and the NBME disagreed as to whether the validating exam was comparable to the earlier exam.[16]

A month before Plaintiff took the validating exam, the USMLE instituted a rule "that limited examinees to six unsuccessful attempts to pass any Step or Step component of the exam. (the 'six attempt limit')."[17] For those who had previously tested, like Plaintiff, the rule went into

[10] *National Bd. Of Medical Examiners v. Optima Univ. LLC*, No. 09-1043, 2011 WL 7615071, at *12 (W.D. Tenn. Sept. 29, 2011).

[11] *Id.* at *7.

[12] SMF at ¶¶ 22-22

[13] SMF at ¶¶ 23-24.

[14] SMF at ¶ 26.

[15] SMF at ¶ 27.

[16] SMF at ¶ 28.

[17] SMF at ¶ 30.

effect on January 1, 2013.[18] Although Plaintiff registered to take the relevant section of the exam on December 27, 2012, and received an extension until June 2013, he did not take the exam within this time.[19] Because he had six failing scores, the six-attempt limit now bars him from attempting the exam again.[20]

Plaintiff has another bar to practicing medicine in the United States: to obtain or retain certification from ECFMG, one must pass all steps within a seven-year period.[21] Under this seven-year rule, Plaintiff's scores on those parts of the exam he passed have expired, and therefore Plaintiff is no longer certified; Plaintiff's request for an exception to the rule has been denied.[22]

Plaintiff's *pro se* amended complaint alleges that Defendants' "standards of proof are poorly defined," that they "discriminat[ed] against the Plaintiff by . . . making false allegations that the Plaintiff had knowledge of [Optima's] illegal activity," and that they "falsely accused" Plaintiff of wrongdoing "because of his association as a student at Optima University." Plaintiff alleges that these actions violated Plaintiff's freedom of association, were negligent and discriminatory, and constituted defamation. Defendants have moved for summary judgment on all claims.[23]

---

[18] SMF at ¶ 30.

[19] SMF at ¶ 31.

[20] SMF at ¶¶ 29, 31.

[21] SMF at ¶ 32.

[22] SMF at ¶¶ 33-33, 37-39.

[23] The Court generally will refer to Defendants collectively in the following discussion, although some actions may be attributable only to one Defendant.

## II. STANDARD OF REVIEW

A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[25] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[26]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[27] Further, a court may not weigh the evidence or make credibility determinations.[28] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[29] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[30] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[31] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[32] Finally, although the

---

[24] Fed. R. Civ. P. 56(a).

[25] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[26] *Id.*

[27] *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[28] *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[29] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[30] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[31] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[32] *Celotex*, 477 U.S. at 322; *Wisniewski v. Johns–Manville Cor*p., 812 F.2d 81, 83 (3d Cir. 1987).

Court liberally construes Plaintiff's *pro se* filings, Plaintiff must set forth facts, supported by affidavits or other evidence of record, sufficient to survive summary judgment.[33]

## III. DISCUSSION[34]

### *A. Negligence*

Plaintiff's negligence claim posits that Defendants suspected that Optima was up to no good but they failed to warn IMGs to steer clear of Optima. In order to prevail in a negligence action under Pennsylvania common law, a plaintiff must establish that: (1) the defendant owed a duty of care to the plaintiff; (2) the duty was breached; (3) the breach resulted in the plaintiff's injury; and (4) the plaintiff suffered an actual loss or damages.[35] "The question of whether a duty exists is purely a question of law."[36] Plaintiff argues that Defendants acknowledged in 2009 that they had a duty to warn test-takers when NBME and FSMB announced the lawsuit against Optima and stated that "[i]ndividuals who attended Optima's programs or are considering doing so risk having their USMLE scores delayed and/or classified as indeterminate. They may also be subject to other consequences, including charges of irregular behavior, as a result of their participation."[37]

---

[33] *Houseknect v. Doe*, 653 F. Supp. 2d 547, 555 (E.D. Pa. 2009).

[34] None of the parties addresses the question of choice of law with regard to the state-law claims. Defendants rely upon Pennsylvania law; Plaintiff cites only one state-law case, from New Jersey. This Court, sitting in diversity over the state-law claims, applies the choice-of-law rules of Pennsylvania, the forum state. Plaintiff lives in New York; it appears he sat for at least one exam in New Jersey; and Defendants are based in Pennsylvania. Because the allegedly tortious acts seem to have occurred in Defendants' offices in Pennsylvania, because the Court has no basis to conclude that Pennsylvania would not apply its own laws in these circumstances, and because no party has argued that Pennsylvania law conflicts with the law of the other potentially relevant jurisdictions, the Court applies Pennsylvania law.

[35] *Brown v. Commonwealth Dep't of Transp.*, 11 A.3d 1054, 1056 (Pa. Commw. Ct. 2011) (citing *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (Pa. 2009)).

[36] *Id.* (citation omitted).

[37] Plff.'s Ex. 9.

As a matter of law, the Court holds that the alleged duty is simply too ill-defined to be imposed upon Defendants. Moreover, even if a voluntary notification in 2009 – when suit was filed against Optima – could evince the acceptance or acknowledgement of a duty at that time, it does not establish that a duty existed in 2007 or 2008, when the investigation of Optima was in an earlier stage; Plaintiff has not shown that Defendants had sufficient information to offer a warning either before Plaintiff took the test-preparation course in 2007 or before he worked for Optima in early 2008.

Even if Plaintiff could show that Optima had a duty and had breached it, Plaintiff has not shown that the breach resulted in a compensable injury to Plaintiff. Plaintiff has not shown that Defendants had a blanket policy by which they struck or challenged the scores of all Optima students or employees, and therefore cannot show that the alleged negligence caused his injury.[38] Summary judgment will be granted on this claim.

***B. Defamation***

Prosecuting a claim for defamation under Pennsylvania law requires Plaintiff to establish 1) the defamatory character of the communication; 2) its publication by the defendant; 3) its application to the plaintiff; 4) the understanding by the recipient of its defamatory meaning; 5) the understanding by the recipient of it as intended to be applied to the plaintiff; 6) special harm resulting to the plaintiff from its publication; and 7) abuse of a conditionally privileged occasion.[39] Defendants may avoid liability if the statements are "substantially true."[40] In his

[38] In fact, Plaintiff argues that Defendants have not shown that all Optima students were treated the same way that he was and that they failed to apply a consistent or standard method for determining which students' scores would be challenged. That some students may have profited from Optima's misdeeds and escaped detection does not grant Plaintiff a cause of action. This argument, essentially that Defendants engaged in a kind of "selective enforcement," is unsupported by any legal authority that would establish the validity of it as a basis for tort liability.

[39] 42 Pa. Cons. Stat. Ann. § 8343(a).

[40] *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (quoting 42 Pa. Cons. Stat. Ann. § 8343(b).

deposition, Plaintiff testified that the claim for defamation was based upon statements made in front of the Committee on Score Validity to the effect that Plaintiff had been employed by Optima, and that this gratuitous reference had the effect of coloring the Committee's view of Plaintiff.[41] It is, however, true that Plaintiff was a student and employee of Optima, and therefore Plaintiff cannot establish a claim for defamation.[42]

### *C. Discrimination*

Pennsylvania law "protects against discrimination in employment, housing, and public accommodation because of race, color, familial status, religious creed, ancestry, handicap or disability, age, sex, and national origin."[43] Similarly, federal law prohibits discrimination in places of public accommodation on the basis of "race, color, religion or national origin,"[44] or on the basis of disability.[45] These statutes apply to testing entities such as Defendants.[46] But Plaintiff does not assert discrimination based on any of the protected categories; when asked about the discrimination claim in his deposition, Plaintiff testified that he believes he "was discriminated against based solely on the fact that [he] was an employee at Optima."[47] Plaintiff's

---

[41] Thomas Dep. at 50-53.

[42] In his opposition to the motions for summary judgment, Plaintiff argues that he was defamed during a settlement conference in this case that was held on March 19, 2014, before Chief Magistrate Judge Carol Sandra Moore Wells, in which Defendants asserted that Plaintiff was a "John Doe" implicated by the Federal Bureau of Investigation in Optima's wrongdoing. Plff.'s Opp. Summ. J. [Doc. No. 30] at 12-13. However, under Pennsylvania law, "a person is entitled to absolute immunity for 'communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought.'" *Bochetto v. Gibson*, 860 A.2d 67, 71 (Pa. 2004) (quoting *Post v. Mendel*, 507 A.2d 351, 355 (Pa. 1986) (emphasis and footnote omitted)). This privilege prevents Plaintiff from recovering for alleged statements made in a court-ordered settlement conference conducted by a judicial officer.

[43] *Southeastern Pennsylvania Transp. Auth. v. City of Phila.*, 101 A.3d 79, 81 n. 3 (Pa. 2014) (citing 43 P.S. §§ 951-963).

[44] 42 U.S.C. § 2000a.

[45] 42 U.S.C. §§ 12181-12189.

[46] *Rawdin v. American Bd. of Pediatrics*, 582 F. App'x 114, 117 (3d Cir. 2014).

[47] Thomas Dep. at 49.

status as an Optima employee is not protected under the law and does not give rise to a discrimination claim. Although in his opposition to summary judgment, Plaintiff asserts that Defendants assumed he was guilty because he "comes from an Eastern origin like the owner of Optima University,"[48] there is simply no evidence of record that Defendants acted on any basis other than Plaintiff's status as an Optima student and employee and what they deemed to be a suspicious score.[49]

***D. Freedom of Association***

In order to establish a claim that his rights of freedom of association have been violated, Plaintiff must be able to show that through some action of the state, his right to engage in a protected association has been violated.[50] Because neither ECFMG nor NBME is a state actor, Plaintiff cannot prevail on this claim.[51] Even if state action were established, Plaintiff cannot show that association with Optima employees is of a nature protected by the First Amendment as either an intimate or expressive relationship. Protected intimate relationships "presuppose deep attachments and commitment to the necessarily few other individuals with whom one shares not only a special community of thought, experiences, and beliefs, but also distinctively personal aspects of one's life." [52] Protected expressive activity implies a "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural

[48] Plff.'s Opp. Summ. J. [Doc. No. 30] at 11.

[49] *See Opoku v. Educational Com'n for Foreign Medical Graduates*, 574 F. App'x 197, 202 (3d Cir. 2014) (holding that the plaintiff "failed to state, in a non-conclusory fashion, facts from which one could infer an agreement or understanding among the Defendants to violate his constitutional rights, or to discriminate against him on account of his national origin").

[50] *See, e.g., Pi Lambda Phi Fraternity, Inc. v. University of Pittsburgh*, 229 F.3d 435, 438 (3d Cir. 2000).

[51] *See, e.g., Opoku*, 574 F. App'x at 201 (holding that ECFMG is a private party, not a state actor); *Boggi v. Medical Review and Accrediting Council*, 415 F. App'x 411, 414 (3d Cir. 2011) (holding that NBME is not a state actor).

[52] *Bd. of Dirs. of Rotary Int'l v. Rotary Club*, 481 U.S. 537, 545 (1987) (citation omitted).

ends."[53] Because "[n]othing in the record indicates that [Optima students and employees] ever took a public stance on any issue of public political, social, or cultural importance," the threshold for protected expressive activity has not been reached.[54] Instead, Plaintiff argues that he was unfairly judged by Defendants based upon his association with Optima, which fails to satisfy the required standard.

***E. Additional Arguments***

In his opposition to the motions for summary judgment, Plaintiff argues that Defendants failed to produce evidence and to respond to subpoenas. Plaintiff did not file any motions to compel discovery, and he does not explain what discovery he requested or what additional discovery he needs to respond to the motions (which were timely filed several months after the deadline for the completion of fact discovery). Because Plaintiff has failed to set forth why "for specified reasons, [he] cannot present facts essential to justify [his] opposition," this is not a basis for denying the motions.[55] The Court has carefully considered all other arguments raised by Plaintiff, and finds no merit in them.

## IV. CONCLUSION

Although Plaintiff strenuously argues that he has been treated unfairly, the Court must conclude that based upon the undisputed facts of record, Plaintiff cannot prevail on any of the claims he has asserted against Defendants as a matter of law. The motions for summary judgment will be granted. An appropriate order will be entered.

---

[53] *Id.* at 548 (citation omitted).

[54] *Pi Lambda Phi*, 229 F.3d at 444.

[55] Fed. R. Civ. P. 56(d).